**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| NICOLE M. MILLES, and RHONDA D. KNIGHT and JEFFREY KNIGHT, individually and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>v.<br><br>FIFTH THIRD BANK, NATIONAL ASSOCIATION<br><br>                Defendant. | Case No. 1:24-cv-186<br><br>**CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Nicole M. Milles and Rhonda D. Knight and Jeffrey Knight ("Plaintiffs"), individually and on behalf of the Class and Subclass as defined below of similarly situated persons, allege the following against Defendant Fifth Third Bank, National Association ("Fifth Third" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## NATURE OF THE ACTION

1. When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have a practical opportunity to avoid the fee.

2. Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes

a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

3. On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

4. By contrast, the bank maintains highly sophisticated systems for clearing checks and knows, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

5. Nevertheless, despite having these capabilities, Fifth Third routinely charges and collects what it refers to as "Return Deposit Item Fees." By charging these Return Deposit Item Fees, Fifth Third unfairly targeted its customers with financial penalties for faulty checks the customers had no hand in issuing. Plaintiffs were shocked when they were charged these fees because they did nothing wrong, yet were penalized by Fifth Third. There was nothing Plaintiffs could do to avoid — or even anticipate — a Return Deposit Item Fee assessed by Fifth Third at the time the deposits were returned.

6. By charging its customers significant fees in situations where the customers did nothing wrong and could not have avoided the fee through reasonable diligence, Fifth Third acted in a manner that is unfair, oppressive, and is against public policy.

7. Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of Fifth Third's Return Deposit Item Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Return Deposit Item Fees anytime a check is returned unpaid, irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these

fees cause substantial monetary injury for each returned item, which consumers cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

8. California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, et seq., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

9. Accordingly, Plaintiffs, on behalf of themselves and the Class and Subclass (defined below), now seek to hold Fifth Third accountable for its unlawful and unfair policy, and seek damages, restitution, and injunctive relief, as set forth below.

**PARTIES**

10. Plaintiff Nicole M. Milles is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a 53 Momentum Checking account with Fifth Third.

11. Plaintiff Rhonda K. Knight is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a joint 53 Momentum Savings account with Fifth Third.

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed March 6, 2024).

[2] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), available at: https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-feescalifornia-signed-law (last accessed January 17, 2024).

12. Plaintiff Jeffery Knight is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a joint 53 Momentum Savings account with Fifth Third.

13. Defendant Fifth Third Bank, N.A. is a financial services institution engaged in the business of providing retail banking services to consumers and businesses, including Plaintiffs and the members of the putative Class and Subclass. Defendant Fifth Third Bank, N.A. is a major bank headquartered in Cincinnati, Ohio that operates branches and ATMs in various states across the Midwest and Southeast. Fifth Third realized over $200 million in service charges on consumer deposits, which would include Return Deposit Item Fees, for the year ending December 31, 2023.[3]

## JURISDICTION AND VENUE

14. The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

15. This Court has jurisdiction over Defendant because it can be found in and operates in this District, has headquarters in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

---

[3] Fifth Third Bancorp Form 10-K for the year ending December 31, 2023, at 72. Available at: https://d18rn0p25nwr6d.cloudfront.net/CIK-0000035527/6f05555d-9442-49f8-b9a2-eb4a327f9e49.pdf (last accessed March 13, 2024).

**FACTUAL BACKGROUND**

I. **RETURNED DEPOSIT ITEM FEES**

17. Return Deposit Item Fees are levied when a check is returned because it cannot be processed against the originator's account. In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear. There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. The reason could be insufficient funds, a stop payment order issued by the check writer, a closed or foreign account, or even a minor discrepancy on the check itself. Even though the depositor has no control over the check, the Return Deposit Item Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check.

18. Return Deposit Item Fees are widespread within the banking industry, with most major banks and financial institutions levying them as part of their standard fee structure. The ubiquitous and unavoidable nature of Return Deposit Item Fees has raised concerns about the fairness and predatory nature of imposing these penalties on the depositor. In fact, these fees are nothing more than veiled revenue-generating tools that penalize innocent depositors for the actions of others.

19. Recognizing the potential for abuse, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin"). The Bulletin, entitled *Unfair Returned Deposited Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Return Deposit Item Fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

20. The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). The CFPB took issue with financial institutions, like Fifth Third, that charge consumers

fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 FR 66940, 66941 (emphases added).[4]

---

[4] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed March 6, 2024).

21. The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and *there is no separate benefit to consumers from having a deposited check returned, as opposed to paid*." *Id.* The CFPB further found that these fees are *not* "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.* Evidently, the CFPB has signaled its intention to impose stricter oversight and raise legal challenges against these unfair and predatory practices.

## II. FIFTH THIRD IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED CHECKS, REGARDLESS OF CAUSE

22. Fifth Third operates a retail network across the Midwest and Southeast of the U.S. Within this network, Fifth Third offers a range of deposit accounts, including products and services to its customers like Plaintiffs and the putative Class and Subclass members.

23. Upon opening a deposit account with Fifth Third, each member receives a "Deposit Account Rules & Regulations" ("Deposit Agreement"), which — along with the applicable fee schedule — forms the contract between Fifth Third and the customer and provides the terms and conditions governing each deposit account held with Fifth Third.[5]

24. The Deposit Agreement establishes that a customer's account is located in the state where the person his or her account. *See* Ex. A, § 10.7 at 24. If a customer opened an account online, the account is located in the state of the banking office nearest customer's address. *Id.*

25. While the Deposit Agreement confirms that Fifth Third had a blanket policy of charging a Return Deposit Item Fee on attempted deposits that were returned unpaid, regardless

---

[5] *See* Fifth Third Deposit Agreement, effective November 22, 2022, at 2, attached hereto as Exhibit A.

7

of the underlying facts or circumstances (*id*., § 5.5 at 10), it does not disclose the amount of any fee that Fifth Third would charge for returned deposited item.

26. The Deposit Agreement states that "[i]f a deposited or cashed Item is returned, we will charge you a Returned Item Fee as described in the fee schedule applicable to your account." *Id*.

27. Although it is nowhere disclosed in the Deposit Agreement, in practice Fifth Third uniformly charged its customers a blanket $15 fee for items that are returned by no fault of the customer.

28. When depositing a check, customers naturally anticipate receiving the funds. However, factors entirely outside their control can lead to a deposit being returned unpaid. This can occur due to the originator lacking sufficient funds, a stop-payment order issued by the originator, or even processing errors. These unpredictable circumstances can expose the depositor to unfair and unavoidable financial repercussions.

29. Members attempting to deposit funds, such as Plaintiffs, lacked any control over whether the deposit would be returned, and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

30. Conversely, Fifth Third maintains sophisticated systems to make sure that checks submitted for deposit are valid for processing and that the person or business who wrote the check has sufficient money to pay it. Thus, Fifth Third has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

31. Fifth Third's blanket policy of charging Return Deposit Item Fees on all returned deposits, regardless of the origin of the check or the cause of its return, is unfair and lacks good faith because it penalizes consumers for circumstances outside of their control.

### III. FIFTH THIRD CHARGED PLAINTIFFS RETURN DEPOSIT ITEM FEES

#### A. <u>Nicole M. Milles</u>

32. Prior to the applicable limitations period, Ms. Milles opened a 53 Momentum Checking account with Fifth Third.

33. On or around July 21, 2022, Ms. Milles attempted to deposit a check into her Checking account.

34. At the time Ms. Milles attempted to deposit the check into her Checking account, she had no reason to believe that the check would be returned unpaid.

35. The same day, to Ms. Milles' surprise and by no fault of her own, the check was returned unpaid. Fifth Third charged Ms. Milles a Return Deposit Item Fee of $15.00. The Return Deposit Item Fee was deducted from Ms. Milles' account.

36. Because the Return Deposit Item Fee which Fifth Third charged Ms. Milles was assessed pursuant to Fifth Third's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Return Deposit Item Fee was unfair and unlawful.

#### B. <u>Rhonda and Jeffrey Knight</u>

37. Mr. and Mrs. Knight opened a joint 53 Momentum Savings account with Fifth Third in or around 2010.

38. On or around September 28, 2023, Mr. and Mrs. Knight attempted to deposit a check into their joint Savings account.

39. At the time they attempted to deposit the check into their account, Mr. and Mrs. Knight had no reason to believe that the check would be returned unpaid.

40. The same day, to their surprise and by no fault of her own, the check was returned unpaid. Fifth Third charged Mr. and Mrs. Knight a Return Deposit Item Fee of $15.00. The Return Deposit Item Fee was deducted from their account.

41. Because the Return Deposit Item Fee which Fifth Third charged Mr. and Mrs. Knight was assessed pursuant to Fifth Third's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding their attempt to deposit the check into their account, the Return Deposit Item Fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

42. Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

43. Plaintiffs propose the following Class and Subclass definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Fifth Third and were charged a Return Deposit Item Fee by Fifth Third.
>
> **Illinois State Subclass** (the "**Illinois Subclass**")
>
> All individuals who, during the applicable statute of limitations, had or have accounts with Fifth Third located in Illinois, and were charged a Return Deposit Item Fee by Fifth Third.

44. Excluded from the Class and Subclass is Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and their immediate family members and associated court staff assigned to this case.

45. Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

46. The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

47. **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Subclass contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein,

the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's records.

48. **Commonality.** This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant's assessment of Return Deposit Item Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

b. Whether Defendant breached its Implied Covenant of Good Faith and Fair Dealing by assessing Return Deposit Item Fees on transactions in cases where the accountholder had no reason to believe the deposit would be returned unpaid;

c. Whether Plaintiffs and the Class and Subclass suffered damages as a result of Defendant's assessment of Return Deposit Item Fees;

d. Whether Defendant was unjustly enriched as a result of charging Plaintiffs and members of the Class and Subclass Return Deposit Item Fees;

e. Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. § 505/1, *et seq* (the "ICFA") (as to the Illinois Subclass);

f. The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

g. Whether Plaintiffs and the Class and Subclass are entitled to declaratory and injunctive relief and the nature of that relief.

49. **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class and Subclass, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class and Subclass members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclass. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclass.

50. **<u>Adequacy of Representation</u>**. Plaintiffs will fairly and adequately protect the interests of the members of the Class and Subclass. Plaintiffs and the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair Return Deposit Item Fees. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiffs.

51. **<u>Superiority</u>**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or Subclass, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

52. Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and the Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Subclass will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these violations, and the members of the Class and Subclass and the general public may continue to be unfairly treated.

53. Defendant has acted and refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class and Subclass as a whole.

**COUNT I**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(On behalf of Plaintiffs and the Class)**

54. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-53 as if fully set forth herein.

55. Plaintiffs brings this claim individually and on behalf of the members of the Class against Defendant.

56. A covenant of good faith and fair dealing is implied in Plaintiffs' and the Class members' Deposit Agreements with Defendant. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

57. The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiffs and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs and the Class members' rights and benefits under the contract.

58. Plaintiffs and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

59. As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiffs and the Class members' Returned Deposit Item Fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

60. Defendant's actions to maximize its revenue from Returned Deposit Item Fees impedes the right of Plaintiffs and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

61. On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Returned Deposit Item Fees at the expense of their customers, in contravention of Plaintiffs' and the Class members' reasonable expectations.

62. Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

63. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT II
## UNJUST ENRICHMENT
**(On behalf of Plaintiffs and the Class)**
*(Plead in the alternative to Count I)*

64. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–63 as if fully set forth herein.

65. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

14

66. Plaintiffs and the members of the Class and Subclass conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Deposited Item Returned Fees.

67. Plaintiffs and members of the Class and Subclass were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that Defendant would not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class and Subclass suffered financial losses when they were charged Return Deposit Item Fees in the form of funds deducted from their accounts.

68. By charging Return Deposit Item Fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $15 charge each time an item was returned, from each of their customers' accounts without providing any additional service or value to their customers, including Plaintiffs and members of the Class and. Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer, making Defendant's retention unjust.

69. By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

70. Plaintiffs and the Class' detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

71. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

72. Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

73. Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

74. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

## COUNT III

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT , 815 Ill. Comp. Stat. ("ILCS") 505/1,** *et seq.* **("ICFA")**
**(Plaintiffs, on behalf of themselves and the Illinois Subclass)**

75. Plaintiffs Milles, Knight, and Knight repeat and reallege each and every allegation contained in paragraphs 1–74 as if fully set forth herein.

76. Plaintiffs Milles, Knight, and Knight bring this claim individually and on behalf of the members of the Illinois Subclass against Defendant.

77. Plaintiffs Milles, Knight, and Knight maintain a Fifth Third account located in Illinois, pursuant to the Deposit Agreement.

78. Plaintiffs Milles, Knight, and Knight and the Illinois Subclass members are persons within the context of the ICFA, 815 ILCS § 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS § 505/1(c).

79. At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS § 505/1(f).

80. Plaintiffs and the proposed Illinois Subclass are "consumers" within the meaning of the ICFA, 815 ILCS § 505/1(e).

81. The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act

("UDTPA"). 815 ILCS § 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS § 505/2; 815 ILCS § 510/2(a)(12).

82. The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 666 (7th Cir. 2008) (*citing* the Illinois Supreme Court's holding in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2022)).

83. The ICFA provides a broad private right of action for "[a]ny person who suffers actual damage as a result of a violation of this Act" and enables such person to bring an action against any business entity that violates the statute. 815 ILCS § 505/10a(a); 815 ILCS § 505/1(c). In addition, the ICFA provides for injunctive relief where appropriate as well as reasonable attorney's fees and costs. 815 ILCS § 505/10a(c).

84. Defendant charged Returned Deposit Item Fees in the regular course of its business and in the course of conducting trade and commerce and charged Plaintiffs a Returned Deposit Item Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiffs and the members of the Illinois Subclass members.

85. Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition." 12 U.S.C. § 5531(c)(1).

86. The CFPB — through Bulletin 2022-06 — has determined that Returned Deposited Item Fees, such as those charged by Fifth Third, are materially unfair and deceptive because they cause substantial injury to consumers and fall within the CFPA's definition of unfair acts and practices because such fees cause substantial financial injury to accountholders, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

87. Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Returned Deposit Item Fees is deceptive and unfair and constitutes a violation of the ICFA.

88. Plaintiffs and all Illinois Subclass members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiffs and all Illinois Subclass members were caused by Defendant's unfair practice of charging Returned Deposit Item Fees. In other words, had Defendant not engaged in the unfair practice of charging Returned Deposit Item Fees, Plaintiffs and the Illinois Subclass members would not have sustained damages. The actual damage is measured by the amount of the Returned Deposit Item Fees charged by Defendant.

89. By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages to Plaintiffs and the Illinois Subclass, in violation of 815 ILCS § 505/2, and Defendant is liable to Plaintiffs and the Illinois Subclass for the damages they have sustained as a result of Defendant's actions.

90. Based on Defendant's unfair and/or deceptive acts or practices, Plaintiffs and the Illinois Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS § 505/10a.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant in the form of an Order:

A. Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure and naming Plaintiffs as a representatives of the Class and Subclass and Plaintiffs' undersigned attorneys as Class Counsel to represent the members of the Class and Subclass;

B. Declaring that Defendant's conduct violated the laws referenced herein;

C. Naming Plaintiffs Nicole Milles, Rhonda Knight, and Jeffrey Knight as the representatives of the Illinois Subclass;

D. Finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

E. Awarding actual, consequential, punitive, statutory, and treble damages as applicable;

F. Awarding pre-judgment and post-judgment interest on all amounts awarded;

G. For injunctive relief as pleaded or as the Court may deem proper;

H. For disgorgement and restitution to Plaintiffs and the Class and/or Subclass members of all monies received or collected from Plaintiffs and the Class and/or Subclass members and all other forms of equitable relief;

I. Awarding reasonable attorneys' fees and expenses and costs of suit; and

J. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by jury as to all triable issues.

Dated: April 3, 2024

Respectfully submitted,

By: /s/Christopher D. Wiest
Christopher Wiest (OH 0077931)
Chris Wiest, Atty. At Law, PLLC
50 E. Rivercenter Blvd, Ste. 1280
Covington, Ky 41011
Tel: (513) 257-1895
E: chris@cwiestlaw.com

Lisa R. Considine (*pro hac vice* forthcoming)
Oren Faircloth (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email: lconsidine@sirillp.com
Email: ofaircloth@sirillp.com

*Attorneys for Plaintiffs and the Proposed Class*