## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| NICOLE M. MILLES, and RHONDA D. KNIGHT and JEFFREY KNIGHT, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>v.<br><br>FIFTH THIRD BANK, NATIONAL ASSOCIATION<br><br>                    Defendant. | Case No.: 1:24-cv-186<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br>Jury Trial Demanded |

Pursuant to FRCP 15(a)(1), Nicole M. Milles and Rhonda D. Knight and Jeffrey Knight ("Plaintiffs"), individually and on behalf of the Class and Subclasses as defined below of similarly situated persons, allege the following against Defendant Fifth Third Bank, National Association ("Fifth Third" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

### <u>NATURE OF THE ACTION</u>

1. Plaintiffs bring this action on behalf of herself and classes of all similarly situated consumers against Defendant Fifth Third. In violation of state consumer protection law and in breach of both the deposit agreement and the covenant of good faith and fair dealing, Fifth Third unfairly, deceptively, and unlawfully charges accountholders Return Deposited Item Fees on deposits that accountholders attempt to make into their Fifth Third accounts, but which fail because they could not be processed against the originator's account.

2. Furthermore, the Return Deposited Item Fees that are the subject of this matter are not clearly and uniformly disclosed in the Deposit Agreement. Instead, the Deposit Agreement is rife with internal inconsistencies, leaving consumers with no clear disclosure as to the conditions

under which the fee may be imposed, or the amount of any such fee, in violation of state consumer protection law and in breach of both the deposit agreement and the covenant of good faith and fair dealing

3.     When dealing with consumer contracts, normally presented on a take-it-or-leave-it basis, legislatures around the nation have statutorily prohibited companies from taking advantage of customers through unfair acts. In the context of consumer fees, whether a fee is considered unfair frequently turns on a simple principle: if the consumer will not receive a commensurate benefit from the fee, then the consumer must have a practical opportunity to avoid the fee. When businesses impose fees that provide no additional value to the consumer, and then deny them a reasonable way to avoid the fee, it becomes a deceptive because it exploits customers' trust and goodwill and misleads them into thinking they must pay for something that should rightfully be provided for free.

4.     Nowhere can this principle be seen more clearly than in the banking sector. Financial institutions earn profits by charging fees for their services. For example, banks allow customers to write checks, and in return the customers promise that there will be funds in their account to cover the check when it is deposited. If a customer breaks this understanding and writes a check without the funds to cover it (i.e., bounces a check), the bank will charge a fee to the customer that wrote the check, which the customer could have avoided by ensuring sufficient funds were in the account.

5.     On the other side of the transaction, however, the recipient of the check typically has no way to know whether a check he or she deposits is going to bounce. Because the depositor could not have reasonably known the check was bad, it is unfair to charge the depositor a fee for returning the check.

6.     By contrast, the bank maintains highly sophisticated systems for clearing checks and knows, or should know, when the person that wrote the check does not have sufficient funds to cover the check or has access to the reasons that the check may not otherwise be valid.

7. Nevertheless, despite having these capabilities, Fifth Third routinely charges and collects what it refers to as "Return Deposit Item Fees." Plaintiffs were shocked when they were charged these fees because they did nothing wrong and did not expect to be charged for a mere *attempted* deposit, yet were penalized by Fifth Third. There was nothing Plaintiffs could do to avoid — or even anticipate — a Return Deposit Item Fee assessed by Fifth Third at the time the deposits were returned.

8. Moreover, Fifth Third assesses a $15.00 Return Deposit Item Fee for what it describes as "Returned Items" in the Deposit Account Agreement. The distinction matters, as Fifth Third represents in its Fee Schedule that there will be a $0.00 charge for Returned Item Fees.

9. Fifth Third's practice of charging Return Deposit Item fees violates its own Deposit Account Agreement. Indeed, while Fifth Third states in its 2022 Deposit Agreement that it "will" charge a Return Item Fee (*see* Deposit Agreement at Section 5.5, ECF No. 1-1 at 31), it also contradicts this statement by claiming that it "may" charge a Return Item Fee. *Id*. at Sections 4.1(b), 4.2(a) and 4.4.

10. Nowhere in the Deposit Agreement or the Fee Schedule are the conditions under which a Return Deposit Item Fee will be imposed disclosed to consumers.

11. In other words, the disclosures in the Deposit Agreement fail to clearly and uniformly disclose to a consumer the circumstances in which a Return Deposit Item Fee will be imposed.

12. Furthermore, by charging its customers significant fees in situations where the customers did nothing wrong and could not have avoided the fee through reasonable diligence, Fifth Third acted in a manner that is in bad faith, unfair, oppressive, and is against public policy.

13. Recent guidance from the Consumer Financial Protection Bureau ("CFPB") has reaffirmed the unlawful nature of Fifth Third's Return Deposit Item Fee policy. In October 2022, the CFPB issued a compliance bulletin stating that it is an unfair act or practice for an institution to have a blanket policy of charging Return Deposit Item Fees anytime a check is returned unpaid,

irrespective of the circumstances or patterns of behavior on the account; the CFPB noted that these fees cause substantial monetary injury for each returned item, which consumers cannot reasonably avoid because they lack information about and control over whether a check will clear.[1]

14.     California, among other States, has recognized the unfair nature of these fees and has recently amended the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 17200, *et seq*., to expressly prohibit "junk fees" where a business reveals unavoidable fees later in the buying process. As California Attorney General Rob Bonta noted in a press release: "These deceptive fees prevent us from knowing how much we will be charged at the outset. They are bad for consumers … [and] cost Americans tens of billions of dollars each year."[2]

15.     Accordingly, Plaintiffs, on behalf of themselves and the Class and Subclass (defined below), now seek to end Fifth Third's deceptive practices and bad faith and force it to refund Return Deposited Item Fees. Plaintiff seeks damages, restitution, and injunctive relief, as set forth below.

## PARTIES

16.     Plaintiff Nicole M. Milles is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a 53 Momentum Checking account with Fifth Third.

---

[1] Consumer Financial Protection Bulletin 2022–06, Unfair Returned Deposited Item Fee Assessment Practices (Oct. 26, 2022), available at: https://www.consumerfinance.gov/compliance/supervisory-guidance/cfpb-bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices/ (last accessed July 1, 2024).

[2] Attorney General Bonta's Sponsored Bill to Ban Hidden Fees in California Signed into Law (Oct. 7, 2023), available at: https://oag.ca.gov/news/press-releases/attorney-general-bonta%E2%80%99s-sponsored-bill-ban-hidden-feescalifornia-signed-law (last accessed July 1, 2024).

17.     Plaintiff Rhonda K. Knight is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a joint 53 Momentum Savings account with Fifth Third.

18.     Plaintiff Jeffery Knight is an individual citizen of the State of Illinois and, during the applicable limitations period, was a customer of Fifth Third and held a joint 53 Momentum Savings account with Fifth Third.

19.     Defendant Fifth Third Bank, N.A. is a financial services institution engaged in the business of providing retail banking services to consumers and businesses, including Plaintiffs and the members of the putative Class and Subclasses. Defendant Fifth Third Bank, N.A. is a major bank headquartered in Cincinnati, Ohio that operates branches and ATMs in various states across the Midwest and Southeast. Fifth Third realized over $200 million in service charges on consumer deposits, which would include Return Deposit Item Fees, for the year ending December 31, 2023.[3]

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.     This Court has jurisdiction over Defendant because it can be found in and operates in this District, has headquarters in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District.

---

[3] Fifth Third Bancorp Form 10-K for the year ending December 31, 2023, at 72. Available at: https://d18rn0p25nwr6d.cloudfront.net/CIK-0000035527/6f05555d-9442-49f8-b9a2-eb4a327f9e49.pdf (last accessed July 1, 2024).

## FACTUAL BACKGROUND

### I.    RETURN DEPOSITED ITEM FEES

23.    Fifth Third accountholders are routinely charged Return Deposit Item fees on attempted deposits into their checking account that fail to clear because Fifth Third was unable to collect those funds. In other words, when Person A writes a check to Person B and the check bounces or is returned unpaid, the bank charges Person B a fee even though Person B had no reasonable means of knowing the check would not clear.

24.    There are a multitude of reasons why a check someone received would bounce, nearly all of which lie entirely outside the control of the depositor. Even though the depositor has no control over the check, the Return Deposit Item Fees charged can range from $5 to over $30 and often vastly exceed the actual cost of processing the returned check. For example, an originator may not have sufficient funds available in their account to pay the amount stated on the check; an originator may have directed the issuing depository institution to stop payment; the account referenced on the check may be closed or located in a foreign country; or there may be questionable, erroneous, or missing information on the check, including with respect to the signature, date, account number, or payee name.

25.    Consumers like Plaintiffs who attempt deposits or check cashing have no control over whether, and no reason to anticipate that, the attempted deposit or cashing would be returned. Nor can the depositor verify with the originator's depository institution prior to depositing an item whether there are sufficient funds in the issuer's account for the item to clear.

26.    In other words, accountholders have absolutely no control over whether the deposits or check cashing they attempt with be returned unpaid—and no control over whether they will be assessed Return Deposited Item Fees by Fifth Third.

27.    Recognizing the unfair nature of these fees, the CFPB issued published Bulletin 2022-06 on November 7, 2022 (the "Bulletin").  The Bulletin, entitled *Unfair Returned Deposited*

*Item Fee Assessment Practices*, highlights the CFPB's concerns about deceptive practices related to Return Deposit Item Fees, particularly in instances where fees are disproportionate to the actual costs incurred by the bank, or where customers are not adequately informed about the fees and their potential applicability.

28.     The CFPB deemed these fees unfair under the Consumer Financial Protection Act ("CFPA"). The CFPB took issue with financial institutions, like Fifth Third, that charge consumers fees "for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account." The Bulletin provides in relevant part:

> The Consumer Financial Protection Act (CFPA) prohibits covered persons from engaging in unfair acts or practices. Congress defined an unfair act or practice as one that (A) "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and (B) "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."
>
> Blanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances of the transaction or patterns of behavior on the account are likely unfair.
>
> Fees charged for Returned Deposited Items cause substantial injury to consumers. Under the blanket policies of many depository institutions, Returned Deposited Item fees cause monetary injury, in the range of $10-19 for each returned item. **Depository institutions that charge Returned Deposited Item fees for returned checks impose concrete monetary harm on a large number of customers**.
>
> In many of the instances in which Returned Deposited Item fees are charged, consumers would not be able to reasonably avoid the substantial monetary injury imposed by the fees. **An injury is not reasonably avoidable unless consumers are fully informed of the risk and have practical means to avoid it.** Under blanket policies of many depository institutions, Returned Deposited Item fees are charged whenever a check is returned because the check originator has insufficient available funds in their account, the check originator instructs the originating depository institution to stop payment, or the check is written against a closed account. But **a consumer depositing a check would normally be unaware of and have little to no control over whether a check originator has funds in their account, will issue a stop payment instruction, or has closed the**

> **account**. Nor would a consumer normally be able to verify whether a check will clear with the check originator's depository institution before depositing the check or be able to pass along the cost of the fee to the check originator.

87 R 66940, 66941 (emphases added).[4]

29.     The CFPB focused on the lack of benefit to consumers and the disproportionality associated with these fees, finding that "[c]heck processing is a service made broadly available to all depositors of checks, and ***there is no separate benefit to consumers from having a deposited check returned, as opposed to paid***." *Id.* The CFPB further found that these fees are ***not*** "well-tailored to recoup costs" because "the fee is charged to depositors even where the depository institution incurs no such loss from the returned transaction, and institutions usually do not collect the fee in those limited circumstances where they actually incur a loss." *Id.*

30.     Because the CFPB has deemed these fees to be unlawful under the Consumer Financial Protection Act, these fees are similarly "unlawful" under state consumer protection law. Moreover, for the same reasons the CFPB has deemed the charging of Return Deposited Item fees to be "unfair" under the Consumer Financial Protection Act, the same is true under state consumer protection law, which similarly bans unfair business practices.

## II.     FIFTH THIRD IMPOSED A BLANKET "JUNK FEE" ON ALL RETURNED CHECKS, REGARDLESS OF CAUSE

31.     Fifth Third operates a retail network across the Midwest and Southeast of the U.S. Within this network, Fifth Third offers a range of deposit accounts, including products and services to its customers like Plaintiffs and the putative Class and Subclass members. However, Fifth Third's blanket fee policy is unfair, deceptive, and unlawful.

---

[4] The Bulletin is available at https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices (last accessed July 1, 2024).

32.     Customers' accounts are governed by a "Deposit Account Rules & Regulations" ("Deposit Account Rules" or "DAR"), which outline the governing terms of the accounts.[5] The Deposit Agreement establishes that a customer's account is located in the state where the person his or her account. *See* Ex. A, § 10.7 at 24. If a customer opened an account online, the account is located in the state of the banking office nearest customer's address. *Id.*

33.     Within Fifth Third's DAR, there is no mention of a Returned Deposit Item Fee. The only mention of a Returned Deposit Item Fee is listed in the Fee Schedule, but there is no explanation of the circumstances which might give rise to the imposition of a Returned Deposit Item Fee anywhere in the DAR or Fee Schedule.

34.     Instead, Fifth Third describes a returned deposit as a "Returned Item," and the accompanying fee as a "Returned Item Fee."  However, within the DAR itself there are a number of sections which discuss a Returned Item and whether or not a fee will be imposed. Importantly, Section 5.5 indicates that in the event a deposited or cashed item is returned, Fifth Third "will charge a Returned Item Fee."  Section 4 of the DAR indicates, however, that Fifth Third "may" charge a Returned Item Fee. These inconsistencies leave a consumer with no meaningful way of knowing the circumstances under which a fee may be imposed.

35.     However, the Fee Schedule itself indicates that a Fifth Third will charge "$0 – No charge" for Returned Items.

36.     Despite this, Fifth Third has imposed a Returned Deposit Item fee on consumers in those very instances described not as "Returned Deposit Items," but as "Returned Items" - where a deposited or cashed item is returned unpaid.  *See* DAR Section 5.5. The Returned Deposited Item Fee is nowhere described in the DRA or Fee Schedule, providing consumers with no notice of the conditions under which such a fee would be imposed.

---

[5] *See* Fifth Third Deposit Agreement, effective November 22, 2022, at 2, attached hereto as Exhibit A.

37.     Furthermore, the very nature of the Returned Deposit Item Fee itself is unfair. Customers like Plaintiffs attempting to deposit funds lacked any control over whether the deposit would be returned and had no way of protecting themselves against the possibility of the deposit being returned and being charged a fee. Depositors could not realistically verify with the originator's institution whether there were sufficient funds in the issuer's account before depositing an item.

38.     Conversely, upon information and belief, Fifth Third has sophisticated systems to ensure checks submitted for deposit are valid for processing and that the person or business who wrote the check has sufficient money to pay it. Accordingly, Fifth Third has the capability for determining the reason that a check is not valid and the person or business at fault for any invalid check.

39.     Fifth Third's blanket policy of charging Return Deposit Item fees on all returns, regardless of the origin of the check, the cause of its return, or even if there is an attempted deposit, is unfair because reasonable consumers would not expect to be penalized for circumstances outside of their control, and because reasonable consumers had no way of knowing, based on the language of the Deposit Agreement, the conditions under which Return Deposited Item Fees would be imposed, or in what amount. *See* 12 CFR § 1030.4 (requiring the amount of any fee that may be imposed in connection with an account, or an explanation of how the fee will be determined, and the conditions under which the fee may be imposed).

### III.     FIFTH THIRD BREACHED THE DEPOSIT ACCOUNT RULES WHEN IT ASSESSED RETURN DEPOSIT ITEM FEES ON DEPOSITS

40.     According to the DAR, either Fifth Third "may" charge Return Item Fees, or it "will" charge Return Item Fees.  It depends on which Section of the DAR a customer is reading.

41.     For example, Section 5.5 of the DAR states:

> **5.5. Returned Items, Applicable Fees**. You are responsible for returned Items. If a deposited or cashed Item is returned unpaid, we may subtract the amount of the Item from your account or place a hold on that amount without prior notice to you and regardless of

whether settlement of such Item was considered final. If you do not have sufficient available funds to cover the amount of the returned Item, it may overdraw your account. We are not liable to you for any chargeback or overdraft to your account arising from a returned Item.

If a deposited Item is returned unpaid, we may choose to redeposit the Item either in its original form or by converting it to an electronic payment and redepositing it as an ACH entry, in each case without notice to you. This type of check conversion is not an electronic funds transfer (EFT) subject to the terms of the "Electronic Funds Transfer Disclosures" section.

When a deposited Item is returned unpaid, we will provide an image or other record of the Item at our discretion, which you agree will be sufficient for you to protect your rights against the maker. ***If a deposited or cashed Item is returned***, we **will** charge you a Returned Item Fee as described in the fee schedule applicable to your account. If a returned Item is later resubmitted by us for payment, we may charge you a re-presented Item fee as provided in the fee schedule for your account.

Ex. A at 10 (emphases added).

42. The language in Section 5.5 provides that Fifth Third "will" charge a Returned Item Fee if that item is returned or unpaid.

43. However, in contrast to Section 5.5, at Section 4.1(b) of the DAR, Fifth Third represents that it "may" charge a Returned Item Fee:

> **(b) Overdraft Fees and Returned Item Fees**. We **may** charge you a Returned Item Fee if we return an Item unpaid. We **will** charge you an Overdraft Fee if we pay an Item that results in an overdraft. Fees or service charges can overdraw your account if your available balance is not enough to pay them.

Ex. A at 7 (emphases added).

44. This language is included in the November 2022 DAR despite the contrary announcement to its customers made in or around June 2022 that that as of June 23, 2022, Fifth Third would no longer be charging the Overdraft-Returned Item Fees referenced in Section 4.1(b) of the DAR.

45.     Moreover, Section 4.2(a) also makes clear that the assessment of a Return Deposit Item fee is discretionary:

> (a) <u>Impact of Holds, Pending Transactions</u>. The availability of funds to pay Items posted to your account is described in the "Funds Availability Policy" section. Holds such as Card authorizations, legal process holds, and other pending transactions may reduce the available balance in your account. When funds are subject to a hold, those funds are not available to pay other Items. For example, if your account has an available balance of $100 and a hold is placed for a one-time Card authorization of $70, your available balance would be $30 to cover any other Items posted to your account. If a $50 check is presented to us that same Business Day, your available balance would not be enough to cover the check. If we pay the check, you would be charged an Overdraft Fee, and **if we return the check unpaid, you <u>may</u> be charged a Returned Item Fee**.

Ex. A at 7 (emphases added).

46.     And again, Section 4.4. — which discusses overdraft protection — states, in relevant part, that if an account "does not have sufficient available funds . . . we may not make an Overdraft Protection transfer and you may be charged an Overdraft Fee if the item is paid, and **<u>may</u>** be charged a Returned Item Fee if the Item is not paid." Ex. A at 9 (emphases added).

47.     When taken as a whole, Fifth Third's blanket fee policy is unfair, deceptive and unlawful and in breach of the covenant of good faith and fair dealing. Specifically, Fifth Third's DAR provided Fifth Third with discretion to assess such fees by repeatedly stating that Fifth Third "may" charge a fee for each returned item. In charging fees for revery returned item, even when consumers had no reasonable opportunity to avoid the fee, Fifth Third abused its discretion and acted in bad faith.

48.     In addition, the Fee Schedule is also internally inconsistent, as it references a "Return Deposit Item" fee of $15 per item on one page with no explanation for when these fees are triggered (*See* ECF No. 10-1, PAGEID #: 97), and no indication that this is the "Return Item Fee" referenced in Section 5.5.  Thereafter, on the following page, the Fee Schedule also states

that there is a "Returned Item Fee" that is $0, and states "[y]ou will not be charged a fee if we return your checks and payments unpaid." *Id.*, PAGEID #: 98.

49.     Fifth Third simultaneously represents that a consumer will be charged a fee of "$15 per item", and "$0 – No fee", for the same items. This is unfair, deceptive, and unlawful and in breach of the covenant of good faith and fair dealing. In addition, Fifth Third breached its deposit agreement by charging a fee for Returned Deposit Items where it represented that it would not do so, representing that that the cost of a Returned Item Fee was "$0 – No fee."

## IV.     FIFTH THIRD UNLAWFULLY CHARGED PLAINTIFFS RETURN "DEPOSIT" ITEM FEES

### A.   Nicole M. Milles

50.     Prior to the applicable limitations period, Ms. Milles opened a 53 Momentum Checking account with Fifth Third.

51.     On or around July 19, 2022, Ms. Milles attempted to deposit a check into her Checking account.

52.     At the time Ms. Milles attempted to deposit the check into her Checking account, she had no reason to believe that the check would be returned unpaid.

53.     Two days later, to Ms. Milles' surprise and by no fault of her own, the check was returned unpaid. Fifth Third charged Ms. Milles a Return Deposit Item Fee of $15.00. The Return Deposit Item Fee was deducted from Ms. Milles' account on that same day.

54.     Because the Return Deposit Item Fee which Fifth Third charged Ms. Milles was assessed pursuant to Fifth Third's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding her attempt to deposit the check into her account, the Return Deposit Item Fee was unfair and unlawful.

### B.   Rhonda and Jeffrey Knight

55.     Mr. and Mrs. Knight opened a joint 53 Momentum Savings account with Fifth Third in or around 2010.

56.     On or around September 28, 2023, Mr. and Mrs. Knight attempted to deposit a check into their joint Savings account.

57.     At the time they attempted to deposit the check into their account, Mr. and Mrs. Knight had no reason to believe that the check would be returned unpaid.

58.     The same day, to their surprise and by no fault of her own, the check was returned unpaid. Fifth Third charged Mr. and Mrs. Knight a Return Deposit Item Fee of $15.00. The Return Deposit Item Fee was deducted from their account.

59.     Because the Return Deposit Item Fee which Fifth Third charged Mr. and Mrs. Knight was assessed pursuant to Fifth Third's blanket policy of assessing such fees irrespective of the facts and circumstances surrounding their attempt to deposit the check into their account, the Return Deposit Item Fee was unfair and unlawful.

## CLASS DEFINITION AND ALLEGATIONS

60.     Plaintiffs bring this action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated.

61.     Plaintiffs propose the following Class and Subclass definitions, subject to amendment as appropriate:

> **Nationwide Class** (the "**Class**")
> All individuals who, during the applicable statute of limitations, had or have accounts with Fifth Third and were charged a Return Deposit Item Fee by Fifth Third.
>
> **Illinois State Subclass** (the "**Illinois Subclass**")
>
> All individuals who, during the applicable statute of limitations, had or have accounts with Fifth Third located in Illinois, and were charged a Return Deposit Item Fee by Fifth Third.

62.     Excluded from the Class and Subclass is Defendant, its parents, subsidiaries, affiliates, officers and directors, governmental entities, and judicial officers and their immediate family members and associated court staff assigned to this case.

63.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and Subclass before the Court determines whether certification is appropriate.

64.     The proposed Class and Subclass meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

65.     **Numerosity**. This action is appropriately suited for a class action. The members of the Class and Subclass are so numerous that the joinder of all members is impracticable. Plaintiffs are informed, believe, and thereon allege, that each proposed Class and Subclass contains thousands of accountholders who have been damaged by Defendant's conduct as alleged herein, the identity of whom is within the knowledge of Defendant and can be easily determined through Defendant's regularly maintained records, but exceed 1,000 persons.

66.     **Commonality.**  This action involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a.  Whether Defendant's assessment of Return Deposit Item Fees within the applicable statute of limitations was unfair, deceptive, or misleading;

b.  Whether Defendant breached the DAR with Plaintiffs and the Class by charging Return Deposit Item fees;

c.  Whether Defendant breached its Implied Covenant of Good Faith and Fair Dealing by assessing Return Deposit Item Fees;

d.  Whether Defendant was unjustly enriched as a result of charging Plaintiffs and the Class and Subclasses the Return Deposit Item Fees;

e.  Whether Plaintiff and the Class and Subclass suffered damages as a result of Defendant's assessment of Return Deposit Item Fees;

f.  Whether Defendant's conduct, as alleged herein, constitutes a violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, codified at 815 Ill. Comp. Stat. § 505/1, *et seq* (the "ICFA") (as to the Illinois Subclass);

g.  The proper method or methods by which to measure damages and/or restitution and/or disgorgement; and

h.  Whether Plaintiffs and the Class and Subclasses are entitled to declaratory and injunctive relief and the nature of that relief.

67.     **Typicality**. Plaintiffs' claims are typical of the claims of the members of the Class

15

and Subclass, because, *inter alia*, all Class and Subclass members have been injured through the uniform misconduct described above and were charged improper and deceptive fees as alleged herein. Moreover, Plaintiffs' claims are typical of the Class and Subclass members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclass. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class and Subclasses.

68. **Adequacy of Representation**. Plaintiffs are committed to the vigorous prosecution of this action and has retained competent counsel experienced in the prosecution of class actions and, in particular, consumer class actions against financial institutions. Plaintiffs and the Class and Subclass each maintained an account with Defendant and were harmed by Defendant's misconduct in that they were assessed unfair and illegal Return Deposit Item Fees in the same manner as members of the class. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass and have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the Class or Subclass, and Defendant has no defenses unique to Plaintiffs.

69. **Superiority**. A class action is superior to other methods for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class and Subclass members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class or Subclasses, on an individual basis, to obtain effective redress for the wrongs done to him or her. Further, even if the Class or Subclass members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a

single court, and presents no management difficulties under the circumstances here.

70.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class and Subclass, and other equitable relief on grounds generally applicable to the entire Class and the Subclass. Unless a Class and Subclass are certified, Defendant will be allowed to profit from its unfair and unlawful practices, while Plaintiffs and the members of the Class and Subclasses will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these violations, and the members of the Class and Subclasses and the general public may continue to be unfairly treated.

71.     Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its treatment as a class action.

72.     Defendant has acted and refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class and Subclass as a whole.

73.     **Application of Ohio Law to the Class.** With respect to Plaintiffs' and Class members' claims, application of Ohio law is neither arbitrary nor fundamentally unfair because Ohio has significant contacts and a significant aggregation of contacts that create a state of interest in the claims of Plaintiffs and the Class.

74.     The State of Ohio has a significant interest in regulating the conduct of businesses operating within its borders. Ohio, which seeks to protect the rights and interests of Ohio and all residents and citizens of the United States against a company headquartered and doing business in Ohio, has an interest in the Plaintiffs' claims.

75.     The principal place of business in Fifth Third is in Cincinnati, Ohio, which is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including account and major policy, financial, and legal decisions related to its fee policies.

76.     Fifth Third's corporate decisions regarding its misrepresentation and/or omissions

17

regarding its fee policies were made from and in Ohio.

77.     Fifth Third's tortious conduct emanated from Ohio.

78.     Under choice of law principles, the common law of Ohio applies to the nationwide common law claims of all Class members. Additionally, given Ohio's significant interest in regulating the conduct of businesses operating within its borders, Ohio's consumer protection statutes may be applied to non-resident consumer plaintiffs.

79.     In the alternative, because Plaintiffs are each from Illinois and maintained their Fifth Third accounts in Ohio, they seeks relief for themselves and other Illinois accountholders in Illinois law.

**COUNT I**
**(BREACH OF CONTRACT)**
**(On Behalf of Plaintiffs and the Class)**

80.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-79 as if fully set forth herein.

81.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

82.     Plaintiffs and each member of the Class have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in the Fifth Third's applicable DARs and related documentation.

83.     Section 5.5 of the DRA indicates that Fifth Third "will charge you a Return Item Fee as described in the fee schedule applicable to your account."

84.     Fifth Third's Fee Schedule states that it will charge "$0 – No fee" for Returned Item Fees.

85.     In breach of its agreement, Fifth Third charged Plaintiffs a $15.00 Returned Deposit Item Fee for what is described in Section 5.5 as a "Returned Item" and for which Fifth Third represented no fee would be assessed.

86.     As a direct and proximate result of Defendant's breach of the implied covenant of

good faith and fair dealing, Plaintiffs and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT II
### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (On behalf of Plaintiffs and the Class)

87.     Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1-79 as if fully set forth herein.

88.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

89.     Plaintiffs and each member of the Class have contracted for bank account deposit, checking, ATM, and debit card services, as embodied in the Fifth Third's applicable DARs and related documentation.

90.     Section 5.5 of the DRA indicates that Fifth Third "will charge you a Return Item Fee as described in the fee schedule applicable to your account."

91.     Fifth Third's Fee Schedule states that it will charge "$0 – No fee" for Returned Item Fees.

92.     In breach of its agreement, Fifth Third charged Plaintiffs a $15.00 Returned Deposit Item Fee for what is described in Section 5.5 as a "Returned Item" and for which it represented no fee would be assessed.

93.     Moreover, the circumstances that give rise to the imposition of the Returned Deposit Item Fee are nowhere explained in the DRA or the Fee Schedule.

94.     In addition, and by contrast to Section 5.5, Fifth Third's contract provides the Bank with discretion as to when to assess the Return Item Fees. Specifically, the DAR states that Fifth Third "may" charge fees on Returned Items – not "will." *See* Deposit Agreement at Section 4.1(b), ECF No. 1-1 at 28.

95.     A covenant of good faith and fair dealing is implied in Plaintiffs' and the Class members' Deposit Agreements with Defendant. Whether by common law or statute, all contracts

impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit – not merely the letter – of the bargain. Thus, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

96.    The material terms of the Deposit Agreement therefore included the implied covenant of good faith and fair dealing, whereby Defendant covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiffs and each member of the Class fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiffs and the Class members' rights and benefits under the contract.

97.    Plaintiffs and the Class members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contract, except for those they were prevented from performing or which were waived or excused by Defendant's misconduct.

98.    As alleged herein, Defendant breached the implied covenant of good faith and fair dealing by systematically charging Plaintiffs and the Class members' Return Deposited Item Fees for attempting to deposit checks that could not be deposited irrespective of the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account.

99.    Specifically, by exercising its discretion to assess Return Deposited Item Fees in *all* circumstances—even when customers were afforded no reasonable opportunity to avoid or prevent the fee— Fifth Third breached the implied covenant of good faith and fair dealing.

100.    Moreover, by disguising its Return Deposited Item Fees as "Returned Items," which are indicated as a $0.00 fee on the Fee Schedule, is misleading and deceptive and a breach of the covenant of good faith and fair dealing.

101.    Moreover, by charging a fee where the Return Item Fee is disclosed to amount to

20

only $0.00 is a breach of the implied covenant of good faith and fair dealing.

102. Defendant's actions to maximize its revenue from Return Deposited Item Fees impedes the right of Plaintiffs and other members of the Class to receive benefits that they reasonably expected to receive under the contract, as the money entrusted to Defendant for their banking activities was reduced.

103. On information and belief, Defendant's actions as alleged herein were performed in bad faith, in that the purpose behind the practices and policies alleged herein was to maximize Defendant's revenue from Return Deposited Item Fees at the expense of their customers, in contravention of Plaintiffs' and the Class members' reasonable expectations.

104. Plaintiffs and members of the Class have sustained damages as a result of Defendant's conduct as alleged herein.

105. As a direct and proximate result of Defendant's breach of the implied covenant of good faith and fair dealing, Plaintiffs and the Class members have been damaged in an amount to be proven at trial and seek relief as set forth in the Prayer below.

## COUNT III
## UNJUST ENRICHMENT
### (On behalf of Plaintiffs and the Class)
### *(Plead in the alternative to Counts I and II)*

106. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1– 79 as if fully set forth herein.

107. Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendant.

108. Plaintiffs and the members of the Class and Subclass conferred a benefit on Defendant, which Defendant knew about, when they enrolled in Defendant's deposit accounts and were charged Deposited Item Return Fees.

109. Plaintiffs and members of the Class and Subclass were, and many continue to be, customers of Defendant with deposit accounts. They reasonably believed that Defendant would

21

not charge them unreasonable fees beyond their control. Plaintiffs and members of the Class and Subclass suffered financial losses when they were charged Return Deposit Item Fees in the form of funds deducted from their accounts.

110. By charging Return Deposit Item Fees, Defendant unjustly enriched itself by taking a benefit, in the form of a $15 charge each time an item was returned, from each of their customers' accounts without providing any additional service or value to their customers, including Plaintiffs and members of the Class and Defendant has accepted and retained these benefits even though Defendant failed to provide any service or product to the customer, making Defendant's retention unjust.

111. By its wrongful acts and omission described herein, including charging fees for actions beyond the customer's control, and for which consumers had absolutely no way of avoiding, Defendant was unjustly enriched at the expense of Plaintiffs and the members of the Class.

112. Plaintiffs and the Class's detriment, and Defendant's enrichment, were related to and flowed from the wrongful conduct alleged in this Complaint.

113. Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and the putative Class members. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein.

114. Plaintiffs and the members of the Class have been damaged as a direct and proximate result of Defendant's unjust enrichment.

115. Plaintiffs and the members of the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

116. As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and the members of the Class are entitled to restitution of, disgorgement of,

and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for its inequitable and unlawful conduct.

**COUNT IV**
**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 Ill. Comp. Stat. ("ILCS") 505/1, *et seq.* ("ICFA")**
**(Plaintiffs on behalf of themselves and the Illinois Subclass)**

117.    Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1–79 as if fully set forth herein.

118.    Plaintiffs bring this claim individually and on behalf of the members of the Illinois Subclass against Defendant.

119.    Plaintiffs maintain a Fifth Third account located in Illinois, pursuant to the Deposit Agreement.

120.    Plaintiffs and the Illinois Subclass members are persons within the context of the ICFA, 815 ILCS 505/1(c), and Defendant is a person within the context of the ICFA, 815 ILCS 505/1(c).

121.    At all times relevant hereto, Defendant was engaged in trade or commerce as defined under the ICFA, 815 ILCS 505/1(f).

122.    Plaintiffs and the proposed Illinois Subclass are "consumers" within the meaning of the ICFA, 815 ILCS 505/1(e).

123.    The ICFA prohibits any deceptive, unlawful, unfair, or fraudulent business acts or practices, including using deception, fraud, false pretenses, false promises, false advertising, misrepresentation, or the concealment, suppression, or omission of any material fact, or the use or employment of any practice described in Section 2 of the Uniform Deceptive Trade Practices Act ("UDTPA"). 815 ILCS 505/2. This includes conduct that "creates a likelihood of confusion or misunderstanding" irrespective of whether the person has been in fact misled, deceived, or damaged thereby. 815 ILCS § 505/2; 815 ILCS 510/2(a)(12).

124.    The ICFA "is a regulatory and remedial statute intended to protect consumers . . . against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services*, 536 F.3d 663, 666 (7th Cir. 2008) (*citing* the Illinois Supreme Court's holding in *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403 (Ill. 2002)).

125.    The ICFA provides a broad private right of action for "[a]ny person who suffers actual damage as a result of a violation of this Act" and enables such person to bring an action against any business entity that violates the statute. 815 ILCS 505/10a(a); 815 ILCS 505/1(c). In addition, the ICFA provides for injunctive relief where appropriate as well as reasonable attorney's fees and costs. 815 ILCS 505/10a(c).

126.    Under the ICFA, conduct is considered unfair if it: (1) offends public policy; (2) is considered immoral, unethical, oppressive, or unscrupulous; and (3) causes substantial injury to consumers. *Robinson*, 201 Ill. 2d at 417–18. All three factors do not need to be met in order for a practice to be deemed unfair; a practice may be unfair "because of the degree to which it meets one of the criteria or because to a lesser extent, it meets all three criteria." *Id.* at 418. Conduct can offend public policy even "if not unlawful . . . [if] it [is] at least within the penumbra of some established concept of unfairness." *Ekl v. Knecht*, 223 Ill. App. 3d 234, 242 (1991). An injury, which is needed to prove unfairness and damages, generally must "(1) be substantial; (2) not be weighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

127.    Defendant charged Return Deposited Item Fees in the regular course of its business and in the course of conducting trade and commerce and charged Plaintiffs a Return Deposit Item Fee in the course of conducting trade and commerce. Defendant unilaterally imposed such charges on Plaintiffs and the members of the Illinois Subclass members.

24

128.    Under the CFPA, an "unfair" act or practice is one that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable," and "such substantial injury is not outweighed by countervailing benefits to consumers or to competition."   12 U.S.C. § 5531(c)(1).

129.    The CFPB — through Bulletin 2022-06 — has determined that Return Deposited Item Fees, such as those charged by Fifth Third, are materially unfair and deceptive under the CFPA because they cause substantial injury to consumers, are not reasonably avoidable by accountholders, and do not provide a benefit that outweighs the injury they cause.

130.    Thus, pursuant to the CFPB's Bulletin 2022-06, Defendant's practice of charging Return Deposited Item Fees is deceptive and unfair and constitutes a violation of the ICFA.

131.    Furthermore, Fifth Third represents that it "will" charge a fee for "Returned Items" in Section 5.5 of its DRA.  The "Returned Item" Fee is represented to be "$0 – No Fee; You will not be charged a fee if we return your checks and payments unpaid."  However, Fifth Third then assesses a "$15.00 per item" for "Return Deposited Item Fees", which is nowhere described or explained.  Fifth Third has thereby failed to clearly and uniformly disclose whether or not a fee will be charged to consumers for returned items, and failing to disclose the conditions under which the fee may be imposed. *See* 12 C.F.R § 1030.4(b)(4) (requiring the amount of any fee that may be imposed in connection with an account, or an explanation of how the fee will be determined, and the conditions under which the fee may be imposed).

132.    Fifth Third also simultaneously represents that both that it "will" charge Return Item Fees, or that it "may" charge Return Item Fees, thereby failing to clearly and uniformly disclose to consumers whether or not Return Deposit Item Fees will be charged, and failing to disclose the conditions under which the fee may be imposed. *Id*.

133.    Charging fees for routine, automated processes like Return Deposited Item Fees contradicts the principle of transparency in consumer financial transactions. The practice of imposing small fees that accumulate into substantial losses for consumers is a violation of public

25

policy, as established in *People ex rel. Hartigan v. Stianos*, 131 Ill. App. 3d 575, 581 (1985). Fifth Third's imposition of these fees, knowingly and willfully, for a costless and benefit-less service, while masking it as an additional value-added service, above and beyond the basic functions of a deposit account, is a clear attempt to profit at the expense of unwary consumers. Because bank accounts are a basic necessity in the modern economy, Fifth Third's practice of deliberately inserting ambiguous provisions into the DRA cornered consumers into paying for an unnecessary service and demonstrated a level of oppressiveness that constitutes a violation of public policy.

134.    Plaintiffs and all Illinois Subclass members sustained actual damages as a result of Defendant's unfair practice. The actual damages sustained by Plaintiffs and all Illinois Subclass members were caused by Defendant's unfair practice of charging Return Deposited Item Fees. In other words, had Defendant not engaged in the unfair practice of charging Returned Deposited Item Fees, Plaintiffs and the Illinois Subclass members would not have sustained damages. The actual damage is measured by the amount of the Return Deposited Item Fees charged by Defendant.

135.    By reason of the foregoing, Defendant's conduct, as alleged herein, constitutes an unfair practice committed in the course of trade and commerce, intended to be relied upon by accountholders, that proximately caused actual damages to Plaintiffs and the Illinois Subclass, in violation of 815 ILCS § 505/2, and Defendant is liable to Plaintiffs and the Illinois Subclass for the damages they have sustained as a result of Defendant's actions.

136.    Based on Defendant's unfair and/or deceptive acts or practices, Plaintiff and the Illinois Subclass are entitled to relief, including restitution, actual damages, treble damages, punitive damages, costs, and attorneys' fees under 815 ILCS § 505/10a.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiffs respectfully request that the Court enter judgment against Defendant in the form of an Order:

A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal

Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclass and Plaintiffs' undersigned attorneys as Class Counsel to represent the members of the Class and Subclasses;

        B.      Declaring that Defendant's conduct violated the laws referenced herein;

        C.      Finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

        D.      Awarding actual, consequential, punitive, statutory, and treble damages as applicable;

        E.      Awarding pre-judgment and post-judgment interest on all amounts awarded;

        F.      For injunctive relief as pleaded or as the Court may deem proper;

        G.      For disgorgement and restitution to Plaintiffs and the Class and/or Subclass members of all monies received or collected from Plaintiffs and the Class and/or Subclass members and all other forms of equitable relief;

        H.      Awarding reasonable attorneys' fees and expenses and costs of suit; and

        I.      For such other and further relief as the Court may deem proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs hereby demand trial by jury as to all triable issues.

Dated: July 2, 2024                  Respectfully submitted,

                          By: /s/ Christopher D. Wiest
                          Christopher Wiest (OH 0077931)
                          Chris Wiest, Atty. At Law, PLLC
                          50 E. Rivercenter Blvd, Ste. 1280
                          Covington, KY 41011
                          Tel: (513) 257-1895
                          E: chris@cwiestlaw.com

                          Lisa R. Considine (*pro hac vice* forthcoming)
                          Oren Faircloth (*pro hac vice* forthcoming)
                          745 Fifth Ave, Suite 500
                          New York, NY 10151
                          Telephone: 212-532-1091
                        Facsimile: 646-417-5967

Email: lconsidine@sirillp.com
Email: ofaircloth@sirillp.com
*Attorneys for Plaintiffs and the Proposed Class*

### CERTIFICATE OF SERVICE

I certify that a copy of the foregoing has been served upon all counsel of record, via filing via CM/ECF, this 2nd day of July, 2024.

/s/ Christopher D. Wiest
Christopher Wiest (OH 0077931)