# Deposit Account Rules & Regulations

# Privacy Policy

# How to Contact Us

**Issue Date:
November 18, 2022**

**Table of Contents:**

**Deposit Account Rules & Regulations**

| | |
|---|---|
| Introduction | 2 |
| Account Ownership | 3 |
| Account Types and Basic Terms | 4 |
| Overdrafts and Posting Order | 7 |
| Processing Deposits | 9 |
| Funds Availability Policy | 11 |
| Processing Withdrawals | 12 |
| Substitute Checks and Your Rights | 13 |
| Electronic Banking, Wires and Other Funds Transfers, Debit Card Agreement | 14 |
| General Terms | 22 |
| Arbitration Agreement | 26 |

**Fifth Third Consumer Privacy Policy**     **28**

**How to Contact Us**     **Back**



FIFTH THIRD BANK

## SECTION 1 – INTRODUCTION

**1.1. Your Deposit Contract**. These Deposit Account Rules & Regulations, the applicable fee schedule(s), the signature card, product disclosures, rate information and other account opening documents or disclosures for your account together create the contract between you and us (collectively, the "**Deposit Account Rules**") for your deposit account and your deposit relationship with us. The Deposit Account Rules apply to each personal and business deposit account you have at Fifth Third Bank, except for commercial accounts governed by the Commercial Account Rules. Please read the Deposit Account Rules carefully because they contain the terms of our agreement with you. By signing a signature card, submitting an account application or using any of our deposit account services, you and any other person identified as an owner of the account agree to the terms of the Deposit Account Rules. Other products or services such as Online Banking may have additional agreements.

If there is a conflict between the terms of this Deposit Account Rules & Regulations document and any product disclosure or agreement for a particular banking product or service, the product disclosure or agreement for the particular banking product or service will control to the extent of the conflict. If there is a conflict between the terms of the Deposit Account Rules and something said by one of our representatives, the written document will control.

**1.2. Identifying You**. To help the government fight the funding of terrorism and money laundering activities, federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents. An account is considered opened when you have complied with all account opening requirements, including but not limited to the minimum required funding of the account if applicable.

**1.3. Changes in Terms**. We may change the terms of the Deposit Account Rules, including the fees, benefits, and features associated with your account, at any time. We will notify you in advance of changes if required by applicable law. Notice to any one account owner is notice to all account owners of your account. The current version of these Deposit Account Rules & Regulations is available online at **53.com** or in any Fifth Third banking center. Continuing to use your account or keeping your account open following the effective date of any changes to the Deposit Account Rules constitutes your acceptance of the terms as modified.

**1.4. ARBITRATION DISCLOSURE**: **These Deposit Account Rules & Regulations contain an arbitration provision in the event of disputes between you and us in connection with your account or the agreements related thereto. Please read the *"Arbitration Agreement"* section carefully. Either you or we may elect to arbitrate a dispute, which means it will be resolved in a binding arbitration proceeding and you will not have the right to a jury trial or to resolve the dispute in court.**

**1.5. Defined Terms.** Below are some important terms used in the Deposit Account Rules:

**"ACH"** means funds transferred to or from your account through an automated clearing house network, which may include direct deposits of payroll or government benefits like Social Security.

**"ATM"** (Automated Teller Machine) means an electronic device that performs banking services, which may include deposits, withdrawals and balance inquiries.

**"Bank," "we"** and **"us"** means Fifth Third Bank, National Association.

**"Bank Affiliate"** means any one or more direct or indirect subsidiaries of Fifth Third Bancorp and its successors and assigns.

**"Business Day"** means Monday through Friday excluding federal holidays and any other days on which the Bank is permitted or required to be closed.

**"Card"** means one or more debit cards or any other access device issued or approved by us for use in conjunction with an ATM, banking terminal, electronic funds transfer device, Internet access product, line of credit account or any Fifth Third debit program.

**"Customer," "you"** and **"your"** means each owner of an account and anyone else with the authority to deposit, withdraw, or exercise control over the funds in an account.

**"Debit Card User"** means you and any other person you authorize or permit to use the Card.

**"Item"** or **"Items"** means all transactions, credits and debits to your account, including but not limited to checks, fees, service charges, ACH entries, funds transfers, cash withdrawals, Card purchases, Online Banking transactions, wire transfers and other amounts that are added to or subtracted from your account balance.

**"Losses"** means any losses, costs, liabilities, claims, damages or expenses (including reasonable attorneys' fees and court costs).

**"Obligation(s)"** means all loans, advances, indebtedness and each and every other obligation or liability of Customer owed to Bank and/or any Bank Affiliate, however created, of every kind and description whether now existing or hereafter arising and whether direct or indirect, primary or as guarantor or surety, absolute or contingent, liquidated or unliquidated, matured or unmatured, participated in whole or in part, created by trust agreement, lease, overdraft, agreement or otherwise, whether or not secured by additional collateral, whether originated with Bank or owed to others and acquired by Bank by purchase, assignment or otherwise, including all expenses and attorneys' fees incurred by Bank or any Bank Affiliate as a result of or incident to Customer's obligation or liability.

**"PIN"** means a four-digit personal identification number for your Card. Some merchants and ATMs may require a PIN when you use your Card.

---

## SECTION 2 – ACCOUNT OWNERSHIP

**2.1. Joint Ownership:** Where there is more than one account owner (sometimes referred to as "**Joint Customers**" herein), the account shall be deemed as owned as joint tenants with right of survivorship, not as tenancy by the entireties. Any Joint Customer may stop payment, close the account, withdraw all or a portion of the account balance, transfer funds to or from the account, or otherwise transact on the account and make changes or give instructions, including but not limited to enrolling in services, adding other signers to the account, and providing a power of attorney. Any such use of the account by any Joint Customer, or an authorized agent of any Joint Customer, shall be deemed ratified and approved by each Joint Customer as if the transaction or activity had been made and authorized personally by any and all of the Joint Customers. All Joint Customers agree to be jointly and severally liable to Bank for any deficit, regardless of which Joint Customer caused a deficit. Each Joint Customer will be liable for any overdraft of any other Joint Customer, whether or not receiving any benefit from the payment. Each Joint Customer intends and agrees that the account balance upon his/her death shall, subject to set off and any and all pledge or security agreements, be the property of the survivor, or if more than one survivor, the survivors shall remain as joint tenants with rights of survivorship between them. A payment to a Joint Customer or the survivor shall be a valid and complete discharge of the Bank from any and all liability. However, upon receipt of notice of death or incompetence of a Customer, Bank may restrict or prohibit further withdrawals until Bank is satisfied that its obligations under applicable law and the Deposit Account Rules have been met. Payments to the survivor shall be subject to all applicable estate or inheritance laws. If a person is a Joint Customer along with a minor, all of the above rules regarding joint ownership apply to that person. Each Joint Customer consents to the Bank sharing confidential information with other account owners, including but not limited to information related to garnishments and set off liabilities of other Joint Customers that may result in debits to the account.

**2.2. Minor Ownership:** A minor of any age may not be the sole owner of any Fifth Third checking, savings, or Express Banking account. A minor aged 13 years or older can be a joint owner on an account, as long as his/her parent or adult guardian (age 18 or older) is also a Joint Customer on the account.

**2.3. Payable on Death Account:** If your account type permits a payable on death beneficiary or custodian designation, this paragraph applies. When the signature card designates the beneficiary to receive the account funds upon the death of the Customer, it supersedes and revokes any previous appointment of any other beneficiary. Customer may withdraw all or any portion of the account balance during his/her lifetime and Customer retains the right to revoke the designation of any beneficiary. Bank has the right to deal with the Customer as if a beneficiary was not named. The amount on deposit in this account at the death of the Customer shall belong and be paid to the beneficiary, if the beneficiary survives the Customer, subject to the provisions of the Deposit Account Rules and applicable law. Payment to the beneficiary after the death of the Customer shall be a valid and full release and complete discharge of the Bank from any and all liability and shall be binding upon the heirs, executors, administrators and assigns of Customer. Bank reserves the right to require satisfactory proof of death of the Customer and survival of the beneficiary.

**2.4. Trust Account.** When the signature card indicates that the account is a "trust" account, the trust shall be the Customer and the current trustee(s) shall be the account signer(s). The trustee(s) shall be responsible for all transactions performed on the account. In the case of a trustee's death or resignation, the successor trustee(s) appointed by the trust or by court order shall become the trustee(s). Unless the trust expressly provides otherwise, all trust accounts shall be revocable by the grantor thereof during his or her life.

**2.5. Custodial Accounts for Minors.** When you establish an account under the Uniform Transfers to Minors Act or Uniform Gifts to Minors Act in the state where you reside (in either case, the "**Act**") and make deposits to that account as custodian for the benefit of a minor, all deposits to that account will be governed by the Act. The deposits made to the account belong to the minor, but the account may only be accessed by the custodian until the minor reaches the age of majority as defined by applicable state law. Upon the minor reaching the age of majority, the custodian may direct the Bank to close the account and transfer the funds to the minor.

**2.6. Other Fiduciary Accounts**. We reserve the right to require any documents we reasonably request to demonstrate appropriate authority in connection with opening a fiduciary account, including a trust account, estate account, guardianship or conservator account or similar type of account. The Bank has no fiduciary duty to you as the trustee, executor, guardian or conservator, or to the beneficial owners of the account, and we do not have to permit any changes to or withdrawals from the account until we receive all requested documents.

**2.7. Power of Attorney.** You may authorize a third party (the "**agent**") to act on your behalf with respect to your account by providing a power of attorney in a form that we agree to accept. The agent can transact on your account, sign on your behalf and otherwise issue instructions with respect to your account. You agree that we are not obligated to investigate any facts related to the power of attorney, including but not limited to whether the agent is acting within the scope of his or her authority, whether your signature on the power of attorney is genuine, or whether the agent's authority has been revoked. By providing a power of attorney, you authorize us to follow the agent's instructions and agree that we are entitled to rely upon the agent's authority to act on your behalf without liability to you, except as otherwise provided by applicable law.

**2.8. Personal Account.** If your account is listed as a personal account in our product information, you agree not to use it for business purposes. Ownership of your account is determined by the current signature card and/or account ownership information in our records. We are authorized to rely on the account ownership information contained in our records unless and until you notify us that such information has changed. We may, in our sole discretion, refuse to honor Items presented that are payable to a business accompanied by a request to cash the Item or deposit the Item into a personal account. We reserve the right to immediately close any personal deposit accounts used to process business transactions as determined by the Bank in its sole discretion.

**2.9. Business Account**. If your account is listed as a business account in our product information, you agree not to use it for personal, family or household purposes. If our records identify a business entity as the owner of an account, the account is payable to the business entity and not to any individual director, member, partner or shareholder. "**Business entity**" means a corporation, limited liability company, partnership, or any other business, government or non-profit organization. We are authorized to rely on all resolutions, signature cards and other documents you deliver to us in connection with your account and the authority of all signers to initiate transactions on your account. A signer is authorized to make withdrawals and write checks against the account, instruct us to close the account, and sign any agreements or documents relating to the account.

**2.10. Changes in Ownership, Signers**. Accounts are not transferable except as otherwise agreed in writing. You may not grant or assign any of your rights to your account without our written consent. Assignments and encumbrances other than indebtedness owing to the Bank must be consented to by the Bank after receipt of written notice from the Customer. Any request to change your account information will not be effective until the Bank has agreed to the change and had a reasonable time to act on your request. We may sell, assign, or transfer your account and/or Card, or any balance due thereon, and our rights and obligations under the Deposit Account Rules without prior notice to you.

**2.11. Disputed Ownership.** In the event the ownership of an account or signing authority on an account is in dispute for any reason, including but not limited to a lost or destroyed signature card, and/or in the event of a conflict between account owners or individuals with signing authority on an account, the Bank reserves the right to take action, which may include, without limitation, one or more of the following: instituting legal proceedings; freezing or placing a hold on the account until such time as the dispute or conflict is resolved; continuing to rely on our current signature cards and/or account ownership information in our records; or honoring the competing claim upon receipt of evidence we deem satisfactory in our sole discretion. We will not be liable for actions taken pursuant to this paragraph or for any costs or fees incurred by any delay.

**2.12. Change of Address, Customer Information**. You must notify the Bank promptly if your personal information changes, including your name, address, email address, phone number, ID number (Social Security or Tax Identification Number) or your residency or citizenship. If you do not notify us of a change in your personal information, we will send any notices and communications to you based on the address (or email address, if you have agreed to electronic notices) maintained in our records. If any notices or communications we send to you regarding the Deposit Account Rules or your account are returned as undeliverable, you agree that we may discontinue sending such documents to you and the information contained in such documents will be deemed available to you on the date they would have been mailed or otherwise provided to you pursuant to the Bank's notification process (e.g., by email, if you have agreed to electronic notices) and will be binding on you as of the date set forth in such documents. You agree that the procedures described herein are an acceptable method of delivery of information to you, and you will indemnify and hold us harmless for following these procedures.

---

### SECTION 3 – ACCOUNT TYPES AND BASIC TERMS

**3.1. Account Types**. The Bank offers a variety of checking, savings and certificate of deposit (CD) accounts. Below are general terms regarding these account types. Detailed terms for your account are provided in your product disclosures, fee

schedule, and rate sheet (if applicable), and those terms specific to your account will control to the extent of any inconsistency with the terms in this *"Account Types"* section.

(a) <u>Checking and Savings Accounts</u>.

(i) *Calculating Interest*. Some checking and savings accounts earn interest while others do not. Our interest-bearing checking and savings accounts have a variable interest rate. If you open an interest-bearing account, we will provide a rate sheet with the current interest rate and Annual Percentage Yield ("**APY**") for your account. We may change the interest rate for your account at any time without notice. Unless otherwise stated in your product disclosure, interest is computed on a 365-day basis using the daily balance method. Interest begins to accrue no later than the Business Day we receive credit for any non-cash deposit. We reserve the right not to pay interest on any deposited Item that is returned to us unpaid. We pay interest only in whole cents: any amount of interest less than half of one cent will be rounded down.

(ii) *Advance Notice of Withdrawals*. We reserve the right to require 7 days' prior written notice of withdrawal for all savings accounts.

(b) <u>Certificates of Deposit (CDs)</u>.

(i) *Time Deposit, Early Withdrawal Penalty*. A CD is a deposit account for a specified period of time. When you open a CD, you agree to keep the amount deposited (the "**principal**") on deposit with us for that time period. Withdrawal of the principal prior to maturity will be permitted only with the Bank's consent, which can only be given at the time of withdrawal. There is a penalty for withdrawing the principal prior to the CD maturity date.

(ii) *Calculating and Disbursing Interest*. Unless otherwise stated in your product disclosure, your CD has a variable rate of interest that is computed on a 365-day basis using the daily balance method. We may change the interest rate for your variable-rate CD at any time without notice. Interest begins to accrue on the Business Day of your deposit. The disclosed APY for your CD assumes that interest will remain on deposit until maturity. If your CD has a maturity of more than one year, interest will be paid at least annually.

(iii) *Renewal*. If your CD has an automatic renewal feature, it will renew on the maturity date to another CD of an equal term at the then-current interest rate unless you change or close the account or we notify you otherwise. If your CD does not have the automatic renewal feature, interest will not be paid after the maturity date unless the account is renewed.

(iv) *Maturity Date, Grace Period*. The maturity date is the last day of your CD's term. If your CD is renewed, there is a grace period following the maturity date during which you can change the term of your CD or withdraw the principal without paying an early withdrawal penalty. You may also be able to make additional deposits into your CD during the grace period. You cannot deposit additional funds into your CD outside of the grace period.

**3.2. Basic Terms for All Accounts.** The following terms apply to all accounts, except as otherwise provided in your product disclosures or the terms specific to your account.

(a) <u>Fees</u>. Your account is subject to the fees described in the fee schedule applicable to your account. You agree to pay for all fees applicable to your account and your deposit relationship with us. We may deduct these fees from your account balance, even if that makes your balance negative.

(b) <u>Setoff and Security Interest</u>. Any Obligation may be charged to any deposit account in the name of Customer or in the name of any Joint Customer, and Customer hereby grants to Bank a security interest in Customer's accounts with Bank and any accounts Customer has with any Bank Affiliate to secure the Obligations, regardless of the amount of contribution by any Customer to such account(s). Customer agrees that the security interest it has granted to Bank hereunder is consensual and is in addition to Bank's common law right of setoff. Customer also grants Bank the right, on Bank's own behalf and on behalf of any Bank Affiliate, to setoff against any and all funds in Customer's account to pay any Obligation owed by the Customer. Customer acknowledges that the Obligations that are secured by the Bank's security interest and setoff rights granted hereby include all present and future Obligations owed by Customer to any Bank Affiliate. Customer agrees that Bank may act in accordance with instructions received from any such Bank Affiliate regarding disposition of any funds in Customer's accounts without any further consent or action by Customer. Bank may exercise its right of setoff and its security interest without recourse to other collateral, if any, and even if such action causes Customer to lose interest, have transactions drawn on its account returned, incur an early withdrawal penalty or any other consequence. If Bank exercises its rights hereunder, Bank will notify Customer to the extent required by applicable law. Bank's right of setoff and its security interest may not apply to Customer's account to the extent expressly prohibited by applicable law.

(c) <u>Reporting Errors or Unauthorized Transactions</u>. You agree to carefully examine and reconcile your account statements. You must notify us in writing within thirty (30) days after we mail or otherwise make your statement available of any discrepancy or error on your statement. This includes, but is not limited to, any unauthorized or altered check on your statement, any errors on your statement, or Items that may have been forged or counterfeit. You must also notify us within thirty (30) days if you fail to receive a scheduled statement.

Since you are in the best position to prevent and discover an unauthorized transaction or error, you agree that we will not be liable if: (i) you did not exercise ordinary care in examining your statement; (ii) we did not receive timely notice of a discrepancy, error or unauthorized transaction; or (iii) the Items were forged, counterfeited or altered in a manner such that a reasonable person could not detect it. In addition, if you fail to report an unauthorized transaction within 30 days as provided herein, the Bank will not be liable to you for any subsequent unauthorized transactions on your account by the same person. You assume all liability for unauthorized signatures produced by a facsimile signature device or stamp. The 30-day notice requirement described herein does not limit our rights to attempt to collect on unauthorized or altered checks from other banks, clearing organization, or other party or otherwise attempt recovery from any party.

(d) <u>Statements and Notices</u>. Your account statements may be mailed or made available to the last known address in the Bank's records or made available via other means, such as Online Banking. Cancelled checks and original deposit account documents will not be provided in account statements, but reproductions will be available upon request. Fees may apply. Such requests will not extend the 30-day time frame within which Customer must notify Bank of errors, discrepancies or unauthorized transactions shown on their account statement as provided in the *"Reporting Errors or Unauthorized Transactions"* section.

(e) <u>Freezing Your Account, Blocking or Delaying Transactions</u>. We may reject, freeze, reverse or delay any transaction to or from your account or place a hold on some or all of the funds in your account if we believe it may be subject to irregular, fraudulent, illegal or unauthorized activity or we otherwise believe that such action is necessary to avoid Losses or reduce risk to us or you. We will not be liable for actions taken pursuant to this paragraph or for any costs or fees incurred by any delay. This paragraph does not imply that the Bank has an obligation to monitor accounts or transactions.

(f) <u>Business Accounts: Fraud Prevention Services</u>. The Bank offers products, services, and tools for business accounts designed to mitigate your risk of loss due to unauthorized transactions and/or fraud. These services (collectively, *"Fraud Prevention Services"*) are additional controls that may assist you in identifying, reporting and preventing fraud related to check issuance, electronic funds transfers, wire transfers, and other payment and receivable activities. Should you choose not to use available Fraud Prevention Services for your business accounts, and the use of the Fraud Prevention Services could have reasonably prevented a loss due to an incident of unauthorized activity and/or fraud, then you agree that you assume such risk of loss, will hold the Bank harmless for any loss which could have been prevented, and will be precluded from asserting that the Bank is responsible for the incident or loss.

(g) <u>Changing, Closing Your Account</u>. The Bank in its sole discretion reserves the right to change a Customer's account type and will provide prior notice to Customer if required by applicable law. The Bank may, at any time, immediately close the account of any Customer. If an account is closed before interest is credited, you will not receive any accrued interest. An account may be automatically closed if any withdrawal reduces the balance in the account to zero. You agree to pay any fees for the closure of your account in accordance with the fee schedule applicable to your account and you are liable for any overdrawn amounts. Any Items presented for payment on your account after it is closed will be returned unpaid. We will not be liable for any Item presented after an account has been closed. We may re-open a closed account for any reason, including without limitation, to post Items drawn on the account presented for payment, returned items, or fees. The Deposit Account Rules continue to govern matters related to your account even after your account is closed.

(h) <u>Linked Accounts, Shared Access</u>. You understand that when you link accounts, request combined statements, or permit another person to access your account in any manner, your account information (including personal or confidential information such as your transaction history or account status) may be made available to that person, including any other owner on any linked account. You acknowledge and agree that taking these actions constitutes your consent to the disclosure of your account information to such persons and that we are not responsible for such disclosure.

(i) <u>Notice Regarding Banking Activity.</u> Per applicable law, banking transactions may only be completed at certain authorized locations such as a branch or main office of the Bank. Transaction requests provided to or received by employees at other locations will be routed to authorized locations for fulfillment.

---

**SECTION 4 – OVERDRAFTS AND POSTING ORDER**

---

**4.1. Overdrafts.** An overdraft occurs when the available balance in your account is not enough to cover your payments and purchases or your use of the account. We have no obligation to pay an Item unless you have enough available funds in your account in accordance with the *"Funds Availability Policy"* section. If an Item is presented and the available balance in your account is not enough to cover it, we may either pay the Item (an "**overdraft**") and charge you an Overdraft Fee or return the Item unpaid which may result in a Returned Item Fee. See the fee schedule for your account for the amounts of these fees. If an item is returned, it may be represented by the payee. Should the represented item result in an Overdraft, the same standards and fees will apply. Even if we have paid Items that would overdraw your account in the past, we are not obligated to do so in the future. Our payment of an Item when your available balance is not enough to cover it is not an application for credit or approval of an extension of credit.

(a) <u>You are Responsible for Overdrawn Accounts</u>. You agree to immediately pay to us the amount of any overdraft, plus any related fees, without notice or demand from us. If you do not make an immediate payment to bring your account balance to zero or more, you may be charged additional fees and we may report you to consumer reporting agencies and/or close your account. This can affect your ability to open other accounts with us or other banks in the future and may be reflected in your credit report. You authorize us to apply any deposit to your account, including any federal or state benefits, to pay the amount of any overdraft and related fees. You understand that if you do not want your benefits applied in this way, you can change your direct deposit instructions with your benefits payor at any time. If you have a joint account, all Joint Customers will be jointly and severally liable for any overdraft plus any related fees, regardless of which account owner initiated or presented the Item that resulted in the overdraft.

(b) <u>Overdraft Fees and Returned Item Fees</u>. We may charge you a Returned Item Fee if we return an Item unpaid. We will charge you an Overdraft Fee if we pay an Item that results in an overdraft. Fees or service charges can overdraw your account if your available balance is not enough to pay them. If your account remains overdrawn after the initial overdraft occurrence, we will charge an Extended Overdraft Fee. The amount of the Extended Overdraft Fee and when it is charged differs based on account type. See the fee schedule applicable to your account for details.

(c) <u>Managing Your Account</u>. You can avoid overdraft situations by always making sure you have sufficient funds in your account to cover all of the payments and purchases you make. We have services available to help you keep track of your transactions and the money you have spent. These include logging on to **53.com**, using our Mobile App, enrolling in text or email alerts, using a Fifth Third ATM, or contacting us.

We also offer several options that may help you manage times when you are facing an overdraft situation. These options include Overdraft Protection and, for personal accounts, optional Overdraft Coverage, which are described below. You can get more information on these options by contacting us.

**4.2. Posting Transactions to Your Account.** The order in which Items are posted to your account affects your available balance and whether you will incur Overdraft Fees and Returned Item Fees. When a deposit or other credit is posted to your account, it increases your available balance. When a withdrawal or other debit (including a fee or service charge) is posted to your account, it reduces your available balance. We post Items to your account using automated systems. While we receive Items throughout the day, we generally treat them as if we received all Items at the same time at the end of the Business Day and apply them as described in the *"Posting Order"* section to calculate whether your account is overdrawn and fees will be charged. We look at your account only once to determine if an Item would cause your account to become overdrawn.

***The order in which we post Items to your account is different than the order in which you conducted them or we received them.*** You agree that we have discretion to determine the posting order for Items processed for your account and we may change our posting order at any time. When your available balance is not enough to pay all of the Items posted to your account that day, some posting orders can result in more overdrafts, and more related fees, than other posting orders. You agree that we may choose our posting order regardless of whether additional fees may result.

(a) <u>Impact of Holds, Pending Transactions</u>. The availability of funds to pay Items posted to your account is described in the *"Funds Availability Policy"* section. Holds such as Card authorizations, legal process holds, and other pending transactions may reduce the available balance in your account. When funds are subject to a hold, those funds are not available to pay other Items. For example, if your account has an available balance of $100 and a hold is placed for a one-time Card authorization of $70, your available balance would be $30 to cover any other Items posted to your account. If a $50 check is presented to us that same Business Day, your available balance would not be enough to cover the check. If we pay the check, you would be charged an Overdraft Fee, and if we return the check unpaid, you may be charged a Returned Item Fee.

The available balance in your account may change between the time you authorize a transaction and when that Item is paid. There can be multiple days in between the authorization of a Card transaction and when that Item is presented to us for payment. In addition, the amount of a pending transaction may not match the actual amount of the Item when it is posted to your account. For example, transactions with some merchants (including gas stations and restaurants) may involve an initial hold for a dollar amount that could be higher or lower than the final amount of the posted Item. We generally do not show holds or distinguish between available and unavailable funds in your account balance on your statement, so when you review your statement, it may appear that your account balance was sufficient to pay an Item for which we charged you a fee.

(b) Posting Order. We group Items into categories based on the Item type and post them to your account in the order shown below at the end of each Business Day. Please note that the examples in the table below are intended to be representative of the most common types of Items within each category. Other Items may be posted to your account even though not specifically listed below.

| **FIRST**<br><br>Add credits | Credits include:<br>• Deposits, including cash, check, ATM and Mobile Deposits<br>• Transfers into your account by ACH or wire transfer or through an Electronic Banking Service<br>• Refunds |
| --- | --- |
| **SECOND**<br><br>Subtract time-stamped debits | Time-stamped debits generally are debits that are authorized at the time the transaction is made and are later presented to us for payment. These debits appear in your account as pending transactions until they are posted. Time-stamped debits include:<br>• ATM withdrawals<br>• One-time Card purchases<br>• Electronic Banking transfers to another Fifth Third account<br>• Zelle Pay transfers<br><br>Time-stamped debits are posted in *chronological order*. Sometimes, debits of this nature may be submitted without a corresponding timestamp. In that case, they will post after debits with timestamps, from smallest to largest dollar amount. |
| **THIRD**<br><br>Subtract other debits | All other debits that are not categorized as time-stamped debits (above) or Bank fees (below) are in this category, which includes:<br>• Checks you've written<br>• Electronic Banking transfers to a non-Fifth Third account<br>• Overdraft Protection transfers<br>• Online Banking bill payments<br>• Outgoing ACH transfers (e.g., automatic bill payments)<br>• Outgoing wire transfers<br><br>These other debits are posted from *smallest to largest dollar amount*. |
| **FOURTH**<br><br>Subtract Bank fees and service charges | Fifth Third Bank's fees and service charges are subtracted last. |

**4.3. Overdraft Coverage.** For personal accounts, Overdraft Coverage may allow payments and purchases to be made when the available balance in your account is not enough to pay them.

(a) Standard Overdraft Coverage. All personal accounts have standard Overdraft Coverage, unless otherwise provided in your product disclosures. With standard Overdraft Coverage, we may pay overdrafts for the following types of Items at our discretion:
• Checks and other transactions made by using your checking account number
• Automatic and online bill payments
• ACH transactions
• Recurring Card transactions

Overdrafts for these types of Items are paid at our discretion, which means we *do not guarantee* that we will always pay any type of transaction in an overdraft situation. If we do not pay an overdraft, your transaction will be declined.

(b) <u>Optional Overdraft Coverage</u>. We also offer optional Overdraft Coverage for ATM and everyday (one-time) Card transactions. We generally will <u>not</u> pay overdrafts for these types of Items unless you enroll in optional Overdraft Coverage. You can enroll by contacting us or visiting **53.com/accountmanagementservices**. You may change your Overdraft Coverage election at any time using either of these methods.

***With either Overdraft Coverage option, your account may still become overdrawn and you can still incur Overdraft Fees.*** If you have not enrolled in optional Overdraft Coverage and we pay an overdraft for an ATM or everyday Card transaction, we will not charge an Overdraft Fee.

(c) <u>Business Accounts</u>. Business accounts are not subject to Overdraft Coverage. For business accounts, we may pay overdrafts for all types of Items at our discretion.

**4.4. Overdraft Protection.** Overdraft Protection allows you to use funds in your savings account, secondary checking account, or available credit from your credit card or line of credit (each, a "**Linked Account**") to cover overdrafts in your checking account (the "**Protected Account**"). **When an overdraft occurs in your Protected Account, an Overdraft Protection transfer from your Linked Account will be made automatically the next Business Day.** An Overdraft Protection Transfer Fee may be charged for these transfers; see your fee schedule and account disclosures for details.

You must have sufficient available funds or credit in your Linked Account to cover the overdraft Item(s) plus the Overdraft Protection Transfer Fee. The amount of funds or credit available for an Overdraft Protection transfer differs based on the type of Linked Account you have. If your Linked Account is a savings or checking account, we use the available balance. If your Linked Account is a line of credit, we use the available credit limit. If your Linked Account is a credit card, we use a variable amount determined by a combination of the available credit limit, cash advance limit and other risk factors. Credit cards may go overlimit as a result of the advance.

If your Linked Account does not have sufficient available funds or is subject to a restriction, or if your Protected Account is subject to a hold, we may not make an Overdraft Protection transfer and you may be charged an Overdraft Fee if the item is paid, and may be charged a Returned Item Fee if the Item is not paid. We are not required to notify you if we cannot complete an Overdraft Protection transfer.

If there are not sufficient funds available in your Linked Account to cover the full overdraft balance plus the Overdraft Protection Transfer Fee, we will attempt to transfer enough funds to cover one or more overdraft Items plus the Overdraft Protection Transfer Fee. We will start with the last Item considered in the posting order and pay as many overdraft Items as possible based on the funds available in your Linked Account. The Overdraft Protection transfer will be the amount needed to cover at least one overdraft item in full, along with the overdraft protection fee. If more than one item is contributing to the overdraft, we will transfer funds to cover as many overdraft items as possible. After paying as many Items as possible with an Overdraft Protection transfer from your Linked Account, additional Items may be subject to Overdraft Fees or Returned Item Fee.

The maximum amount of an Overdraft Protection transfer also depends on the type of Linked Account you have. If your Linked Account is a credit card, the maximum amount of an Overdraft Protection transfer is $32,767.00. If your Linked Account is a savings or checking account or a line of credit, the maximum amount of an Overdraft Protection transfer is $99,999.99.

Overdraft Protection is available for both personal and business accounts but there are limits on the types of accounts that can be enrolled in Overdraft Protection. Your Protected Account can only have one Linked Account, but a Linked Account can provide Overdraft Protection for multiple Protected Accounts. Both the Linked Account and Protected Account must share at least one owner to maintain Overdraft Protection. Any owner of both the Linked Account and Protected Account may enroll in Overdraft Protection without the consent of the other owners, and any owner of either the Linked Account or Protected Account may cancel Overdraft Protection without the consent of the other owners.

We reserve the right to cancel your Overdraft Protection service at any time. If the Linked Account or Protected Account is closed, your Overdraft Protection will be automatically cancelled. Your request to add or cancel Overdraft Protection will become effective after we have received and had a reasonable time to process it.

---

### SECTION 5 – PROCESSING DEPOSITS

**5.1. Accepting Items for Deposit.** We may accept, accept for collection only, refuse, or return all or part of any deposit. We may require that you deposit a check instead of allowing you to cash the check. We will not cash checks for business accounts. If we accept an Item on a collection basis, this means we will not add funds to your account until we have actually been paid for the Item. All Items accepted for deposit or collection are credited to your account subject to final payment and receipt of proceeds by us. This means that until the Bank has actually received the funds or until such Items become final

under applicable law, a deposit Item can be returned and charged back to your account even if this causes your account to become overdrawn. We are not liable for deposits made to our depository box (including night deposit boxes) until we retrieve and process the deposit.

In accepting Items for deposit, the Bank acts only as Customer's collection agent and shall not be liable for any Losses caused by the negligence or failure of its agents, correspondents, or other banks while the Item is in their hands or in transit. The Bank is not responsible for Items lost or delayed in the collection process. Customer agrees that Bank can pursue collection of previously dishonored Items and waives any time restriction on Bank's election to finally pay or revoke provisional credit for any Item. Failure to enforce these rights by the Bank shall not be considered a waiver thereof.

We may credit a deposit to an account based solely on the account number listed on the deposit slip or other instruction to credit an account, even if the name on the deposit slip or other instruction differs from the name on the account. You must correctly identify the account into which you want funds deposited. If you fail to properly identify the account to which a deposit is made or intended to be made, you are responsible for any Losses caused by such failure.

**5.2. Remotely Created Checks**. A remotely created check is created by the payee and not signed by the account owner. If you deposit a remotely created check, you guarantee it was authorized by the account owner for payment. You agree to indemnify us from all Losses related to a claim that a remotely created check was not authorized by the persons on whose account it was drawn.

**5.3. Deposit Reconciliation**. The amount of your deposit is based on the amount shown on the deposit slip or otherwise provided by you when the deposit is made. After your deposit is made, we may verify the accuracy of the deposit amount, although we reserve the right not to do so in every case. If we determine that a deposit amount is incorrect, we may adjust (credit or debit) your account for any discrepancy, although we reserve the right not to do so if the discrepancy is less than our standard adjustment amount. In this case, we may not adjust the amount of the deposit unless you notify us of the discrepancy within one (1) year of the date of your account statement showing the deposit. If this time period passes and you do not notify us of the discrepancy, the amount indicated on your statement becomes final. We may change our standard adjustment amount from time to time without notice to you.

**5.4. Endorsements.** We reserve the right to require your personal endorsement prior to accepting any Item. We may accept and process any Item deposited to your account without your endorsement and process the Item as if you had endorsed it. You agree to pay us for any Losses we incur as a result of your failure to properly endorse any Item. We are not bound by any conditional or restrictive endorsements on a check you deposit or cash or any endorsement "without recourse."

You must endorse checks in the area that extends 1.5 inches from the trailing edge of the back of the check. The trailing edge is directly behind where "Pay to the Order" is printed on the face of the check. This is where most endorsements are usually placed. Any marks below the 1.5 inches on the back of the check may obscure the bank's information and ultimately result in a delay in returning the check, and could result in the forfeiture of your right to the recovery of those funds. You agree to reimburse and hold us harmless for any Losses resulting from any illegible endorsements and any marks or writing entered on the back of a check that obscured or interfered with a bank's endorsement or caused delays in processing or returning the check.

**5.5. Returned Items, Applicable Fees.** You are responsible for returned Items. If a deposited or cashed Item is returned unpaid, we may subtract the amount of the Item from your account or place a hold on that amount without prior notice to you and regardless of whether settlement of such Item was considered final. If you do not have sufficient available funds to cover the amount of the returned Item, it may overdraw your account. We are not liable to you for any chargeback or overdraft to your account arising from a returned Item.

If a deposited Item is returned unpaid, we may choose to redeposit the Item either in its original form or by converting it to an electronic payment and redepositing it as an ACH entry, in each case without notice to you. This type of check conversion is not an electronic funds transfer (EFT) subject to the terms of the *"Electronic Funds Transfer Disclosures"* section.

When a deposited Item is returned unpaid, we will provide an image or other record of the Item at our discretion, which you agree will be sufficient for you to protect your rights against the maker. If a deposited or cashed Item is returned, we will charge you a Returned Item Fee as described in the fee schedule applicable to your account. If a returned Item is later re-submitted by us for payment, we may charge you a re-presented Item fee as provided in the fee schedule for your account.

**5.6. Substitute Checks.** You understand that we will not accept a substitute check that was created by a person other than a bank which has not yet been transferred by a bank, unless we agree otherwise under separate written agreement. You agree to reimburse us for any Losses we incur as a result of cashing or depositing such an Item and you give us the

same warranties and indemnities that we would give under applicable law as a reconverting bank. See the *"Substitute Checks and Your Rights"* section for additional information on substitute checks.

---

## SECTION 6 – FUNDS AVAILABILITY POLICY

This Funds Availability Policy describes when funds deposited to your checking account will be made available to you. While we generally apply the same policy to deposits you make to your savings account, please keep in mind that this Funds Availability Policy does not apply to these deposits and we may delay availability of funds from these types of deposits.

**6.1. Funds Availability**. Once the funds from your deposit are available, you can withdraw them in cash, and we will use them to pay Items that post to your account. Funds from your in-person cash deposits will be available to you on the day we receive your deposit. Electronic direct deposits and wire transfers into your account will be available on the Business Day we receive the deposit. Availability of funds from your check deposits is different for personal accounts and business accounts and depends upon the manner in which you make your deposit, as described below.

(a) <u>Personal Accounts</u>. Check deposits made at one of our branches, by ATM, with a Bank employee, or using Mobile Deposit will be made available to you on the first Business Day after the day we receive your deposit. Checks deposited through Mobile Deposit using the immediate funds option will be available on the Business Day we receive your deposit. Funds from all other check deposits will generally be made available to you no later than the second Business Day after the day we receive your deposit. Longer delays may apply in certain circumstances as described in the *"Longer Delays May Apply"* section.

(b) <u>Business Accounts</u>. The following types of deposits will be available on the first Business Day after the day your deposit is received:

- U.S. Treasury checks that are payable to you
- Federal Reserve Bank checks that are payable to you
- Federal Home Loan Bank checks that are payable to you
- Postal money orders that are payable to you
- State and local government checks that are payable to you*
- Cashier's and certified checks that are payable to you*

*These types of checks must be deposited in-person at a branch using a special deposit slip to ensure next Business Day availability.

For checks deposited using Mobile Deposit, $225 of your total deposit amount will be available on the next Business Day and the remaining funds will be available the second Business Day after we receive the deposit. Checks deposited through Mobile Deposit using the immediate funds option will be available on the Business Day we receive your deposit. For all other check deposits, $225 of your total deposit amount will be available on the next Business Day and the remaining funds will be available the second Business Day after we receive the deposit. Longer delays may apply in certain circumstances as described in the *"Longer Delays May Apply"* section.

**6.2. Determining When Your Deposit is Received.** We determine when your deposit has been received using the following guidelines. If you make a deposit on a Business Day before the applicable cut-off time, we will consider your deposit to be received that same day. If you make a deposit on a Business Day after the applicable cut-off time, we will consider your deposit to be received the next Business Day. Deposits made on non-Business Days are also considered to be received the next Business Day.

For example, consider a check deposit to a personal account at a Fifth Third ATM. If the check is deposited on a Business Day (e.g., Thursday) before the cut-off time, it will be considered received that same day (Thursday) and the funds will be available the following Business Day (Friday). If the check is deposited after the cut-off time on a Business Day (Thursday), it will be considered received the next Business Day (Friday) and the funds will be available the following Business Day (Monday). If the check is deposited on a non-Business Day (e.g., Saturday), it will be considered received the next Business Day (Monday) and the funds will be available the following Business Day (Tuesday).

See below for the applicable cut-off times for different deposit channels:

| Channel | Cut-Off Time |
|---|---|
| **In Person at a Fifth Third Banking Center** | Banking Center Closing Time (varies by location) |
| **Night Depository\* at a Fifth Third Banking Center** | 7 a.m. local time |
| **Fifth Third ATM** | 7 p.m. ET |
| **Mobile Deposit** | 8 p.m. ET |
| **Online Banking\*\***<br>**Mobile Banking (transfers)**<br>**Automated Telephone Customer Service Line** | 9 p.m. ET |

\*Deposits made at a night depository will be retrieved by us once at the beginning of each Business Day. If you make a deposit to a night depository during the day, it will not be considered received by us until the next Business Day when we retrieve it and process it. Some branches may process night depository contents on non-business days. In those instances, funds availability will begin as though the deposit was processed on the next business day.

\*\*Transfers to or from a non-Fifth Third deposit account made via Online Banking may be subject to different cut-off times, which are disclosed to you in Online Banking.

**6.3.  Longer Delays May Apply**. In some cases, we will not make all the funds that you deposit by check available to you as described above. If the funds from your deposit will not be available as described above, we will notify you at the time you make your deposit. If your deposit is not made directly to one of our employees, or if we decide to take this action after your deposit is made, we will mail or otherwise provide you the notice by the next Business Day. If you need the funds from a deposit right away, you should ask us when the funds will be available.

In addition, we may delay the availability of funds deposited for a longer period in the following circumstances:

- We have reason to believe the check deposited will not be paid.
- Checks totaling more than $5,525 that are deposited on the same day.
- A check is re-deposited that has been returned unpaid.
- The deposit account has been repeatedly overdrawn in the last six months.
- An emergency, such as failure of communications or computer equipment, occurs.
- An operational issue has occurred, such as failure of an ATM-owning financial institution to timely balance or reconcile the ATM and/or the ATM deposits.

Under these circumstances, availability of funds will generally be no later than the seventh (7th) Business Day after the day of your deposit.

**6.4.  Funds Availability for New Accounts.** An account is considered a new account during the first thirty (30) calendar days after the account is established. An account is not considered a new account if the Customer has had, within thirty (30) calendar days before the new account is established, another checking account at the Bank for at least thirty (30) calendar days.

Funds from wire transfers and electronic direct deposits to your account will be available on the Business Day we receive the deposit. Funds from deposits of cash and the day's total deposits of cashier's, certified, traveler's, U.S. Treasury checks, U.S. Postal money orders, Federal Reserve Bank checks, Federal Home Loan checks and state and local government checks will be available on the first Business Day after the day your deposit is received by the Bank, provided all checks are payable to you and you use a special deposit slip if required. For business accounts, if you do not make this deposit in person to a Bank employee, or use a special deposit slip, if required, the funds will be available on the second Business Day after the day your deposit is received by the Bank. Funds from all other check deposits will be available no later than the ninth (9th) Business Day after the day of your deposit.

---

**SECTION 7 – PROCESSING WITHDRAWALS**

---

**7.1.  Cashing Checks.** We reserve the right to refuse to cash a check written to you. We will not cash checks for business accounts. We may limit availability of check cashing services to certain Bank locations without notice to you. You agree that we may charge a fee and require satisfactory identification as conditions to cashing a check written on your account for any

payee that does not have an account with us. You also agree that we may refuse to pay any such check if the payee refuses to comply with either of these conditions.

**7.2. Checks with Legends or Restrictions.** You agree that we may disregard legends or restrictions on checks, such as "paid in full" or "not valid after 30 days," and pay the check even if the legend or restriction has not been satisfied. We will not be liable to you for any Losses that result from a legend or restriction on a check or from our failure to abide by any such legend or restriction.

**7.3. Large Cash Withdrawals**. We reserve the right to require reasonable advance notice for large cash withdrawals and to refuse to honor a cash withdrawal or check cashing request at a Bank location if we believe the amount involved is unreasonably large or that acting on your request would create an undue hardship or security risk for us.

**7.4. Converting Checks to Electronic Debits.** Under certain circumstances, your check information can be converted to electronic information by merchants, banks or others. Merchants may use check information such as routing, account and serial numbers to make an electronic presentation against your account and the check may not be returned to you. These types of transactions may occur at point-of-sale purchases or where checks are submitted to a lock box for processing. If you give information about your account (such as the routing number and account number) to a merchant, we may presume any debit initiated by the merchant to whom you gave the information is deemed authorized. If any of your checks are converted to an electronic presentment by others, we shall have no liability to you should we fail to honor any stop payment order you have placed on the check. Also, we shall have no liability to you for duplicate payments if a paper check and an electronic presentment are both presented to us for payment. This limitation of our liability to you in no way affects your legal right to dispute an electronically presented Item under applicable law, nor does it affect your legal rights to recover a duplicate payment from the merchant or other payee.

**7.5. Stale-Dated and Post-Dated Checks.** We are not required to pay a stale-dated check (a check presented more than 6 months after its date of issuance), but we may pay any such check and charge it to your account. We are also not required to pay a post-dated check (a check dated in the future), but we may pay any such check and charge it to your account even if it is presented before the date stated on the check. We assume no liability for the payment of stale-dated or post-dated checks unless we receive a stop-payment request as described in the *"Stop Payment Orders"* section. It is Customer's obligation to remove a stop-payment order for a post-dated Item once the Item is no longer post-dated.

**7.6. Review of Checks and Signatures.** We use automated check processing procedures and do not individually examine most checks. You agree that we can process checks based on the MICR data printed at the bottom of the check without individually examining the date, signatures, legends or endorsements, and that we have exercised ordinary care if we examine only those checks that we have identified for review based on our internal criteria as it may be updated from time to time. You agree that automated processing of your checks is reasonable and that the exercise of ordinary care will not require us to detect forgeries or alterations that could not be detected by a person observing reasonable commercial standards.

**7.7. Multiple Signatures.** We have no obligation to honor instructions you may give requiring multiple signatures, unless we have agreed otherwise in a separate written agreement with you. If you indicate on your signature card or other account documents that more than one signature is required, this instruction is for your own internal procedures and is not binding on us. We may disregard your instructions to allow withdrawals only upon multiple signatures with respect to checks, electronic fund transfers and other debits or withdrawal requests and we are not liable to you if we do so.

---

## SECTION 8 – SUBSTITUTE CHECKS AND YOUR RIGHTS

---

**Important Information About Your Personal Checking Account**

**What is a substitute check?**

To make check processing faster, federal law permits banks to replace original checks with "substitute checks." These checks are similar in size to original checks with a slightly reduced image of the front and back of the original check. The front of a substitute check states: "This is a legal copy of the original check. You can use it the same way you would use the original check." You may use a substitute check as proof of payment just like the original check.

Some or all of the checks that you receive back from us may be substitute checks. This notice describes rights you have when you receive substitute checks from us. The rights in this notice do not apply to original checks or to electronic debits to your account. However, you have rights under other laws with respect to those transactions.

**What are my rights regarding substitute checks?**

In certain cases, federal law provides a special procedure that allows you to request a refund for losses you suffer if a substitute check is posted to your account (for example, if you think that we withdrew the wrong amount from your account or that we withdrew money from your account more than once for the same check). The losses you may attempt to recover under this procedure may include the amount that was withdrawn from your account and fees that were charged as a result of the withdrawal (for example, bounced check fees).

The amount of your refund under this procedure is limited to the amount of your loss or the amount of the substitute check, whichever is less. You also are entitled to interest on the amount of your refund if your account is an interest- bearing account. If your loss exceeds the amount of the substitute check, you may be able to recover additional amounts under other law.

If you use this procedure, you may receive up to $2,500 of your refund (plus interest if your account earns interest) within ten (10) Business Days after we received your claim and the remainder of your refund (plus interest if your account earns interest) not later than forty-five (45) calendar days after we received your claim. We may reverse the refund (including any interest on the refund) if we later are able to demonstrate that the substitute check was correctly posted to your account.

**How do I make a claim for a refund?**

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, contact us. You must contact us within forty (40) calendar days of the date that we mailed (or otherwise delivered by a means to which you agreed) the substitute check in question or the account statement showing that the substitute check was posted to your account, whichever is later. We will extend this time period if you were not able to make a timely claim because of extraordinary circumstances.

Your claim must include:

- A description of why you have suffered a loss (for example, you think the amount withdrawn was incorrect);
- An estimate of the amount of your loss;
- An explanation of why the substitute check you received is insufficient to confirm that you suffered a loss; and
- A copy of the substitute check and/or the following information to help us identify the substitute check: the check number, the name of the person to whom you wrote the check, and the amount of the check.

---

**SECTION 9 – ELECTRONIC BANKING SERVICES, WIRES AND OTHER FUNDS TRANSFERS, AND DEBIT CARD AGREEMENT**

---

**9.1. Electronic Banking Services.** The Bank offers a variety of Electronic Banking Services to assist you in managing your account. "**Electronic Banking Services**" are those services that allow you to access your account using ATMs, computers, phones, Cards, and other devices to make deposits, transfers or withdrawals to or from your account. Any Customer, whether individually or jointly, may use any Electronic Banking Service. A separate agreement may be required for certain Electronic Banking Services, including separate agreements for Online and Mobile Banking Services. Any such separate agreement or specific service terms provided for any Electronic Banking Services will control to the extent of any inconsistency with the terms in this *"Electronic Banking Services"* section. For additional provisions relating to your Card, see the *"Debit Card Agreement"* section.

(a) <u>Protection of Security Credentials</u>. Customer agrees to keep confidential all account and personal identification information, passwords, access codes, PINs and other security devices necessary for us to provide you Electronic Banking Services (collectively, "**security credentials**"). Each Customer, including both Joint Customers, who are issued security credentials is a user of all applicable Electronic Banking Services (individually, a "**User**" and collectively, "**Users**"). Your sharing of your security credentials with any other person is your authorization for that person to be considered a User by us and your acknowledgement and agreement that we may rely on any instructions provided by that User regarding your account. Except as otherwise provided herein, Customer will be responsible for all Electronic Banking Services initiated using Customer's security credentials and/or by a User unless and until Customer has notified Bank that such use is unauthorized and Bank has had a reasonable opportunity to act upon such notice. Bank reserves the right to refuse or terminate Customer's (or any of Customer's Users) permission to use any or all of the Electronic Banking Services at any time in Bank's sole discretion.

(b) <u>Governing Law</u>. Notwithstanding any governing law provision that may be provided elsewhere in the Deposit Account Rules, the laws of the United States and the State of Ohio govern this Section 9, including the Electronic Banking Services, all funds transfers described below in the *"Wire Transfers"* and *"Other Funds Transfers"* sections, and the *"Debit Card*

*Agreement"* below, regardless of the Customer or User's place of residence or the state where the account is located, and all funds transfers are agreed to be originated within the State of Ohio.

**9.2. Electronic Funds Transfer Disclosures.** The Electronic Funds Transfer Act and Regulation E, Subpart A require banks to provide certain information to consumers regarding electronic funds transfers (defined below). This *"Electronic Funds Transfer Disclosures"* section applies to any electronic funds transfer to or from a personal account. This *"Electronic Funds Transfer Disclosures"* section does not apply to business accounts. This *"Electronic Funds Transfer Disclosures"* section does not apply to wire transfers or other funds transfers that are not subject to Regulation E, Subpart A. See the *"Wires Transfers"* and *"Other Funds Transfers"* sections for the terms applicable to those types of transactions.

An "**electronic funds transfer**" or "**EFT**" is any transaction that is accomplished electronically to debit or credit a personal account, as well as all transfers resulting from Card transactions. Examples of EFTs include the following:

- Card transactions
- Digital Banking Services, including Online and Mobile Banking
- Electronic transfers using your account number, such as employer payroll, government benefits or other direct deposits or bill payments to third parties
- Telephone transfers
- Overdraft Protection transfers

Please note that not every automatic or pre-authorized deposit or withdrawal using an Electronic Banking Service is an EFT. Some of these transactions involve a third-party mailing the Bank a check or draft and, therefore, are not EFTs covered by this *"Electronic Funds Transfer Disclosures"* section. However, all Card transactions are covered, even if an electronic terminal is not involved at the time of transaction. For additional provisions relating to your Card, see the *"Debit Card Agreement"* section.

(a) <u>Consumer Liability</u>. Tell us AT ONCE if you believe your Card or password/PIN has been lost or stolen, or if you believe that an electronic fund transfer has been made without your permission using information from your check. Telephoning is the best way of keeping your possible losses down. You could lose all the money in your account (plus your savings or credit account if you have a checking account with the Overdraft Protection feature). If you tell us within two (2) Business Days after you learn of the loss or theft of your password/PIN, you can lose no more than $50 if someone used your password/PIN without your permission.

If you do NOT tell us within two (2) Business Days after you learn of the loss or theft of your password/PIN, and we can prove we could have stopped someone from using your password/PIN without your permission if you had told us, you could lose as much as $500.

Also, if your statement shows transfers that you did not make or that were not authorized by you, including those made by PIN, code or other means, tell us at once. If you do not tell us within sixty (60) days after the statement was mailed or made available to you, you may not get back any money you lost after the sixty (60) days if we can prove that we could have stopped someone from taking the money if you had told us in time. If a good reason (such as a long trip or a hospital stay) kept you from telling us, we will extend the time period for a reasonable time.

(b) <u>Transfer Types and Limitations</u>.

*Electronic Check Conversion*: You may authorize a merchant or other payee to make a one-time electronic payment from your checking account using information from your check to:
- Pay for purchases.
- Pay bills.

*Authorization to Convert to an EFT*. When you provide the Bank a check as payment, you authorize us either to use information from your check to make a one-time electronic fund transfer from your account or to process the payment as a check transaction.

*Transfer Limitations*. The following limitations apply to EFTs:
- Due to certain state banking laws currently in effect, you may not be able to make deposits at certain locations.
- The immediate use or availability of deposited funds is in accordance with the Deposit Account Rules.
- For security reasons, there are limits on the amount of cash withdrawals from the account that may be made from Fifth Third ATMs or other ATMs.
- There are limits on the amount of cash you may withdraw or transfer immediately after you make a deposit.
- Once you have placed a stop payment order on a pre-authorized transfer, we will not make any more pre-authorized transfers to the person to whom you authorized payment until we receive a new written authorization from you.

- No deposits or withdrawals may be made on a dormant account through Fifth Third ATMs or other ATMs.
- For security reasons, there may be other limits on the number and amount of transactions you can make using Fifth Third Bank ATMs or other ATM terminal systems.
- The Bank specifically reserves the right to require seven (7) days' written notice before funds deposited in any savings deposit account may be withdrawn.

The above limits on EFTs are in addition to any other applicable limits in the Deposit Account Rules or in any other agreement or disclosure related to your account, Card or the Electronic Banking Services.

(c) <u>Transaction Fees</u>. Additional fees may be charged for electronic funds transfers related to the cost of providing the Electronic Banking Service or other fees imposed by the network or third-party service provider facilitating the electronic funds transfer. See the *"Debit Card Agreement"* section, the agreement for the applicable Electronic Banking Service or the terms and conditions provided to you at the time of service. Transaction fees may include fees for balance inquiries or other account maintenance services provided by Bank at an ATM.

(d) <u>ATM Fees</u>. Your account may be subject to charges when you use an ATM that does not display the Fifth Third Bank logo. Also, when you use an ATM not owned by us, you may be charged a fee by the ATM operator or any network used, and you may be charged a fee for a balance inquiry even if you do not complete a fund transfer.

(e) <u>Confidentiality</u>. We will disclose information to third parties about your account or the transfers you make:
- Where it is necessary for completing transfers;
- In order to verify the existence and condition of your account for a third party, such as a credit bureau or merchant;
- In order to comply with government agency or court orders;
- In order to comply with applicable laws, network rules, or third-party service provider terms and conditions or
- If you give us your written permission.

(f) <u>Right to Receive Documentation of Transfers</u>.

*Preauthorized credits***:** If you arrange to have direct deposits made to the account at least once every sixty (60) days from the same person or company, you can contact us to find out whether or not the deposit has been made.

*Periodic statements:* You will get a monthly account statement unless there are no transfers in a particular month. In any case, you will get the statement at least quarterly, unless the account is dormant, in which case you will receive a statement only once a year.

*ATM transfers:* You will get a receipt at the time you make any transfer to or from your account using one of our ATMs or point-of–sale terminals.

(g) <u>Preauthorized Transfers</u>.

*Right to Stop Payment of Pre-Authorized Transfers:* If you have told us in advance to make regular payments from your account, you can stop any of these payments.

*Procedure to Stop Payment of Pre-Authorized Transfers:* Call us at 800-972-3030 in time for us to receive your request three (3) Business Days or more before the payment is scheduled to be made. The telephone number will be shown on your periodic statement. We may also require that you put your request in writing and get it to us within fourteen (14) days after your telephone call. We will charge you a fee for each stop payment order.

*Notice of Varying Amounts***:** If these regular payments vary in amount, the person whom you are going to pay will tell you ten (10) days before each payment when it will be made and how much it will be. You may choose instead to get this notice only when the payment would differ by more than a certain amount from the previous payment, or when the amount will fall outside certain limits you set. We suggest that you contact the person you are going to pay directly to discuss this matter.

*Bank's Liability for Failure to Stop Payment:* If you order us to stop one of these payments three (3) Business Days or more before the transfer is scheduled, and we do not do so, we will be liable for your losses. The Bank will honor only the exact information given us; otherwise, the Bank is not responsible.

(h) <u>Bank's Liability for Failure to Make Transfers</u>. If we do not complete a transfer to or from your account on time or in the correct amount according to the Deposit Account Rules, we will be liable for all losses not to exceed the amount of the transfer. However, there are exceptions. We will not be liable, for instance:
- If, through no fault of ours, you do not have enough money in your account to complete the transfer;
- If the transfer would go over your credit limit on your line of credit account;

- If Fifth Third Bank ATMs or other ATM terminals where you are making the withdrawal do not have enough cash;
- If circumstances beyond our control (such as fire or flood) prevent the transfer, despite reasonable precautions that we have taken;
- If the funds in the account are subject to legal process or other encumbrance restricting such transfer;
- If Fifth Third Bank ATMs or other ATM terminals or systems are not working properly due to normal maintenance activities or malfunction;
- If the ATM, point-of-sale terminal, or other applicable system was not working properly and you should have known about the breakdown when you started the transfer;
- If the Fifth Third Online Banking system was not working properly due to the failure of electronic or mechanical equipment or communication lines, telephone or other interconnect problems, normal maintenance, unauthorized access, theft, operator errors, severe weather, earthquakes, floods and strikes or other labor problems;
- If we have not received proper authorization and notice;
- If the merchant or financial institution fails to accept the Card;
- If there is an allegation of fraudulent activity concerning the account; or
- If other rules, regulations, or agreements of the Bank so provide.

(i) <u>Error Resolution</u>. ***In case of errors or questions about your electronic transfers,*** **contact us as soon as you can.**

If you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt, we must hear from you no later than sixty (60) days after we sent the FIRST statement on which the problem or error appeared:

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

If you tell us orally, we may require that you send us your complaint or question in writing within ten (10) Business Days. We will determine whether an error occurred within ten (10) Business Days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to forty-five (45) days to investigate your complaint or question. If we decide to do this, we will credit your account within ten (10) Business Days for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation. If we ask you to put your complaint or question in writing and we do not receive it within ten (10) Business Days, we may not credit your account.

For errors involving new accounts opened within thirty (30) days or less, point-of-sale, or foreign-initiated transactions, we may take up to ninety (90) days to investigate your complaint or question. For new accounts, we may take up to twenty (20) Business Days to credit your account for the amount you think is in error.

We will tell you the results within three (3) Business Days after completing our investigation. If we decide that there was no error, we will send you a written explanation. You may ask for copies of the documents that we used in our investigation.

**9.3. ATM Safety Disclosures**. As with all financial transactions, discretion should be applied when using an ATM or night deposit facility. For your safety, you should always remain alert and be cognizant of your surroundings, particularly during hours of darkness, when you should have another person accompany you to use an ATM if possible. Remember to keep your PIN confidential and refrain from displaying cash that you withdraw. You should immediately place cash in your pocket and count it in the safety of a locked enclosure such as your car or house. If you are ever confronted with suspicious activity when engaging in an ATM transaction, you should stop your transaction and use another ATM machine or conduct your transaction at another time.

Also, you should immediately report this occurrence, as well as any crime that you may observe, to your local police department or to the operator of the ATM. Additionally, if you observe that an ATM's lights have gone out or other safety precautions are not in place, please report this to the operator of the ATM.

**9.4. Wire Transfers**. The following terms will apply unless you have entered into a separate wire transfer agreement with the Bank, in which case that separate agreement will govern to the extent of any inconsistency with the terms below. Wire transfers are not EFTs and are not governed by the *"Electronic Funds Transfer Disclosures"* section.

(a) <u>Customer's Payment Order</u>. Customer is solely responsible for the content of each wire transfer request and the accuracy and completeness of the information contained therein. Bank will rely on the information contained in the wire transfer request in carrying out Customer's instructions, which shall be deemed Customer's "**payment order**" as defined in Article 4A of the Uniform Commercial Code as enacted in the State of Ohio (the "**UCC**"). No instructions or other restrictions accompanying Customer's payment order shall be effective unless expressly accepted and agreed to in writing by Bank.

Bank may in its sole discretion, but is not obligated to, require evidence of the authority of the person submitting the payment order to act for the named Customer before accepting it for processing.

(b) <u>Definitions</u>. Certain terms used in this *"Wire Transfers"* section have the same meanings as defined in the UCC. A "**funds transfer**" is the process of carrying out a payment order that leads to paying a beneficiary. Wire transfers are a type of funds transfer. The "**beneficiary**" is the person or business who receives the payment. A "**Remittance Transfer**" is a wire transfer initiated by a consumer primarily for personal, family or household purposes to a beneficiary in a foreign country. Remittance Transfers are also governed by the Electronic Funds Transfer Act. You have certain rights in connection with Remittance Transfers, which will be explained at the time you initiate a Remittance Transfer.

(c) <u>Inconsistent Name and Numbers</u>. Customer agrees that Bank, and any bank or intermediary involved in processing Customer's payment order, are entitled to rely on the account number and bank identification numbers provided by Customer without any obligation to look at the name of the beneficiary or bank which may also appear in the payment order, even if the number identifies a person different that the named beneficiary or bank. If Customer provides an incorrect account number or bank identifier for the recipient the funds transfer may be misdirected, resulting in the loss of funds. Bank has no obligation to detect errors and no liability for any incorrect or missing information in Customer's payment order.

(d) <u>Security Procedures</u>. Bank offers certain security procedures for wire transfers, including a call back or verification of the payment order. Some elements of the security procedures will vary depending on the method you use to initiate a wire transfer. Your submission of a payment order constitutes your agreement that Bank's security procedures are sufficient and commercially reasonable. You understand that Bank's security procedures are used to verify the authenticity of your payment order, and not to detect errors in or prevent duplicative payment orders. You agree that we are not obligated to accept any payment order that is communicated to us other than in compliance with our approved methods and procedures and we are not liable for refusing to act on a payment order that we do not accept. You further agree that any payment order that we act on in good faith in compliance with our security procedures, whether or not in fact authorized by you, will constitute an authorized funds transfer.

(e) <u>Rejection of Funds Transfer</u>. We may in our sole discretion refuse to accept a payment order, including when there are insufficient or uncollected funds in the account from which funds are to be transferred or the payment order fails our security procedures or we are otherwise unable to verify its authenticity. If we decide not to accept a payment order, we will attempt to notify you, but we shall have no liability for delay or failure to do so. We will also attempt to notify you if a funds transfer is returned to us after its execution, but shall have no liability by reason of our delay or failure to do so. We are not obligated to re-send a funds transfer that is returned to us if we complied with the original payment order.

(f) <u>Fees, Payment of Funds Transfer</u>. Bank may charge fees for sending or receiving a wire transfer, which may be deducted from Customer's account or from the amount of the wire transfer. See your fee schedule for details on when fees will be charged and the amounts of those fees. Other banks involved in the funds transfer may also charge fees. Bank is authorized to debit Customer's account for the U.S. Dollar amount of the transfer at the time Bank processes the payment order. If the beneficiary's bank is instructed to pay in a currency other than its local currency, payment will be made pursuant to that bank's policies and Customer is responsible for any effects of such payment. For Remittance Transfers, Bank will provide certain required fee and payment disclosures at the time of initiation.

(g) <u>Cut-off Times</u>. We have cut-off times for processing payment orders, which may vary depending on the location, method used to initiate the payment order, and the funds transfer system used to process your transaction. Payment orders received after the applicable cut-off time will typically be treated as if they were received the next Business Day.

(h) <u>Cancellation or Amendment of Payment Orders</u>. With respect to Remittance Transfers, Customer has thirty (30) minutes to request Bank to amend or cancel the payment order. For all other transactions, Bank has no obligation to amend or cancel a payment order after it has been submitted by Customer. If Customer makes a verifiable request to cancel or amend its payment order in accordance with Bank's procedures, Bank may make a reasonable effort to act on Customer's request; provided the payment order has not been executed and there is a reasonable amount of time to act on Customer's request. Bank shall have no liability whatsoever if such cancellation or amendment is not affected. Furthermore, Customer agrees to indemnify and hold Bank harmless from any and all liabilities, costs, and expenses Bank may incur in attempting to cancel or amend the payment order.

(i) <u>Notice of Errors</u>. You agree that all funds transfers will be reflected on your periodic statement and we are not required to provide you with a separate notice of incoming or outgoing funds transfers. You should review your statement promptly for any discrepancies, unauthorized transactions or errors in connection with any funds transfers (each, an "**Error**"). You must contact us in writing upon the earlier of: (i) your discovery of any Error, or (ii) within fourteen (14) days from the date your statement showing the Error is made available to you. If you fail to notify us of an Error within that time period, we will have no obligation to pay interest on the amount of an unauthorized or erroneous funds transfer for which we are liable. Furthermore, you will also be liable to us for any Losses we may incur as a result of your failure to notify us within the time

period set forth herein. The terms of this *"Notice of Errors"* section do not apply to Remittance Transfers. For Remittance Transfers, Bank will provide the applicable disclosures at the time of initiation.

(j) <u>Compliance with Applicable Laws, System Rules</u>. Customer represents and agrees that all payment orders are for lawful purposes and comply with all applicable laws, including those relating to foreign asset control, funding of terrorism and anti-money laundering. All payment orders are subject to Article 4A of the UCC in effect in Ohio and to the rules then in effect for the funds transfer system in which Bank participates and the payment order is made, such as Fedwire, SWIFT and CHIPS. Bank may select any funds transfer system, intermediary bank or means of transmittal to send Customer's payment orders. In addition, Remittance Transfers are subject to the applicable provisions of the Electronic Funds Transfer Act and Regulation E.

(k) <u>Limitation of Liability and Indemnification</u>. Customer expressly agrees that Bank is only liable for direct actual damages and only to the extent damages are recoverable under the UCC, as varied by this *"Wire Transfers"* section. Bank's obligation for services outside the scope of the UCC is limited to the exercise of reasonable and ordinary care. Bank shall not be liable for any errors or delays on the part of any third party, including without limitation, third parties used by Bank in executing a payment order or performing a related act due to any cause other than Bank's failure to exercise reasonable and ordinary care, and no such third party shall be deemed to be Bank's agent. Bank shall not be liable for its refusal to honor any payment order if, in good faith, Bank is unable to satisfy itself that such payment order is valid, based upon adherence to procedures. IN NO EVENT SHALL BANK BE LIABLE FOR SPECIAL, INDIRECT, PUNITIVE OR CONSEQUENTIAL DAMAGES, EXCEPT AS MAY BE OTHERWISE PROVIDED BY APPLICABLE LAW, EVEN IF BANK SHALL HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE. Except as may be limited by applicable law, Customer agrees to indemnify and hold Bank harmless from and against all Losses arising out of, or in connection with, the services provided by Bank or actions otherwise pursuant to Customer's payment orders except where Bank is grossly negligent or engaged in willful misconduct. With respect to Remittance Transfers, the terms of this *"Limitation of Liability and Indemnification"* section are limited to the extent required by Regulation E, Subpart B.

**9.5. Other Funds Transfers**. The following terms apply to other funds transfers you send or receive, but do not apply to EFTs that are governed by the *"Electronic Funds Transfer Disclosure"* section.

(a) <u>ACH Credits and Debits; NACHA Rules</u>. When we receive ACH credits or debits to your account, we are authorized to debit or credit your account accordingly and you agree to be bound by the National Automated Clearing House Association (NACHA) Operating Rules ("NACHA Rules"). You agree that we may rely on the representations and warranties contained in the NACHA Rules and either credit or debit your account, as instructed by the originator of the ACH transaction.

(b) <u>Notice of Funds Transfer</u>. Your periodic statement will serve as notice of any ACH credits or debits to your account. You agree that we are not required to provide any other notice to you of receipt of funds transfers. You must review your statement and immediately notify us of any unauthorized ACH entries to your account so they can be returned in a timely manner.

(c) <u>ACH Provisional Payment Rule</u>. You agree that any ACH credits to your account are provisional until we receive final payment. If we receive a demand for reimbursement from any payor of an ACH credit to your account, we are entitled to charge your account for the amount of that claim.

(d) <u>Business Accounts</u>. You agree that if you ask us to submit an ACH return entry in connection with any unauthorized or erroneous ACH debit posted to your account, the originating depository financial institution has no obligation to accept that return transaction if the return request is not made within the applicable time frame set forth in the NACHA Rules. You understand and acknowledge that we may not be able to recover your funds if you notify us outside the NACHA Rules time frames. In some cases, your claim may not be honored and you could incur a loss.

**9.6. Debit Card Agreement**. The following terms apply to Cards linked to both personal and business accounts.

(a) <u>Your Responsibility</u>. You assume responsibility for all transactions arising from authorized use of the Card by any Debit Card User, whether such use is with an ATM, banking terminal, electronic funds transfer device, any debit program or any other means of access. If you have authorized another person to use the Card in any manner, that authorization shall be deemed to include the authorization to make withdrawals or transfers of funds to or from the account, and such authorization shall be deemed to continue until you have taken all steps necessary to revoke it by preventing such use by that person, including, without limitation, notifying the Debit Card User and contacting us to inform us that the Debit Card User is no longer authorized. Use of the Card via PIN with an ATM allows the Debit Card User access to all associated accounts, including savings accounts and credit products.

(b) <u>Your Responsibility for Users</u>. You are solely responsible for selecting Debit Card Users. You must require each Debit Card User to comply with the terms and conditions of the Deposit Account Rules and you are responsible for the failure of

any Debit Card User to so comply. You acknowledge and agree that you are responsible for retrieving the Cards if you revoke a Debit Card User's authority to use a Card, including if a Debit Card User leaves your employment (as applicable). Except as otherwise limited in the Deposit Account Rules, you will remain responsible for all Card transactions.

(c) <u>Your Agreement to Pay</u>. You agree to pay us on demand for all purchases made and, services rendered by or to, and any cash advances made by or to any Debit Card User. Cancellation of a Card or termination of the account shall not excuse your obligation to pay for all purchases or other transactions incurred against or in connection with the account through the effective time of the cancellation or termination. This liability will be joint and several.

(d) <u>Cancellation and Termination</u>. You may cancel your Card at any time by writing to us at the address provided in your account statement, calling the number on the back of your Card, or visiting your nearest branch. However, the Deposit Account Rules shall remain in effect for purchases made and services rendered, and you will immediately surrender or destroy the Card(s) upon our request. We may cancel the Card at any time without notice. If we do so, all Debit Card Users will surrender or destroy the Cards immediately upon our request or the request of our agent. We reserve the right to refuse or terminate your use of the Card in our sole discretion at any time and without notice.

(e) <u>Waiver</u>: Except as may be prohibited by applicable law, you hereby waive as against the Bank all claims, defenses, rights and offsets that you or any Debit Card User now or hereafter may have against any merchant or other payee for merchandise or for services acquired by use of the Card or through any Electronic Banking Service.

(f) <u>Transaction Limitations</u>: We may, from time to time, limit the type, number and dollar amounts of any checks, drafts, withdrawals, transfers or deposits made by Debit Card Users, notwithstanding the amount in the account, and terminate or suspend the operation of any or all electronic funds transfer devices or merchants, without notice, unless required by applicable law.

(g) <u>Fees</u>. We reserve the right to institute a standard charge or charges for the issuance, reissuance or use of the Cards or for the reinstatement of any Card privileges which have been suspended, as well as an annual fee and per item fee for each transaction. You agree to pay such charges and fees.

(h) <u>Fraud</u>. Use of a Card after notice of its cancellation is fraudulent and will subject you or any Debit Card User of the Card to legal proceedings.

(i) <u>Types of Available Transfers and Limits on Transfers</u>. You or any Debit Card User may use the Card and PIN to:
- Withdraw cash from the account;
- Make deposits to the account;
- Transfer available funds between your checking or savings accounts at an ATM;
- Transfer available funds between your checking, savings, Visa®, Mastercard® or line of credit account through Online Banking or Electronic Banking via telephone;
- Pay bills directly from your account to parties that have been notified and have agreed to accept your payments, provided that you make these payments in accordance with the procedures set forth by us;
- Pay for purchases at places that have agreed to accept the Card; or
- Withdraw available funds from your savings accounts.

Some of these services may not be available on all accounts or at all terminals. In addition, we will accept preauthorized transfers from the account in accordance with procedures set forth by us.

(j) <u>Use of Card for a Service</u>. If you use the Card for a Bank-approved service such as telephone banking, Internet access product or point-of-sale service, and we approve such use of the Card, you agree to the transfer of money in the account to the accounts of third parties you designate. Such transfer will be made upon your instructions by use of a telephone or by other means acceptable to us. You agree to allow a reasonable period of time (at least five (5) Business Days) for a third party to receive the payment. You agree that we will not be responsible for any delays caused by mail service or any third party. In no case will we be liable for any interest or late payment charges assessed by a third party or termination of service caused by a delay in a third party's receiving or processing a payment. You agree to notify us of any change in your address or account with a third party, including change of account number.

(k) <u>Ownership of Card</u>. The Cards are not transferrable and remain the property of the Bank.

(l) <u>Lost or Stolen Card</u>. You must notify us immediately and assist us in our investigation if your Card is lost or stolen or you believe someone is using your Card without your permission. IN NO EVENT WILL YOU WRITE YOUR PIN ON THE CARD OR KEEP ANY WRITTEN RECORD OF IT ON ANY MATERIAL KEPT WITH THE CARD.

(m) <u>Foreign Currency Transactions</u>. A foreign transaction is a transaction that occurs or is submitted to us from outside the United States or in a foreign country. We will assess an international transaction fee equal to 3% of the U.S. dollar amount of each foreign transaction. The international transaction fee is in addition to the currency conversion fee assessed by Mastercard®. If a transaction is made in a foreign currency, Mastercard will convert the transaction into a U.S. dollar amount and assess a currency conversion fee equal to 0.20% of the transaction total. Mastercard will act in accordance with its operating regulations or conversion procedures in effect at the time the transaction is processed. Currently, Mastercard regulations and procedures provide that the currency conversion rate is either (i) a wholesale market rate or (ii) a government-mandated rate in effect one day prior to the processing date. The currency conversion rate calculated in this manner that is in effect on the processing date may differ from the rate in effect on the transaction date or the posting date.

(n) <u>Additional Terms for Personal Debit Cards</u>. The following terms apply to Cards linked to personal accounts. Cards linked to personal accounts are also governed by the *"Electronic Funds Transfer Disclosure"* section.

    (i) *Use of Card in Connection with a Check that Will Be Dishonored*. You shall not use the Card for any purpose that aids the negotiation of a check that you know will be dishonored when presented for payment. You agree that if we purchase any check drawn or endorsed by you and verified by use of the Card, or duly endorsed or assigned to us by the payee or endorsee of such a check, and the check is thereafter dishonored, you will pay the amount of the check to us upon demand. If you refuse to pay the amount of the check to us upon demand, we may deduct the amount from any account you have with us, including charging a cash advance to your line of credit account with us.

    (ii) *Card Transactions*. The following additional terms and conditions apply to Card transactions:
- Use of the Card authorizes us to directly debit or credit the account for the amount of a Card transaction shown on the sales draft, receipt or other record of the transaction, regardless of whether you select the debit or credit option for the transaction, and to handle debit drafts in the same manner as we handle checks on the account.
- You agree to pay the Card transaction fees in effect for the account. We reserve the right to impose an annual fee upon notification to the account owner.
- In consideration of the use of the Card, you agree that any sales drafts or withdrawal vouchers originated by use of the Card shall not be deemed to be Items on which stop-payment orders may be issued.

    (iii) *Transfer Limits*. In addition to the limitations described in the *"Electronic Funds Transfer Disclosure"* section, the following limits apply to use of your Card:
- The Card carries daily limits on the dollar amount of purchases and ATM withdrawals you can make. Daily limits are assigned for your protection. To find more information on your daily limit or to lower your specific limit, please contact us. The standard daily purchase and cash limits are printed on the materials that come with the Card.
- We may adjust the daily limitations on cash withdrawals and purchases from time to time and subject to applicable law, based on periodic risk assessments or upon request. Any such changes will generally be effective immediately unless we are required by applicable law to provide you with advance written notice of the proposed changes. In such instances, those changes will be effective immediately following the effective date stated in the notice.

    (iv) *Rewards Program Terms and Conditions*. The terms and conditions of the Fifth Third Rewards Program are available at www.53.com/rewards.

(o) <u>Additional Terms for Business Debit Cards</u>. The following terms apply to Cards linked to business accounts. In addition, certain terms in the *"Electronic Funds Transfer Disclosure"* section apply to Cards linked to business accounts; specifically, the paragraph titled *"Transfer Limitations"* within Section 9.2(b) and Sections 9.2(d) and 9.2(e) apply to Cards linked to business accounts and these terms are hereby incorporated in this *"Additional Terms for Business Debit Cards"* section by reference.

    (i) *Business Purpose*. You warrant and agree that the Cards will only be used by Debit Card Users for business purposes and will not be used for personal, household or family purposes.

    (ii) *Security*. You acknowledge and agree that the PIN is a commercially reasonable method of verifying whether any transfer or other payments were authorized by any Debit Card User. You further acknowledge and agree that the PIN is not intended, and that it is commercially reasonable that the PIN is not intended, to detect any errors to, or arising out of, a transfer or other payment.

(iii) *Limitation of Bank's Responsibility*. We will not be liable for failing to process or complete an electronic banking transaction to or from your account unless you prove the failure was caused by our willful misconduct or gross negligence and caused you actual harm. In no event will we be liable for not processing or completing an electronic banking transaction if:

- Through no fault of ours, you do not have enough money in your account to make the transfer;
- We are legally restricted from transferring the funds in the account;
- Circumstances beyond our control (including, but not limited to, telecommunications outages or interruptions, computer failure, postal strikes and other labor unrest, delays caused by payees, fire, floods or other natural disasters) prevent the transfer, despite reasonable precautions that we have taken;
- The Fifth Third Bank ATM or other ATM terminal where you are making the transfer does not have enough cash;
- The ATM, point-of-sale terminal, or other applicable system was not working properly and you should have known about the breakdown when you started the transfer;
- Fifth Third Online Banking was not working properly due to the failure of electronic or mechanical equipment or communication lines, telephone or other interconnect problems, normal maintenance, unauthorized access, theft, operator errors, severe weather, earthquakes, floods and strikes or other labor problems;
- We have not received proper authorization and notice;
- The merchant or financial institution fails to accept the Card;
- There is an allegation of fraudulent activity concerning the account;
- The Card and/or PIN has been reported lost or stolen or we have cancelled the Card and/or PIN;
- The transfer would go over the credit limit on your line of credit account; or
- Other rules, regulations, or agreements of the Bank so provide.

There may be other exceptions stated elsewhere in these Deposit Account Rules.

**We make no warranties to you or any Debit Card User, express or implied, regarding the services provided under this *"Debit Card Agreement"* section, including without limiting the foregoing, warranties of merchantability or fitness for a particular purpose. In no event will we be liable to you or any Debit Card User for consequential, incidental, punitive, special or indirect damages or losses, including expenses, such as attorneys' fees, incurred by you or any Debit Card User by reason of using our services, regardless of whether such loss or damages was foreseeable or known to us. We will not be liable for any personal injury or tangible property damage suffered or incurred by you or any Debit Card User through use or attempted use of the Card at any terminal.**

(iv) *MASTERCARD EASY SAVINGS® PROGRAM TERMS AND CONDITIONS*. The Mastercard Easy Savings Program – U.S. Small Business Cardholder Terms and Conditions between you and Mastercard may be found at www.mastercard.com, or such other website as Mastercard may establish for the Mastercard Easy Savings Program. See the Fifth Third Bank Debit Card Guide to Benefits for more details surrounding Card benefits.

(v) *In Case of Errors or Questions*. Contact us if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. We must hear from you no later than sixty (60) days after we sent the first statement on which the error or problem appeared. We will attempt to answer your questions and correct any errors promptly.

---

## SECTION 10 – GENERAL TERMS

---

**10.1. Compliance with Laws.** You agree to comply with all applicable laws and regulations, including U.S. economic sanctions and regulations issued by the Office of Foreign Assets Control. You are prohibited from processing any illegal transactions through any Fifth Third Bank account or relationship, including those prohibited under the Unlawful Internet Gambling Enforcement Act, 31 U.S.C. 5361 et seq. You agree to indemnify us from any Losses we incur due to any U.S. or foreign government entity seizing, freezing, or otherwise asserting or causing us to assert control over any account or funds in an account of yours when purportedly caused by your action or inaction. Transactions in your account are also subject to applicable clearing house and Federal Reserve rules and regulations.

If you are subject to the requirements of the Telemarketing Sales Rule as promulgated by the Federal Trade Commission (together with any additional or related rules and policies, the, "**TSR**"), you are prohibited, among other requirements, from creating and using certain payment methods including "**remotely created payment orders**" (including a "**remotely created check**") as defined in the TSR (collectively, the "**Prohibited TSR Payments**"). You are responsible for understanding and complying with the TSR and agree that you will not deposit with, initiate or send to, or seek to process with us any Prohibited TSR Payment.

**10.2. Death or Incompetence.** You agree to notify us immediately if any account owner or signer on your account dies or is declared incompetent by a court. When we receive notice of death or incompetence, we may freeze your account and refuse to permit withdrawals or accept deposits. We are not required to release your funds until we receive any documentation which we reasonably request to verify the death or incompetence and determine who is entitled to the funds. We may accept and comply with court orders and take direction from any court-appointed representatives, guardians or conservators from states other than the state where the account is located.

**10.3. Dormant and Inactive Accounts.** Unless otherwise provided in your product disclosures, we treat a checking account as dormant after twelve (12) months of inactivity and a savings account as dormant after thirty-six (36) months of inactivity. "**Inactivity**" means there has been no deposits into or withdrawals from the account during the applicable time period. We may charge a fee for dormant accounts; see your fee schedule for details. The Bank reserves the right to close an account if it is inactive for a period of time and there is a zero balance, including new accounts that are not funded. You agree that we will stop paying interest on your account when it becomes abandoned in accordance with applicable law. Abandoned accounts are subject to escheatment to the State Treasury (in the state of Customer's last address of record with Bank) as unclaimed property in accordance with applicable law.

**10.4. English document controlling.** Any translation of the Deposit Account Rules is provided only for your convenience. The meanings of terms, conditions and representations herein are subject to definitions and interpretations in the English language. Any translation provided may not accurately represent the information in the original English version. The English version is the document that will govern the relationship between you and the Bank.

**10.5. FDIC Pass-Through Insurance Coverage**. The Federal Deposit Insurance Corporation (FDIC) protects the depositors of insured banks against the loss of their deposits due to a bank failure. The standard insurance amount is $250,000 per depositor. Insurance coverage is dependent upon account ownership categories and subject to FDIC requirements. If you have opened a deposit account on behalf of a beneficial owner or owners of the funds in the account (for example as a trustee, agent, nominee, guardian, executor, custodian or funds held in some other capacity for the benefit of others), those beneficial owners may be eligible for "pass-through" insurance from the FDIC. This means the account could qualify for more than the standard maximum deposit insurance amount (currently $250,000 per depositor in the same ownership capacity). If the account has transactional features, you as the account holder must be able to provide a record of the interests of the beneficial owner(s) in accordance with the FDIC's requirements as specified below. The FDIC has published a guide that describes the process to follow and the information you will need to provide in the event Bank fails. That information can be accessed on the FDIC's website at **fdic.gov**.

In addition, the FDIC published an Addendum to the guide, section VIII, which is a good resource to understand the FDIC's alternative recordkeeping requirements for pass-through insurance. The Addendum sets forth the expectations of the FDIC for pass-through insurance coverage of any deposit accounts, including those with transactional features. The Addendum will provide information regarding the records you keep on the beneficial owners of the funds, identifying information for those owners, and the format in which to provide the records to the FDIC upon bank failure. You must be able to provide this information in a timely manner in order to receive payment for the insured amount of pass-through deposit insurance coverage as soon as possible.

You agree to cooperate fully with the Bank and the FDIC in connection with determining the insured status of funds in such accounts at any time. In the event of a bank failure, you agree to provide the FDIC with the information described above in the required format within twenty-four (24) hours of a bank failure. As soon as a receiver is appointed, a hold will be placed on your account and that hold will not be released until the FDIC determines that you have provided the necessary data to enable the FDIC to calculate the deposit insurance. You understand and agree that your failure to provide the necessary data to the FDIC may result in a delay in receipt of insured funds and legal claims against you from the beneficial owners of the funds in the account. If you do not provide the required data, your account may be held or frozen until the information is received, which will cause a delay when the beneficial owners could receive funds. Notwithstanding other provisions to the contrary, this section survives after a receiver is appointed for the Bank, and the FDIC is considered a third-party beneficiary of this section.

**10.6. Foreign Items, Foreign Exchange Transactions.** A "**foreign item**" is an Item drawn on a bank located outside the U.S., whether such Item is payable in a foreign currency or in U.S. dollars. We have the right to refuse to accept a foreign item for deposit or collection. We may elect to send a foreign item for collection and deduct our fees, along with any fees or charges imposed by other parties in the collection process including the paying bank, from the amount collected or from your account. Foreign items are not subject to the *"Funds Availability Policy"* section and may be subject to an extended hold when deposited to your account. Any transaction we conduct for you in a foreign currency will use a foreign exchange rate determined by us in our sole discretion. Foreign exchange transactions include depositing a foreign check, sending or receiving a wire transfer to or from another country, or exchanging foreign currency in a Bank branch. Currency exchange is not available in all currencies or at all branch locations. The foreign exchange rate we use will include a spread and may include costs or commissions that we, any Bank Affiliates or our vendors charge in providing foreign currency exchange to

you. With respect to checks payable in foreign currency, the actual amount you will receive will be determined using the exchange rate in effect when we receive payment for the check. If the check is later returned, we will subtract the amount of the check (along with applicable fees) from your account using the exchange rate in effect at the time of the return, which may be different from the exchange rate originally used for the deposit.

**10.7. Governing Law, Waiver of Jury Trial.** These Deposit Account Rules, all accounts and services provided to you, and any dispute relating to those accounts and services are governed by the laws of the United States, and when not superseded by federal law, the laws of the state where your account is located except as otherwise provided herein. Your account is generally located in the state of the banking office where we opened your account, although we may transfer your account to another banking office in the same state or in a different state. For Customers that opened an account digitally or through other remote means, the account is located in the state of the banking office nearest Customer's address (if Joint Customers, nearest the address of the Customer whose name is listed first). For Private Bank Customers, the account is located in the state of the banking office to which it has been assigned, which is disclosed on the account statement in parentheses in the return address. In all other cases, your account will be governed by Ohio law to the extent not preempted by federal law.

With respect to all Claims (as defined below) that are not submitted to arbitration pursuant to the *"Arbitration Agreement"* section, Customer hereby waives the right to a trial by jury to the extent permitted by law and consents to service of process, personal jurisdiction and venue in the state and federal courts in Cincinnati, Ohio and Hamilton County, Ohio, and selects such courts as the exclusive forum.

**10.8. Indemnification, Limitation of Liability.** You agree to reimburse us for any Losses we may incur with respect to overdrafts or returned deposits in connection with your account.

Our duty to you hereunder is one of ordinary care. In no event will we be liable for any punitive, indirect, special, incidental, exemplary or consequential damages. Our liability for failure to stop payment on an Item, improperly dishonoring or paying an Item, or for any deposits not properly credited or withdrawals not properly debited, will be limited to the face value of the Item. We will not be liable to you for any actions taken pursuant to your instructions or for actions authorized or permitted by the terms of the Deposit Account Rules, even if such action causes you to incur a Loss. To the extent permitted by applicable law, we are not liable to you for errors that do not result in financial loss to you.

We are not liable to you for any Losses caused by an event that is beyond our reasonable control, including if such event prevents or delays us in performing our obligations for a service, such as acting on a payment order, crediting a funds transfer to your account, processing a transaction, or crediting your account. Circumstances beyond our reasonable control include, but are not limited to, a natural disaster; emergency conditions; power failure; global pandemic; strike or stoppage of labor; a legal constraint or government shutdown; acts of God; acts of terrorism; the breakdown or failure of our equipment, any communication or transmission facilities, or any mail or courier service; potential violation of any regulation, rule or requirement of any government authority; suspension of payments by another bank; or your acts, omissions, negligence or fault. To the extent permitted by applicable law or the operating rules of any payment card association, payment network or funds transfer system, we will not be liable for the acts or omissions of any merchant, other financial institution, funds transfer system or any other third party.

You agree that the amount of any claim you have against us in connection with any account or transaction with us is reduced by the extent that: (i) negligence or failure to exercise reasonable care by you or your agents or employees contributed to the Loss which is the basis of your claim; and (ii) the Loss could not be avoided by our use of ordinary care.

**10.9. Legal Process, Subpoena, Levy.** If an account or account funds become involved in any dispute or legal proceedings, including but not limited to disputes or proceedings challenging the ownership or custody of the account and/or the ownership or custody of account funds, the use of the account may be restricted. In the event that we are brought into or must initiate any legal proceedings in regard to an account and/or account funds, including but not limited to the collection of overdrafts, you agree to reimburse us to the extent allowed by applicable law for any attorneys' fees which we may incur. We may also, at our option, pay the funds to the clerk of an appropriate court, so that the court may decide who owns or controls the money. If we do so, we will ask the court to award our attorneys' fees to us from the account.

Should the Bank be served with any legal process which affects an account, the Bank may without liability suspend payment on any account which it believes to be affected thereby until final determination of such legal proceeding or appropriate resolution of the legal proceeding, even though the suspension of payment may have been due to inadvertence, error on account of similarity of names of Customers, or other mistake. Should the Bank be served with garnishment in the name or names of any Joint Customer, each Customer agrees that Bank's remittance of any amounts constitutes an authorized withdrawal as provided herein. The Bank shall not be liable for any damages to Customer by reason thereof, providing the Bank shall have acted in good faith.

Attachments, garnishments, levies and similar orders shall be subject to fees assessed by the Bank and to the Bank's security interest and right of set off. Customer acknowledges and agrees that Bank may collect fees associated with the processing of these orders from Customer's account(s) for a period of up to six months. If the Bank incurs any expenses, including administrative costs and reasonable attorney fees, in responding to an attachment, garnishment or other levy that are not otherwise reimbursed, the Bank may charge such expenses to Customer's account without prior notice to Customer.

**10.10. Records**. Customer agrees that except where a shorter time is permitted by applicable law, Bank is not required to retain records of any transaction for more than seven (7) years [five (5) years for Florida residents] after receipt of the Item and Customer and Customer's heirs, assigns, and personal representatives release Bank from any liability therefor on Customer's behalf. The Bank may retain records in any form, including electronically. In the event the Bank is unable to produce a record of a document relating to your account, or there is a discrepancy between your records and the Bank's records, you agree that the Bank's records will be deemed conclusive.

**10.11. Stop Payment Orders.** A fee will be charged for any stop payment order. See your fee schedule for the amount of this fee. A stop payment order will be accepted only if sufficient information is given at the same time of request to reasonably allow Bank to honor the request. The Bank is not responsible for stopping payment on an Item if you do not provide the specific information necessary to identify the Item or if you provide inconsistent information. Stop payment orders will not be effective until the Bank has recorded the information on your account and has had sufficient time to enforce the order. We may require you to confirm any verbal stop payment order in writing within fourteen (14) days and if you fail to do so, your verbal stop payment order will expire and no longer be effective. A stop payment order will not be effective if the Bank has already paid, certified or otherwise become responsible for the Item. Computer-generated checks without MICR line cannot be stopped.

When placing a stop payment order, you agree to indemnify us for all Losses we incur due to our refusal to pay the Item. You acknowledge that our refusal to pay an Item may be a dishonor under the UCC and you agree that we shall have no liability for Losses arising from acting on your instructions to stop payment on an Item, including with respect to any holder in due course.

A stop payment order is effective for six (6) months. When the stop payment order expires, the Bank may pay the Item and has no duty to notify Customer. If Bank re-credits the account after payment over a verbal and timely stop payment order, Customer agrees to transfer all rights against the payee or other holder of the Item to Bank and will assist Bank in legal action taken against such person. Customer agrees that Bank will not be obligated to re-credit the account if Customer received anything of value for the Item.

**10.12. Subaccounts for Checking Accounts.** For accounting purposes, we may classify checking accounts as two subaccounts; a checking subaccount and a non-interest bearing savings subaccount and checks, debits and other Items presented for payment will be posted to the checking subaccount. We may transfer funds between these subaccounts from time to time as follows: we may establish a threshold balance for your checking subaccount by reviewing the master account historic activity to determine the amount not routinely needed to pay debits (the "**threshold balance**"). If the balance in your checking subaccount during any calendar month exceeds this threshold balance, we may transfer the excess funds to the savings subaccount. Bank may also sweep the entire balance of your checking subaccount into the savings subaccount during non-Business Days when no Items will post to your account.

If the balance in your checking subaccount falls below the threshold balance during any calendar month, we may transfer funds to your checking subaccount from your savings subaccount sufficient to restore the checking subaccount to the threshold balance. Because the savings subaccount is used for internal purposes only, you cannot access it directly. Bank's transfers of funds into and out of the savings subaccount will be the only transactions on the savings subaccount. Transfers between subaccounts will not appear on your statement and will not be subject to any fees. The combined balances of both subaccounts will be used to determine the balance of your account for any minimum balance requirement or any other reason that a balance is considered. *Interest-bearing checking accounts only*: The subaccounts will not affect your use of your interest-bearing checking account, funds availability, or the interest paid on your account. The interest rate that applies to your interest-bearing checking account will apply to both subaccounts.

**10.13. Telephone Calls, Monitoring and Recording.** To the extent permitted by applicable law, you consent that we may contact you at any telephone number that you have given to us, any number that you have called us from, or any number we have for you in our records, including your cellular or other wireless device, to service your account or for collection purposes. We have your permission to contact you by any means available, including by text message. You also agree that we may contact you using prerecorded messages or automatic dialers. When we use the words "we" and "us" in this paragraph, we are also referring to Bank Affiliates and Bank's agents and service providers. If you give us an email address, you also consent to our contacting you by email. You authorize us to monitor and record telephone conversations and other electronic communications that you have with us and our representatives.

## SECTION 11 – ARBITRATION AGREEMENT

### (*Effective for accounts opened on or after November 14, 2019*)

**11.1. Military Lending Act.** If you are a Covered Borrower under the Military Lending Act Regulations, you are not required to submit to arbitration in the case of a dispute. If you were a Covered Borrower under the Military Lending Act Regulations with regard to any prior account or agreement, this Arbitration Agreement does not cover any claims related to that prior account or agreement.

**11.2. Claim Definition.** "**Claim**" is defined as any claim, dispute or controversy between you and us arising from or relating to your account, these Deposit Account Rules, any prior agreement that you may have had with us, or the relationships resulting from the Deposit Account Rules, or any prior agreement (including the validity, enforceability or scope of this Arbitration Agreement, the Deposit Account Rules, or any prior agreement). Claim includes claims of every kind and nature, including but not limited to initial claims, counterclaims, crossclaims and third-party claims and claims based upon contract, tort, fraud and other intentional torts, statutes, common law and equity. The term Claim is to be given the broadest possible meaning and includes, by way of example and without limitation, any claim, dispute or controversy that arises from or relates to: (a) the account governed by these Deposit Account Rules or any prior agreement; (b) any balances or Obligations you owe; (c) advertisements, promotions or oral or written statements related to your account or these Deposit Account Rules; and/or (d) your use of the account.

**11.3. Arbitration of Claims**. If you are a Covered Borrower, you and we will only arbitrate if you choose to arbitrate. We cannot elect to arbitrate a Claim with a Covered Borrower. If you are not a Covered Borrower, you and we each agree that each party has the right to elect to have any Claim arbitrated instead of litigated in court under the circumstances and procedures set forth below. If arbitration is elected, any Claim will be resolved pursuant to this Arbitration Agreement and the American Arbitration Association ("**AAA**") rules and procedures ("**AAA Rules**") in effect at the time the Claim is filed. If for any reason the AAA is unable or unwilling or ceases to serve as arbitration administrator, another nationally recognized arbitration organization utilizing similar rules and procedures will be substituted by us.

**11.4. Claims in Court**. With respect to Claims covered by this Arbitration Agreement, if you have asserted a Claim in a lawsuit in court, you may elect arbitration with respect to any Claim subsequently asserted in that lawsuit by any other party or parties. If we have asserted a Claim in a lawsuit in court, we may elect arbitration with respect to any Claim subsequently asserted in that lawsuit by any other party or parties, only if no other party is a Covered Borrower.

**11.5. EFFECT OF ARBITRATION.** IF ARBITRATION IS CHOSEN WITH RESPECT TO A CLAIM, NEITHER YOU NOR WE WILL HAVE THE RIGHT TO LITIGATE THAT CLAIM IN COURT OR HAVE A JURY TRIAL ON THAT CLAIM, OR TO ENGAGE IN PRE-ARBITRATION DISCOVERY EXCEPT AS PROVIDED FOR IN THE AAA RULES. FURTHER, YOU WILL NOT HAVE THE RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF ANY CLASS OF CLAIMANTS PERTAINING TO ANY CLAIM SUBJECT TO ARBITRATION. EXCEPT AS SET FORTH BELOW, THE ARBITRATOR'S DECISION WILL BE FINAL AND BINDING. NOTE THAT OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION.

**11.6. Jurisdiction and Venue, Costs of Arbitration.** The AAA Rules and forms of the AAA may be obtained by calling 800-778-7879 or by visiting the AAA's Web site at **adr.org**. All Claims must be filed at any AAA office. There will be no authority for any Claims to be arbitrated on a class action basis. Any arbitration hearing that you attend will take place in the federal judicial district in which you reside. At your written request, we will temporarily advance up to $500 towards the filing, administrative and/ or hearing fees for any Claim that you may file against us after you have paid an amount equivalent to the fee, if any, for filing such a Claim in state or federal court (whichever is less) in the judicial district in which you reside. At the conclusion of the arbitration, the arbitrator will decide who will ultimately be responsible for paying the filing, administrative and/or hearing fees in connection with the arbitration. Unless inconsistent with applicable law, each party will bear the expense of that party's attorneys', experts' and witness fees, regardless of which party prevails in the arbitration. This provision is made pursuant to a transaction involving interstate commerce and will be governed by the Federal Arbitration Act, 9 U. S. C. §§ 1 et seq., as amended ("**FAA**"). The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations and will honor claims of privilege recognized at law. Judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction. The arbitrator's decision will be final and binding, except for any right of appeal provided by the FAA and except that, if the amount in controversy exceeds $100,000, any party can appeal the award to a three-arbitrator panel administered by the AAA, which will reconsider de novo any aspect of the initial award requested by the appealing party. The decision of the panel will be by majority vote. The costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal.

**11.7. Rules of Interpretation.** As solely used in this Arbitration Agreement, the terms "we" and "us" will for all purposes mean Fifth Third Bank, all of its parents, wholly- or majority-owned subsidiaries, Bank Affiliates, predecessors, successors

and assigns, and all of their independent contractors, agents, employees, directors and representatives. This Arbitration Agreement will survive termination of your account, as well as the repayment of all outstanding amounts incurred in connection with your account, related products, or any other Obligation owed to the Bank. If any portion of this provision is deemed invalid or unenforceable under any law or statute consistent with the FAA, it will not invalidate the remaining portions of this Arbitration Agreement or the Deposit Account Rules. In the event of a conflict or inconsistency between the AAA Rules and this Arbitration Agreement, this Arbitration Agreement will govern.

**PRIVACY POLICY FOR CONSUMERS**

Rev. 09/19

| FACTS | WHAT DOES FIFTH THIRD DO WITH YOUR PERSONAL INFORMATION? |
|---|---|

| WHY? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some, but not all, sharing. Federal law requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
|---|---|
| WHAT? | The types of personal information we collect and share depend on the product or service you have with us. This information can include: <br> • Social Security number and income. <br> • Payment history and account balances. <br> • Credit history and credit scores. |
| HOW? | All financial companies need to share customers' personal information to run their everyday business. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Fifth Third chooses to share; and whether you can limit this sharing. |

| REASONS WE CAN SHARE YOUR PERSONAL INFORMATION | DOES FIFTH THIRD SHARE? | CAN YOU LIMIT THIS SHARING? |
|---|---|---|
| **For our everyday business purposes** – such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| **For our marketing purposes** – to offer our products and services to you | Yes | No |
| **For joint marketing with other financial companies** | Yes | No |
| **For our affiliates' everyday business purposes** – information about your transactions and experiences | Yes | No |
| **For our affiliates' everyday business purposes** – information about your creditworthiness | Yes | Yes |
| **For our affiliates to market to you** | Yes | Yes |
| **For non-affiliates to market to you** | No | N/A |

| TO LIMIT OUR SHARING | • Call 800-889-5269 – our menu will prompt you through your choice(s); or <br> • Visit any Fifth Third Banking Center. <br> **Please note:** If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice. When you are *no longer* our customer, we continue to share your information as described in this notice. However, you can contact us at any time to limit our sharing. |
|---|---|

| QUESTIONS? | Call 800-889-5269 or go to 53.com/privacy-security. |
|---|---|

| WHO WE ARE | |
|---|---|
| **Who is providing this notice?** | Fifth Third companies that are financial service providers, such as banks, mortgage companies, securities brokers, and insurance agencies. |

| WHAT WE DO | |
|---|---|
| **How does Fifth Third protect my personal information?** | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. |
| **How does Fifth Third collect my personal information?** | We collect your personal information, for example, when you: <br> • Open an account or apply for a loan. <br> • Pay your bills or make a deposit. <br> • Use your credit card or debit card. <br> We also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| **Why can't I limit all sharing?** | Federal law gives you the right to limit only: <br> • Sharing for affiliates' everyday business purposes – information about your creditworthiness. <br> • Affiliates from using your information to market to you. <br> • Sharing for non-affiliates to market to you. |

|  | State laws and other individual companies may give you additional rights to limit sharing. See "Other Important Information" below for more on your rights under state law. |
| **What happens when I limit sharing for an account I hold jointly with someone** | Your choices will apply to everyone on your account. |

| DEFINITIONS | |
| --- | --- |
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates include companies with a Fifth Third name and financial companies such as banks, mortgage companies, insurance agencies, securities brokers, and investment advisors. |
| Non-affiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• Non-affiliates we share with can include government agencies, credit bureaus, auto dealers, companies that perform marketing services on our behalf, and companies that assist in servicing your account with us.<br>• Fifth Third does not share information with non-affiliates so they can market to you. |
| Joint marketing | A formal agreement between non-affiliated financial companies that together market financial products or services to you.<br>• Our joint marketing partners include categories of companies such as insurance companies. |

| OTHER IMPORTANT INFORMATION |
| --- |
| You may have other privacy protections under state law. We will comply with applicable state laws with respect to our information practices.<br><br>For accounts with California and Vermont mailing addresses, we will not share your credit or financial information that we collect except as permitted by law, including, for example, with your consent or to service your account. We will also not use your information for joint marketing purposes.<br><br>For Nevada residents: If you prefer not to receive marketing calls from us, you may be placed on our internal Do Not Call List by calling us toll-free at 800-889-5269. Nevada law requires us to provide you with the following contact information:<br><br>Fifth Third, Customer Services      Bureau of Consumer Protection, Office of the Nevada Attorney General<br>Privacy Administration      555 East Washington Street, Suite 3900<br>P.O. Box 4444      Las Vegas, NV 89101<br>Cincinnati, OH 45263-4444      Phone: 702-486-3132, Email: BCFINFO@ag.state.nv.us |

| AFFILIATES PROVIDING THIS NOTICE |
| --- |
| Fifth Third Bank, N.A.<br>Fifth Third Insurance Agency, Inc.<br>Fifth Third Securities, Inc. Member FINRA/SIPC |

**Important Information about Credit Reporting:**
We may report information about your accounts to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Important Information about Procedures for Opening a New Account:**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account

What this means for you: When you open an account, we will ask for your name, address, date of birth, and other information that will allow us to identify you. We may also ask to see your driver's license or other identifying documents.

# How to Contact Us

| Main Phone Number: | 800-972-3030 |
|---|---|
| Website: | 53.com |

**Call Us**:

To report a lost or stolen Card, PIN or password: 800-782-0279

To report an unauthorized transaction: 800-782-0279

For error resolution – PIN, Signature & ACH Transactions: 877-833-6197

To enroll in optional Overdraft Coverage: 800-972-3030

Business Banking inquiries: 877-534-2264

**Visit a Banking Center**:

Find your local branch location at 53.com

**Write to Us**:

To place a stop payment on a check or regular payment from your account, write to:

Customer Service Department, Fifth Third Bank
5050 Kingsley Drive – MD 1MOC3A
Cincinnati, OH 45263

If you believe that you have suffered a loss relating to a substitute check that you received and that was posted to your account, write to:

Disputes Resolution Department, Fifth Third Bank
5050 Kingsley Drive – MD 1MOCBX
Cincinnati, OH 45263

All other written correspondence:

Office of the President, Fifth Third Bank
5050 Kingsley Drive - MD 1MOCOP
Cincinnati, OH 45263



**FIFTH THIRD BANK**

© Fifth Third Bank, National Association. Member FDIC.

® Reg. U.S. Pat & TM. Off

Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp

⌂ Equal Housing Lender.

LIDN 4238

**November 18, 2022**