UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Nicole M. Milles, et al., | |
| Plaintiffs, | Case No. 1:24-cv-186 |
| v. | Judge Douglas R. Cole |
| Fifth Third Bank, National Association | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM

Defendant Fifth Third Bank, National Association ("Fifth Third") moves to dismiss the First Amended Class Action Complaint ("FAC") of Plaintiffs Nicole M. Milles, Rhonda Knight, and Jeffrey Knight ("Plaintiffs") under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. A memorandum in support is attached.

Respectfully submitted,

/s/Nathaniel Lampley, Jr.
Nathaniel Lampley, Jr., *Trial Attorney*
Jacob D. Mahle
Wesley R. Abrams
Vorys, Sater, Seymour and Pease LLP
301 E. Fourth St., Suite 3500
Cincinnati, OH, 45202
(513) 723-4000
nlampley@vorys.com
jdmahle@vorys.com
wrabrams@vorys.com
*Attorneys for Defendant*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... ii

I.    Summary of the Argument ............................................................................1

II.   Background ....................................................................................................3

      A.    Relevant Terms of the Deposit Agreement .................................................4

      B.    Plaintiffs Were Charged Returned Item Fees for Deposit Items ............................6

III.  Argument ......................................................................................................7

      A.    Standard ............................................................................................7

      B.    The FAC Fails to State a Claim ..............................................................8

            1.    Plaintiffs fail to state a claim for breach of the Deposit Agreement ............8

                  a.    Fifth Third Complied with the Deposit Agreement .......................9

                  b.    Plaintiffs Rely on Inapplicable Sections of the Deposit
                        Agreement and Fee Schedule ...............................................10

            2.    Plaintiffs fail to state a claim for breach of the implied covenant of
                  good faith and fair dealing .........................................................13

            3.    The Deposit Agreement bars Plaintiffs' unjust-enrichment claim ............15

            4.    Plaintiffs have no claim under the ICFA .....................................16

                  a.    The statute's plain language bars Plaintiffs' claim ......................16

                  b.    Plaintiffs fail to plausibly allege an ICFA claim ........................19

IV.   Conclusion ..................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978) ................................................. 8

*Alfaro v. Bank of Am., N.A.,* No. 19-22762-CIV, 2021 WL 1149889 (S.D. Fla.
  Feb. 23, 2021), *aff'd,* No. 21-10948, 2024 WL 1110945 (11th Cir. Mar. 14, 2024) ............... 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................................. 7, 8

*Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 544 N.E.2d 920 (Ohio 1989) ......................... 8

*Batson v. Live Nation Ent.*, 746 F.3d 827 (7th Cir. 2014) ............................................................ 19

*Becotte v. Coop. Bank,* No. CV 15-10812-RGS, 2017 WL 886967 (D. Mass. Mar. 6,
  2017) ..................................................................................................................................... 16

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 7, 8

*Bendickson v. Messerli & Kramer, P.A.*, No. 16-CV-0313 (PJS/BRT), 2016 WL
  4408822 (D. Minn. Aug. 16, 2016) ...................................................................................... 19

*BKB Props., LLC v. Suntrust Bank*, 453 F. App'x 582 (6th Cir. 2011) ........................................ 9

*Boone v. MB Fin. Bank*, N.A., 375 F. Supp. 3d 987 (N.D. Ill. 2019) ...................................... 2, 13

*Bracken v. Dasco Home Med. Equip., Inc.*, 954 F. Supp. 2d 686 (S.D. Ohio 2013) ............... 1, 10

*Brendamour v. City of the Village of Indian Hill*, 2022-Ohio-4724 (1st Dist.) .............................. 8

*Carter v. Natl. City Bank*, No. 1:17-cv-508, 2018 WL 3543699 (S.D. Ohio July 23,
  2018) ..................................................................................................................................... 13

*Charles v. First Nat'l Bank of Blue Island*, 327 Ill. App. 3d 399, 261 Ill. Dec. 601,
  763 N.E.2d 850 (2002) ......................................................................................................... 16

*Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631 (6th Cir. 2007) ................................... 8

*Evenflo Co., Inc. v. Augustine*, No. 3:14-cv-00076, 2014 WL 3105016 (S.D. Ohio
  July 7, 2014) ......................................................................................................................... 10

*Fair Isaac Corp. v. Trans Union, LLC*, No. 17-CV-8318, 2019 WL 1436018 (N.D.
  Ill. Mar. 30, 2019) ................................................................................................................ 13

*First Midwest Bank v. Amp of Ill., LLC*, 2012 IL APP (1st) 102917-U ....................................... 14

*Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477 (6th Cir. 2014) .................................. 2, 13

*Griffin v. U.S. Bank Nat'l Ass'n*, No. 15 C 6871, 2019 WL 4597364 (N.D. Ill. Sept. 23, 2019) .................................................................................................... 22

*Harmon v. Fifth Third Bancorp*, 858 F. App'x 842 (6th Cir. 2021) ................................... 2, 14, 15

*Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 WL 993882 (6th Cir. Oct. 19, 1999) ........................................................................................................ 9

*Hill v. St. Paul Fed. Bank for Sav.*, 329 Ill. App. 3d 705, 263 Ill. Dec. 562, 768 N.E.2d 322 (2002) ............................................................................................. 2, 17, 18

*Holmes v. Wilson*, No. 2:08-cv-602, 2009 WL 3673915 (S.D. Ohio Oct. 30, 2009) .................. 13

*Howards v. Fifth Third Bank*, No. 1:18-cv-869, 2023 WL 1778522 (S.D. Ohio Feb. 6, 2023) ....................................................................................................... 2, 5, 16

*Inhalation Plastics v. Medex Cardio-Pulmonary*, No. 2:07cv116, 2007 WL 4270621 (S.D. Ohio Dec. 3, 2007) ...................................................................................... 9

*Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990) ........................................................................................................... 14

*Kosowksi v. Alberts*, 2017 IL App (1st) 170622-U ....................................................... 2, 13, 14

*Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759 (S.D. Ill. 2010) ....................................... 19, 20

*Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007-Ohio-7007 (Ohio Ct. App. Dec. 27, 2017) ................................................................................................. 14

*Lanier v. Assocs. Fin., Inc.*, 114 Ill. 2d 1, 101 Ill. Dec. 852, 499 N.E.2d 440 (1986) ........ 2, 16, 17

*Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458 (Ohio 2018) .................................. 2, 13, 14

*Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992 (N.D. Ill. 2016) ......................... 21

*Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-CV-3633, 2019 WL 1254912 (N.D. Ill. Mar. 19, 2019) ....................................................................................... 15

*Newman v. Met. Life Ins. Co.*, 885 F.3d 992 (7th Cir. 2018) ............................................. 20

*People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473 (Ill. 1992) .......................... 2, 15

*Princeton Radiology Assocs., PA v. Advocate Radiology Billing & Reimbursement Specialists, LLC*, No. 2:19-cv-2311, 2020 WL 13328763 (S.D. Ohio Mar. 5, 2020) ............. 13

*Robinson v. Chuy's Opco, Inc.*, No. 1:17-CV-123, 2017 WL 4247547 (S.D. Ohio Sep. 25, 2017) ...................................................................................................... 2, 8

*Roby v. Liberty Mut. Personal Ins. Co.*, No. 20 C 6832, 2022 WL 204610 (N.D. Ill., 2022) ............................................................................................................... 3, 19, 20

*Rogers v. Waukegan Pub. Sch. Dist. 60*, 924 F. Supp. 2d 940 (N.D. Ill. 2013) ...................... 1, 10

*Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d. 307, 314, 662 N.E. 2d 602 (1996) ....................................................................................................................... 20, 21

*Savedoff v. Access Group, Inc.*, 524 F.3d 754 (6th Cir. 2008) ..................................................... 10

*Sharp v. Bank of Am., N.A.*, No. 19 C 5223, 2020 WL 1543544 (N.D. Ill. Mar. 31, 2020) ................................................................................................................. 2, 9, 10, 13

*Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 832 N.E.2d 189, 295 Ill. Dec. 38 (Ill. App. Ct. 2005) .......................................................................................... 22

*Stevens v. Allstate Corp.*, No. 12-60-DLB, 2013 WL 243641 (6th Cir. Jan. 21, 2013) ................ 9

*Suburban Ins. Servs., Inc. v. Virginia Surety Co., Inc.*, 322 Ill. App. 3d 688, 256 Ill. Dec. 470, 752 N.E.2d 15 (2001) .......................................................................................... 14

*Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319 (6th Cir. 2002) ............................ 3

*Toulon v. Cont'l Cas. Co.*, 877 F.3d 725 (7th Cir. 2017) ....................................................... 20, 21

*Washington v. Hyatt Hotels Corp.*, No. 1:19-CV-04724, 2020 WL 3058118 (N.D. Ill. June 9, 2020) ................................................................................................................. 21

*Webb v. Republic Bank & Trust Co.*, No. 3:11-CV-00423, 2013 WL 5447709 (W.D. Ky. Sept. 30, 2013) ............................................................................................................. 10

*Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2018 WL 6696607 (N.D. Ill. Dec. 20, 2018) (N.D. Ill. Dec. 20, 2018) .................................................. 14

## Statutes

12 U.S.C § 4301 ....................................................................................................................... 17

12 U.S.C. § 4301(b) ................................................................................................................. 17

12 U.S.C. § 4303(a) ................................................................................................................. 17

815 ILCS 505 § 10b(1) ...................................................................................................... 16, 18

Hidden Fees Statute ................................................................................................................. 20

Illinois Consumer Fraud and Deceptive Business Practices Act ........................................... passim

Truth in Lending Act .......................................................................................................... 2, 16

Truth in Savings Act ........................................................................................... passim

**Other Authorities**

California Department of Justice, *SB 478 Frequently Asked Questions* ....................................... 20

*Fifth Third Bank Will Eliminate Non-Sufficient Funds Fee for Consumer Accounts, Continues Fee Reductions*, April 7, 2022, https://www.53.com/content/fifth-third/en/media-center/press-releases/2022/press-release-2022-04-07.html ............................. 5

https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf. ...................................................................... 20

https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices#footnote-7-p66941 .................. 19

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................ 7, 9, 22

**Regulations**

12 C.F.R. § 1030.1(d) ......................................................................................... 17, 18

12 C.F.R. § 1030.4(b)(4) ..................................................................................... 17, 18

Comment 4(b)(4)-1.iv ............................................................................................... 17

Regulation DD ........................................................................................... 16, 17, 18

Regulation DD, Appendix B ............................................................................... 17, 18

## MEMORANDUM IN SUPPORT

### I.    Summary of the Argument

This case is about the fee that Fifth Third charges its customers when they try to deposit bad checks in their bank accounts.  The parties' "Deposit Agreement" plainly states that "[i]f a deposited or cashed Item"—like a check—"is returned, [Fifth Third] **will** charge you a Returned Item Fee as described in the fee schedule applicable to your account."  (Doc. 11-1, § 5.5, #138).  And the corresponding "Fee Schedule" clearly lists a $15 fee for "Return Deposit Item."  (Doc. 10-1, #97).

Plaintiffs are Fifth Third customers who alleged that Fifth Third charged them this $15 fee for bad checks that they deposited.  In their original complaint, Plaintiffs ignored the terms of the Deposit Agreement and tried to sidestep the fact that it allows Fifth Third to charge the fee at issue by invoking vague claims of "unfairness."  In its motion to dismiss, Fifth Third explained that it followed the terms of the Deposit Agreement, which barred Plaintiffs' claims.  In response, Plaintiffs filed their FAC, which is nothing more than a hollow attempt to create ambiguity in the Deposit Agreement where none exists.  Plaintiffs twist the terms of the Deposit Agreement to avoid dismissal.  They rely on sections of the Deposit Agreement and governing Fee Schedule that have nothing to do with check deposits and reference a fee that Fifth Third no longer even charges.

When the relevant contractual documents are read as a whole and in context, as is required by basic principles of contract interpretation, there is no ambiguity whatsoever, and Plaintiffs' FAC should be dismissed with prejudice.  *Bracken v. Dasco Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 695 (S.D. Ohio 2013); *Rogers v. Waukegan Pub. Sch. Dist. 60*, 924 F. Supp. 2d 940, 954 (N.D. Ill. 2013).  Simply put, Fifth Third disclosed the Returned Item Fee for deposit "Items,"[1]

---

[1]    An "Item" or "Items" is broadly defined as "all transactions, credits and debits to your account, including but not limited to checks, fees, service charges, ACH entries, fund transfers, cash withdrawals, Card purchases, Online

and Plaintiffs were charged that fee in accordance with the Deposit Agreement. Because Fifth

Third followed the unambiguous language of the Deposit Agreement, Plaintiffs have no breach-

of-contract claim under Ohio or Illinois law. *Robinson v. Chuy's Opco, Inc.*, No. 1:17-CV-123,

2017 WL 4247547, at *3 (S.D. Ohio Sep. 25, 2017); *Sharp v. Bank of Am., N.A.*, No. 19 C 5223,

2020 WL 1543544, at *3-5 (N.D. Ill. Mar. 31, 2020). Their claims for breach of the implied of

the covenant of good faith and fair dealing, unjust enrichment, and violation of the Illinois

Consumer Fraud and Deceptive Business Practices Act ("ICFA") fail for similar reasons:

- First, there is no such thing as a standalone claim for breach of the implied covenant of good faith and fair dealing. *Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477, 482 (6th Cir. 2014); *Boone v. MB Fin. Bank*, N.A., 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019). Even if there were, Plaintiffs cannot use the implied covenant to change the plain language of the Deposit Agreement, which states that Fifth Third will charge a Returned Item Fee if a deposited Item is retuned and provides no other conditions that Fifth Third must meet to charge that fee. *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018); *Kosowksi v. Alberts*, 2017 IL App (1st) 170622-U, ¶ 53 (citation omitted).

- Second, Plaintiffs admit that the Deposit Agreement is a binding and enforceable contract that covers Returned Item Fees, so they cannot assert an unjust-enrichment claim related to Returned Item Fees. *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497 (Ill. 1992); *Harmon v. Fifth Third Bancorp*, 858 F. App'x 842, 845-46 (6th Cir. 2021).

- Finally, Plaintiffs cannot rely on ICFA if Ohio law applies, which they now allege in the FAC. *Howards v. Fifth Third Bank*, No. 1:18-cv-869, 2023 WL 1778522, at *9-11 (S.D. Ohio Feb. 6, 2023). Even if they could, their purported ICFA claim is barred by ICFA itself, which says that actions authorized by federal laws administered by a regulatory body are exempted from the statute. The Illinois Supreme Court has held that compliance with the disclosure requirements of the federal Truth in Lending Act can be a defense to liability under ICFA. *Lanier v. Assocs. Fin., Inc.*, 114 Ill. 2d 1, 17, 101 Ill. Dec. 852, 859, 499 N.E.2d 440, 447 (1986). An Illinois appellate court applied this same rule to the disclosure requirements of the federal Truth in Savings Act, which applies to deposit accounts like those at issue in this case. *Hill v. St. Paul Fed. Bank for Sav.*, 329 Ill. App. 3d 705, 713, 263 Ill. Dec. 562, 568, 768 N.E.2d 322, 328 (2002). Thus, because Fifth Third's disclosures

---

Banking transactions, wire transfers and other amounts that are added to or subtracted from your account balance."
(Doc. 11-1 § 1.5, #130).

related to the Returned Item Fee comply with the Truth in Savings Act, Plaintiffs have no ICFA claim. Regardless, Plaintiffs fail to allege the claim's requirements. *E.g.*, *Roby v. Liberty Mut. Personal Ins. Co.*, No. 20 C 6832, 2022 WL 204610, at *4 (N.D. Ill., 2022).

For these reasons, and as more fully explained below, Plaintiffs have failed to state a claim under Ohio or Illinois law, and the Court should dismiss the FAC.

## II.    <u>Background</u>

Plaintiffs hold deposit accounts at Fifth Third. (FAC ¶¶ 50, 55). Milles alleges that "[p]rior to the applicable limitations period, [she] opened a 53 Momentum Checking account with Fifth Third." (*Id.* ¶ 50). The Knights allege that they "opened a joint 53 Momentum Savings Account with Fifth Third in or around 2010." (*Id.* ¶ 55). As Plaintiffs admit, they entered "Deposit Agreements" with Fifth Third when they opened their accounts, "which outline the governing terms of the accounts." (*Id.* ¶ 32; *see also* Doc. 11-1 § 1.1, #130 (defining "Your Deposit Contract")). A copy of the Deposit Agreement effective as of November 18, 2022, is attached to the FAC as Exhibit A.[2]

---

[2]     Section 1.3 of the Deposit Agreement states that Fifth Third "may change the terms of the Deposit Account Rules, including the fees, benefits, and features associated with your account, at any time. . . . Continuing to use your account or keeping your account open following the effective date of any changes to the Deposit Account Rules constitutes your acceptance of the terms as modified." (Doc. 11-1 § 1.3, #130). Plaintiffs agree that the November 2022 Deposit Agreement applies to them. (*See* FAC ¶ 32). Moreover, the November 2022 version of the Deposit Agreement included the Fee Schedule that applied to the Returned Item Fees that Fifth Third charged Plaintiffs. (*See* Doc. 10-1). Although Plaintiffs did not attach the Fee Schedule to their Complaint, the Court can consider it because (1) plaintiffs include the Deposit Agreement, and (2) the Deposit Agreement plainly incorporates the Fee Schedule. (Doc. 11-1 § 1.1, # 130 (defining applicable contract as "[t]hese Deposit Account Rules & Regulations, the applicable fee schedule(s), the signature card, product disclosures, rate information and other account opening documents or disclosures for your account together create the contract between you and us . . . for your deposit account and your deposit relationship with us."); *see also Thomas v. Publishers Clearing House, Inc.*, 29 F. App'x 319, 322 (6th Cir. 2002) (where the plaintiff fails to attach a "pertinent document" to the complaint, the "defendant may introduce the exhibit as part of his motion attacking the pleading").

### A.      Relevant Terms of the Deposit Agreement

Among other things, the Deposit Agreement includes "**Basic Terms for All Accounts**." (Doc. 11-1 § 3.2, #133).  One such term relates to "<u>Fees</u>":

> (a) <u>Fees</u>. Your account is subject to the fees described in the fee schedule applicable to your account. <mark>You agree to pay for all fees applicable to your account and your deposit relationship with us.</mark> We may deduct these fees from your account balance, even if that makes your balance negative.

(*Id.* § 3.2(a)).

The Deposit Agreement also addresses how Fifth Third handles "Items," which are broadly defined to include payments and purchases by the customer using their account, as well as the customer's deposits to their account.  Specifically, an "Item" or "Items" is defined as "all transactions, credits and debits to your account, including but not limited to checks, fees, service charges, ACH entries, fund transfers, cash withdrawals, Card purchases, Online Banking transactions, wire transfers and other amounts that are added to or subtracted from your account balance."  (*Id.*, #130).  For purposes of the FAC, there are two relevant sections of the Deposit Agreement related to Items and the potential fees associated with them.

***The Customer's Purchases and Payments***.  Section 4 of the Deposit Agreement addresses the customer's purchases and payments to third parties from their Fifth Third account, how those transactions post to the customer's account, and what happens if the customer has insufficient funds in their account to cover them.  (Doc. 11-1 § 4, #135-37).  Specifically, "[i]f an Item is presented and the available balance in your account is not enough to cover it, [Fifth Third] may either pay the Item (an "overdraft") and charge you an Overdraft Fee **_or_** return the Item unpaid which may result in a Returned Item Fee."  (*Id.* § 4.1, #135 (emphasis added)).  Section 4.1(b) further states that Fifth Third "may charge you a Returned Item Fee if we return an Item unpaid[,]" but that Fifth Third "will charge you an Overdraft Fee if we pay an Item that results in an

overdraft." (*Id.*) The "Returned Item Fee" discussed in Section 4 is also known as an "Insufficient Funds" or "NSF" fee. *See Howards v. Fifth Third Bank*, No. 1:18-cv-869, 2023 WL 1778522, at *2-5 (S.D. Ohio Feb. 6, 2023). As Plaintiffs acknowledge, Fifth Third stopped charging NSF fees—the "Overdraft-Returned Item Fees referenced in Section 4.1(b) of the" Deposit Agreement, as they dub them—in June of 2022. (FAC ¶ 44; *see also Fifth Third Bank Will Eliminate Non-Sufficient Funds Fee for Consumer Accounts, Continues Fee Reductions*, April 7, 2022, https://www.53.com/content/fifth-third/en/media-center/press-releases/2022/press-release-2022-04-07.html). Fifth Third's decision to stop charging this fee is reflected in the "Overdraft Fees" section of the applicable Fee Schedule:

| Overdraft Fees | | |
|---|---|---|
| Overdraft Fee | $37 per item for each occurrence | Maximum of 3 overdraft fees charged per account, per business day.<br>No overdraft fee on individual items of $5.00 or less.<br>No per-item fees charged when your account is overdrawn by $5 or less at the end of the Business Day. |

L:DN 4826
Fifth Third Bank, National Association. Member FDIC. ⌂ Equal Housing Lender. Fifth Third and Fifth Third Bank are registered service marks of Fifth Third Bancorp.

| Overdraft Fees (continued) | | |
|---|---|---|
| Extended Overdraft Fee | $25 every 7 days up to 4 times per continuous overdraft occurrence | If your consumer deposit account is overdrawn for seven consecutive calendar days, we will charge a $25 Extended Overdraft Fee on the next business day. We may charge you this fee every seven days, up to a maximum of four times per continuous overdraft occurrence. |
| Overdraft Protection Transfer Fee | Free Overdraft Protection Transfers. | If your account providing the protection does not have sufficient funds available or is subject to a restriction, or if the protected account is subject to a hold, Overdraft Protection may not be applied and Overdraft fees may be assessed.<br>• **For Credit Cards:** The amount transferred will be subject to both the available cash advance limit and cash advance interest rate applicable to the card².<br>• **For Lines of Credit:** The amount transferred will be subject to the interest rate applicable to the line of credit. |
| Returned Item Fee | $0 – No fee | You will not be charged a fee if we return your checks and payments unpaid. |

(Doc. 10-1, #97-98).

**The Customer's Deposits**. Section 5 of the Deposit Agreement addresses the customer's deposits to their account. (Doc. 11-1 § 5, #137-39). When a customer deposits an Item, such as a

5

check received from a third party, Fifth Third attempts to collect the amount of the check from the bank that holds the account upon which the check was drawn. (*See id.* § 5.1, #137-38). "All Items accepted for deposit or collection are credited to [the customer's] account subject to final payment and receipt of proceeds by" Fifth Third. (*Id.* #137). "This means that until [Fifth Third] has actually received the funds or until such Items become final under applicable law, a deposit Item can be returned and charged back to your account . . . ." (*Id.* #137-38).

According to Section 5.5 of the Deposit Agreement, ***the customer*** "is responsible for returned Items" in the context of deposits. (*Id.* § 5.5, #138). So, "[i]f *a **deposited or cashed Item is returned***"—e.g., the check that the Fifth Third customer deposited in their account was bad because the account upon which the check was drawn lacked sufficient funds to cover the check— Fifth Third "***will*** charge [the customer] a Returned Item Fee as described in the fee schedule applicable to [their] account." (*Id.* (emphasis added)). The applicable Fee Schedule imposes a $15 fee for "Return Deposit Item":

| Payments & Services Miscellaneous Fees | | |
|---|---|---|
| Return Deposit Item | $15 per item | |

(Doc. 10-1, #97).

### B. Plaintiffs Were Charged Returned Item Fees for Deposit Items.

Plaintiffs were charged Returned Item Fees for deposit Items consistent with the terms of the Deposit Agreement. In July 2022, Milles "attempted to deposit a check into her Checking account," "the check was returned unpaid," and "Fifth Third charged [her] a Return Deposit Item Fee of $15.00." (FAC ¶¶ 51, 53). The same thing happened to the Knights. In September 2023, they "attempted to deposit a check into their joint Savings account," "the check was returned unpaid," and "Fifth Third charged [them] a Return Deposit Item Fee of $15.00." (*Id.* ¶¶ 56, 58).

A few months ago, Plaintiffs filed this putative class-action lawsuit about the Returned Item Fees. Plaintiffs did not allege that Fifth Third charged them (or anyone else) Returned Item Fees for deposit Items that were inconsistent with the Deposit Agreement or the Fee Schedule. (*See generally* Compl.) Instead, Plaintiffs broadly alleged that Fifth Third's practice of charging Returned Item Fees—which, again, is plainly outlined in the Deposit Agreement—"was unfair and unlawful." (*See* Compl., Doc 1 ¶¶ 36, 41). Plaintiffs identified no contractual provision or law that was violated. But they nonetheless asserted claims for (1) breach of the implied covenant of good faith and fair dealing (Count I); (2) unjust enrichment (Count II); and (3) violation of ICFA (Count III). Because none of the claims were legally viable, Fifth Third moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

In response to Fifth Third's motion, Plaintiffs filed the FAC. Plaintiffs reiterate their allegations about the fairness of the fees they were charged and restate their prior claims. (FAC, ¶¶ 1, 87-136). But now, Plaintiffs allege that "the Return Deposit Item Fees that are the subject of this matter are not clearly and uniformly disclosed in the Deposit Agreement[,]" and that Fifth Third somehow breached the Deposit Agreement when it charged those fees. (*Id.* ¶¶ 1, 40-49, 80-86). Fifth Third moves to dismiss the FAC because it complied with the plain language of the Deposit Agreement, which bars Plaintiffs' claims.

### III.   <u>Argument</u>

#### A.   **Standard**

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In short, a complaint must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3. Although this Court must accept as true well-pleaded factual allegations, it is not required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations . . . ." *Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

**B.  The FAC Fails to State a Claim.**

The Court should dismiss the FAC because it fails to state a claim under Ohio and Illinois law. In its original motion to dismiss, Fifth Third assumed that Illinois law applied because Plaintiffs allege that they are citizens of Illinois. (Compl. ¶ 10-12; FAC ¶ 16-18; Doc. 10, #78-79); *see also* Doc. 1-1 § 10.7, #45 (generally providing that disputes are governed by "the laws of the state where your account is located")). Plaintiffs now assert that Ohio law applies to their claims, although they attempt to carve out their claim under ICFA. (FAC ¶¶ 73-79, 117-19). As explained below, it is irrelevant which state's laws apply because Plaintiffs' claims fail under both states' laws.

**1.  Plaintiffs fail to state a claim for breach of the Deposit Agreement.**

A breach-of-contract claim has four elements: "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach." *Brendamour v. City of the Village of Indian Hill*, 2022-Ohio-4724, ¶ 18 (1st Dist.). When a contract is clear and unambiguous, its interpretation is a matter of law for the court; there is no issue of fact. *See Alexander v. Buckeye Pipe Line Co.*, 374 N.E.2d 146 (Ohio 1978). Contracts are interpreted to carry out the parties' intent, which is evidenced by the contracts' language. *See Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 544 N.E.2d 920 (Ohio 1989). Thus, "it is a basic tenet of contract law that a party can only advance a claim of breach of written contract ***by identifying and presenting the actual terms of the contract allegedly breached*.**" *Robinson v.*

*Chuy's Opco, Inc.*, No. 1:17-CV-123, 2017 WL 4247547, at *3 (S.D. Ohio Sep. 25, 2017) (emphasis added) (citing *Harris v. Am. Postal Workers Union*, No. 98-1734, 1999 WL 993882, at *4, (6th Cir. Oct. 19, 1999)). In other words, if "a plaintiff does not . . . set forth the language of the contractual provision allegedly breached, he fails to state a claim for breach of contract. *Id.* (citing *Stevens v. Allstate Corp.*, No. 12-60-DLB, 2013 WL 243641, at *2-3 (6th Cir. Jan. 21, 2013)). Illinois law is the same. *Sharp v. Bank of Am., N.A.*, No. 19 C 5223, 2020 WL 1543544 (N.D. Ill. Mar. 31, 2020).

### a.    Fifth Third Complied with the Deposit Agreement.

Here, Plaintiffs fail to identify any term of the Deposit Agreement that Fifth Third allegedly breached. They allege that Fifth Third breached the Deposit Agreement when it charged them "a $15 Return Deposit Item Fee" because checks that they attempted to deposit in their accounts were returned unpaid. (FAC ¶ 85). But Section 5.5 of the Deposit Agreement plainly states that "if a deposited or cashed Item is retuned, we ***will*** charge you a Returned Item Fee as described in the fee schedule applicable to your account." (Doc. 11-1 § 5.5, #138 (emphasis added)). A check is a "deposited . . . Item." (Doc. 11-1 § 1.5, #130 (defining "Item" to include "checks")). The word "will" is "mandatory language . . . ." *Inhalation Plastics v. Medex Cardio-Pulmonary*, No. 2:07cv116, 2007 WL 4270621, at *3 (S.D. Ohio Dec. 3, 2007). And the applicable Fee Schedule sets the fee for "Return Deposit Item" at "$15 per item." (Doc. 10-1, #97). Thus, the Deposit Agreement ***allowed*** Fifth Third to charge Plaintiffs $15 when the checks that they tried to deposit in their Fifth Third checking accounts were returned unpaid. Plaintiffs cannot sue for breach of contract when Fifth Third merely followed the governing contract. *See, e.g.*, *BKB Props., LLC v. Suntrust Bank*, 453 F. App'x 582, 587 (6th Cir. 2011) (affirming 12(b)(6) dismissal of breach-of-contract claim because "SunTrust acted within the unambiguous terms of the contract when it

demanded payment under the interest-rate swap upon BKB's prepayment of the Note, and BKB has therefore failed to state claim[] for breach of contract . . . ."); *Webb v. Republic Bank & Trust Co.*, No. 3:11-CV-00423, 2013 WL 5447709, at *4 (W.D. Ky. Sept. 30, 2013) (dismissing breach-of-contract claim against a bank about fees because "[a] breach of contract action may not be based on an act which the contract authorizes to be done."); *Sharp*, 2020 WL 1543544, at *3-5 (same).

> ### b. Plaintiffs Rely on Inapplicable Sections of the Deposit Agreement and Fee Schedule.

Rather than confront the plain language of the Deposit Agreement, Plaintiffs attempt to create ambiguity where none exists. Plaintiffs allege that "the Return Deposited Item Fees that are the subject of this matter are not clearly and uniformly disclosed in the Deposit Agreement[,]" and "the Deposit Agreement is rife with internal inconsistencies, leaving consumers with no clear disclosure as to the conditions under which the fee may imposed." (FAC ¶ 2; *see also id.* ¶¶ 8-10, 40-49). They advance three theories in support of this allegation, each of which is meritless.

First, Plaintiffs wrongly argue that the Deposit Agreement is ambiguous because in Section 4 it says that Fifth Third "may" charge a fee for "returned Items," but in Section 5 it says that Fifth Third "will" charge a fee for returned Items. (*E.g.*, FAC ¶¶ 9, 34). "When parties to a contract dispute the meaning of the contract language, courts must first look to the four corners of the document to determine whether an ambiguity exists." *Bracken v. Dasco Home Med. Equip., Inc.*, 954 F. Supp. 2d 686, 695 (S.D. Ohio 2013). There is no ambiguity "if the subject language's meaning can be determined by considering the language in the context of other contractual language." *Id.* (citing *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 764 (6th Cir. 2008)). Put differently, "[a] term [or phrase] that would otherwise cause ambiguity can be construed in the context of other terms in the contract to resolve the ambiguity." *Evenflo Co., Inc. v. Augustine*, No. 3:14-cv-00076, 2014 WL 3105016, at *21 (S.D. Ohio July 7, 2014); *Rogers v. Waukegan Pub.*

*Sch. Dist. 60*, 924 F. Supp. 2d 940, 954 (N.D. Ill. 2013) ("Of course, the pertinent language must be viewed in context, and the contract must be construed not in a piecemeal fashion but as a whole in determining the parties' intent.").

Here, the Deposit Agreement describes two kinds of "Returned Item Fees," ***only one of which is relevant to this case***. The first such fee is outlined in Section 4. (Doc. 11 § 4, #135-37). This section informs the customer what happens "when the available balance in [their] account is not enough to cover [***their***] payments and purchases or [their] use of the account." (*Id.* § 4.1, #135). Fifth Third may either pay "the Item (an overdraft) and charge you an Overdraft Fee or return the Item which may result in a Returned Item Fee." (*Id.*) Fifth Third "will charge" an "Overdraft Fee" if it takes the former approach, and it "may charge" a "Returned Item Fee" if it takes the latter approach. (*Id.* § 4.1(b)). But Plaintiffs' claims here do ***not*** concern their own purchases and account balances. Instead, their claims are about checks that they received from third parties and tried to deposit in their accounts. Section 5 of the Deposit Agreement governs check deposits, another type of "Item." (Doc. 11-1 § 1.5, #130; *see also id.* § 5.5, #138). Section 5.5 plainly informs the customer that "[i]f a deposited or cashed Item is returned, we ***will*** charge you a Returned Item Fee as described in the fee schedule . . . ." (*Id.* § 5.5, #138 (emphasis added)).

When Sections 4 and 5 are read together and in context, there is no ambiguity. There are two kinds of "Returned Item Fees." The "Returned Item Fee" in Section 4 relates to purchases and payments by a Fifth Third customer, while the "Returned Item Fee" in Section 5 relates to deposited checks that a Fifth Third customer receives from a third party. Fifth Third charged Plaintiffs the fee described in Section 5 in accordance with the Deposit Agreement and Fee Schedule. Thus, Plaintiffs have no breach-of-contract claim.

Second, Plaintiffs' argument that "[n]owhere in the Deposit Agreement or the Fee Schedule are the conditions under which a Return Deposit Item Fee will be imposed disclosed to consumers" is incorrect. (FAC ¶ 10). Again, Section 5.5 unambiguously states that "[i]f a deposited or cashed Item is returned, we *will* charge you a Returned Item Fee as described in the fee schedule . . . ." (Doc. 11-1 § 5.5, #138). And the Fee Schedule lists a "$15 per item" fee for "Return Deposit Item." (Doc. 10-1, #97).

Finally, Fifth Third did not breach the Deposit Agreement because the section of the Fee Schedule related to "Overdraft Fees" says that there is a $0 "Returned Item Fee," as Plaintiffs wrongly contend. (FAC ¶¶ 84-85). This case is *not* about overdrafts or the Returned Item Fee discussed in Section 4 of the Deposit Agreement. Plaintiffs recognize that fact by referring to the irrelevant fee as an "Overdraft-Returned Item Fee," and referencing Fifth Third's decision to stop "charging the Overdraft-Returned Item Fees referenced in Section 4.1(b) of the" Deposit Agreement. (*See* FAC ¶ 44). ***Again, Plaintiffs are not complaining about Fifth Third charging them fees because their own accounts lacked sufficient funds***. Plaintiffs thus have no basis to rely on the section of the Deposit Agreement related to overdrafts or the section of the Fee Schedule related to "Overdraft Fees." Their case begins and ends with the clear statement in Section 5.5 of the Deposit Agreement that Fifth Third "*will* charge . . . a Returned Item Fee as described in the fee schedule" for a returned ***deposit Item*** and the corresponding section of the Fee Schedule that plainly lists a $15 fee for "Return Deposit Item." (Doc. 11-1 § 5.5, #138 (emphasis added); Doc. 10-1, #97). Because Fifth Third merely charged Plaintiffs the $15 fee that it disclosed, Plaintiffs have not stated a claim for breach of contract, and the Court should grant Fifth Third's motion.

### 2. Plaintiffs fail to state a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing (Count II) fails under Ohio and Illinois law for at least two reasons. First, neither jurisdiction recognizes "a standalone claim for breach of the implied covenant of good faith and fair dealing." *Frisch v. Nationwide Mut. Ins. Co.*, 553 F. App'x 477, 482 (6th Cir. 2014); *Boone v. MB Fin. Bank*, N.A., 375 F. Supp. 3d 987, 995 (N.D. Ill. 2019). "Under Ohio law there is not a tort cause of action for breach of [the implied] covenant of good faith that is separate from a breach of contract claim, and, if such a breach is asserted as part of a contract claim, it must be alleged as part of that contract count and may not stand alone." *Holmes v. Wilson*, No. 2:08-cv-602, 2009 WL 3673915, at *9 (S.D. Ohio Oct. 30, 2009) (cleaned up). Thus, this Court routinely dismisses standalone claims for breach of the implied covenant of good faith and fair dealing under Ohio law. *See, e.g.*, *Princeton Radiology Assocs., PA v. Advocate Radiology Billing & Reimbursement Specialists, LLC*, No. 2:19-cv-2311, 2020 WL 13328763, at *5 (S.D. Ohio Mar. 5, 2020) (dismissing plaintiff's claim for breach of implied duty of good faith and fair dealing because Ohio law does not recognize the claim as separate); *Carter v. Natl. City Bank*, No. 1:17-cv-508, 2018 WL 3543699, at *30 (S.D. Ohio July 23, 2018) (same). Illinois courts do the same. *Boone*, 375 F. Supp. 3d at 995 (N.D. Ill. 2019) (dismissing claim that bank "breached the covenant of good faith and fair dealing in the contract through its overdraft policies and practices"); *Fair Isaac Corp. v. Trans Union, LLC*, No. 17-CV-8318, 2019 WL 1436018, at *3 (N.D. Ill. Mar. 30, 2019) (same); *Sharp*, 2020 WL 1543544, at *5 (same).

Second, neither jurisdiction allows Plaintiffs to use the implied covenant of good faith and fair dealing "to overrule or modify the express terms of a contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018); *Kosowksi v. Alberts*, 2017 IL App (1st) 170622-U, ¶ 53

(citation omitted).  The Ohio Supreme Court has "recognized that good faith is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could have not been contemplated at the time of drafting, and which therefore was not resolved explicitly by the parties." *Lucarell*, 97 N.E.3d 458, 469 (Ohio 2018).  It has thus "rejected the contention that a party breaches the implied duty of good faith and fair dealing merely by seeking to enforce the contract or by acting as permitted by its express terms." *Id.* Illinois courts hold the same. *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990) (citations omitted); *see also First Midwest Bank v. Amp of Ill., LLC*, 2012 IL APP (1st) 102917-U, ¶ 25 ("The covenant of good faith and fair dealing does not allow a party to read an obligation into a contract that does not exist.") (quoting *Suburban Ins. Servs., Inc. v. Virginia Surety Co., Inc.*, 322 Ill. App. 3d 688, 693, 256 Ill. Dec. 470, 474, 752 N.E.2d 15, 19 (2001)).

As a result, Ohio and Illinois courts have dismissed claims for breach of the implied covenant of good faith and fair when the defendant merely exercised its contractual rights. *See e.g., Kosowksi*, 2017 IL App (1st) 170622-U, ¶ 54 (rejecting implied duty claim because bank merely exercised right under parties' agreement); *Wells Fargo Bank, N.A. v. Worldwide Shrimp Co.*, No. 17 CV 4723, 2018 WL 6696607 (N.D. Ill. Dec. 20, 2018) at *7 (N.D. Ill. Dec. 20, 2018) ("Wells Fargo's actions [of charging fees] fell within the express terms of the loan documents; they are not breaches of the implied covenant of good faith and fair dealing."); *Harmon v. Fifth Third Bancorp*, 858 F. App'x 842, 845 (6th Cir. 2021) ("because Harmon cannot prove that Fifth Third breached its contract, she cannot assert a standalone breach of implied-covenant claim.") *Krukrubo v. Fifth Third Bank*, No. 07AP-270, 2007-Ohio-7007 ¶ 19 (Ohio Ct. App. Dec. 27, 2017) (same).

14

Similarly, here, Fifth Third charged Plaintiffs Returned Item Fees for deposit Items in accordance with the Deposit Agreement, so Plaintiffs have no claim for breach of the implied covenant of good faith and fair dealing. To try to get around the Deposit Agreement, Plaintiffs allege that Fifth Third somehow had an implied obligation to not "systematically charg[e]" the fees and instead consider "the facts and circumstances surrounding the accountholder's attempt to deposit the check into their account." (FAC ¶ 98.) This allegation conflicts with the plain language of the Deposit Agreement, which states that **(1)** the customer "is responsible for returned Items"; **(2)** if a "***deposited Item*** is returned," Fifth Third "***will*** charge [the customer] a Returned Item Fee as described in the fee schedule applicable to [their] account"; and **(3)** the customer "agree[s] to pay for all fees applicable to [their] account and [their] deposit relationship with" Fifth Third. (Doc. 11-1 § 3.2(a), #133; *Id.* § 5.5, #138). Fifth Third is entitled to enforce this language as written and exercise its contractual rights, and Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing should be dismissed.

### 3. The Deposit Agreement bars Plaintiffs' unjust-enrichment claim.

The Court should dismiss Plaintiffs' unjust-enrichment claim (Count III) for similar reasons under Ohio and Illinois law. "Because unjust enrichment is based on an implied contract, where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 497 (Ill. 1992); *Harmon*, 858 F. App'x at 845-46 ("Here, the Contract expressly covers the service fees at issue, so Harmon's unjust-enrichment claim—based on those same retained fees— must fail."). Indeed, when "plaintiffs have acknowledged that there is an express contract, courts have prevented [them] from pursuing an unjust enrichment claim, even in the alternative." *Miszczyszyn v. JPMorgan Chase Bank, N.A.*, No. 18-CV-3633, 2019 WL 1254912, at *4 (N.D. Ill. Mar. 19, 2019); *Harmon*, 858 F. App'x at 845-46 (same).

Plaintiffs here do just that. Plaintiffs acknowledge that the parties have a valid contract (the Deposit Agreement), and Plaintiffs were charged Returned Item Fees for returned deposit Items consistent with the Deposit Agreement. It is not unjust for Fifth Third to retain the fees that the Deposit Agreement plainly allows it to charge. Because the Deposit Agreement governs the subject of Returned Item Fees, Plaintiffs cannot assert a claim for unjust enrichment related to these fees. The unjust-enrichment claim should be dismissed.

### 4. Plaintiffs have no claim under the ICFA.

Finally, Plaintiffs cannot advance an ICFA claim if Ohio law applies. *Howards*, 2023 WL 1778522, at *9-11. If Illinois law applies, the ICFA claim (Count IV) still fails for two reasons. First, the plain language of ICFA bars Plaintiffs' claim because Fifth Third complied with the disclosure requirements imposed by the Truth in Savings Act ("TISA") and Regulation DD. Second, Plaintiffs fail to plausibly allege an ICFA claim.

### a. The statute's plain language bars Plaintiffs' claim.

ICFA says that "[n]othing in this Act shall apply to any of the following: "(1) Actions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States . . . ." 815 ILCS 505 § 10b(1). "Under this provision, conduct which is authorized by Federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability under the Consumer Fraud Act." *Lanier v. Assocs. Fin., Inc.*, 114 Ill. 2d 1, 17, 101 Ill. Dec. 852, 859, 499 N.E.2d 440, 447 (1986). In *Lanier*, the Illinois Supreme Court held that "the defendant's compliance with the disclosure requirements of the Truth in Lending Act [was] a defense to liability under" ICFA. *Id.* at 18; *see also Charles v. First Nat'l Bank of Blue Island*, 327 Ill. App. 3d 399, 404, 261 Ill. Dec. 601, 605, 763 N.E.2d 850, 854 (2002) (In *Lanier*, "the Illinois Supreme Court determined that compliance with TILA is a defense to liability under the Illinois Consumer Fraud Act.").

Like the Truth in Lending Act, TISA is a federal law under which a "regulatory body," the Consumer Financial Protection Bureau, promulgates regulations. *Becotte v. Coop. Bank,* No. CV 15-10812-RGS, 2017 WL 886967, at *7 (D. Mass. Mar. 6, 2017). TISA governs disclosures relating to deposit accounts. 12 U.S.C § 4301. It requires a "clear and uniform disclosure" of, among other things, fees assessed against deposit accounts, and it requires banks to maintain fee schedules. 12 U.S.C. §§ 4301(b), 4303(a). TISA's implementing Regulation DD states that "[a]ccount disclosures shall include . . . the amount of any fee that may be imposed in connection with the account (or an explanation of how that fee will be determined) and the conditions under which the fee may be imposed." 12 C.F.R. § 1030.4(b)(4). Comment 4(b)(4)-1.iv to the regulation lists "fees associated with checks returned unpaid" as those that must be disclosed. And Appendix B to Regulation DD provides the following example fee schedule:

| Other Account Fees | |
| --- | --- |
| ■ Deposited checks returned . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 5.00 |
| ■ Balance inquiries (at a branch or at an ATM) . . . . . . . . . . . . . . . . . . . . | $ 1.00 |
| ■ Check printing ◆ . . . . . . . . . . . . . . . . . (Fee depends on style of check ordered) | |
| ■ Your check returned for insufficient funds (per check) ◆ . . . . . . . . . . . . . . | $ 16.00 |
| ■ Stop payment request (per request) ◆ . . . . . . . . . . . . . . . . . . . . . . . . | $ 12.50 |
| ■ Certified check (per check) ◆ . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $ 10.00 |

Regulation DD provides that "[s]tate law requirements that are inconsistent with the requirements of [TISA] and this part are preempted to the extent of the inconsistency." 12 C.F.R. § 1030.1(d). "There is no private cause of action under TISA. Consequently, state-law challenges to a bank's failure to disclose certain fees or fee practices are routinely dismissed on preemption grounds." *See, e.g.*, *Alfaro v. Bank of Am., N.A.,* No. 19-22762-CIV, 2021 WL 1149889, at *2 (S.D. Fla. Feb. 23, 2021)*, aff'd,* No. 21-10948, 2024 WL 1110945 (11th Cir. Mar. 14, 2024).

*Hill v. St. Paul Federal Bank for Savings* is instructive. There, the Illinois appellate court applied *Lanier* and held that an ICFA claim related to how a bank charged overdraft fees fell within

ICFA's "exemption for conduct authorized by law," as the bank disclosed its fees in accordance with TISA and Regulation DD. *Hill v. St. Paul Fed. Bank for Sav.*, 329 Ill. App. 3d 705, 713, 263 Ill. Dec. 562, 568, 768 N.E.2d 322, 328 (2002). The bank disclosed the overdraft fees in a fee schedule. *Id.* at 708. The plaintiff complained that the disclosure was inadequate and unfair under ICFA because it did not describe the bank's high-to-low posting method. *Id.* at 711-12. The court rejected the argument and held that the ICFA claim was barred by 815 ILCS 505 § 10b(1) because the bank named and described the fee in accordance with TISA. *Id.* at 713.

The same is true here. Section 5.5 of the Deposit Agreement states that if a "deposited or cashed Item is returned, [Fifth Third] will charge you a Returned Item Fee as described in the fee schedule applicable to your account." (Doc. 11-1 § 5.5, #138). The Fee Schedule plainly states that the fee for "Return Deposit Item" is "$15 per item." (Doc 10, #97). Plaintiffs do not allege that the fee schedule violates TISA or Regulation DD—nor can they, as the basic information that 12 C.F.R. § 1030.4(b)(4) requires is disclosed, and Fifth Third's fee schedule matches the example from Appendix B to Regulation DD. *See Hill*, 329 Ill. App. 3d at 712-13 ("naming and describing the fee, such as a $4.00 monthly service fee, will typically satisfy the requirements to state the amount and the conditions under which a fee may be imposed." (cleaned up)).

Indeed, the example in Appendix B lists separate fees for "deposited checks returned" and "your check returned for insufficient funds." Although Plaintiffs try to confuse the issues, as explained above, Section 4 and 5 of the Deposit Agreement and the corresponding sections of the Fee Schedule draw a similar distinction. There is no failure to "to clearly and uniformly disclose to consumes whether or not Return Deposit Item Fees will be charged" or "the conditions under which the fee may be imposed." (*See* FAC ¶ 132). Plaintiffs' ICFA claim is thus barred by 815

ILCS 505 § 10b(1).  To the extent that section 10b(1) does not preclude the ICFA claim (it does), the claim would be preempted by TISA.  12 C.F.R. § 1030.1(d).

> **b.      Plaintiffs fail to plausibly allege an ICFA claim.**

Plaintiffs' ICFA claim also fails because they fail to plausibly allege the claim's requirements.  Plaintiffs assert an unfair conduct claim under ICFA.  *Roby v. Liberty Mut. Personal Ins. Co.*, No. 20 C 6832, 2022 WL 204610, at *4 (N.D. Ill., 2022) ("There are two theories of liability under ICFA: deceptive practices and unfair conduct.")  "To state such a claim, [Plaintiffs] must show that" Fifth Third's practice of charging Returned Item Fees "was unfair in light of three factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; [and] (3) whether it causes substantial injury to consumers."  *Id.* (internal quotation marks omitted) (citation omitted).  Plaintiffs cannot establish any of these factors.

> ***Fifth Third's Returned Item Fee does not offend public policy***.  "The scope of 'public policy' for purposes of an ICFA unfair conduct claim is 'established by statutes and the common law.'"  *Roby*, 2022 WL 204610, at *5 (N.D. Ill., 2022) (quoting *Batson v. Live Nation Ent.*, 746 F.3d 827, 833 (7th Cir. 2014)); *see also Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 771 (S.D. Ill. 2010) ("in general the public policy of the State of Illinois is gleaned from its statutes, judicial decisions, constitution, and the practices of its government officials.").

Here, Plaintiffs identify no relevant public policy of the State of Illinois.  They cite a CFPB bulletin, which is "not binding on this or any court" and does not evidence public policy of the State of Illinois.  *See Bendickson v. Messerli & Kramer, P.A.*, No. 16-CV-0313 (PJS/BRT), 2016 WL 4408822, at *4 (D. Minn. Aug. 16, 2016).  The bulletin itself states that "[i]t does not confer any rights of any kind," and that it "does not impose any new or revise any existing recordkeeping,

reporting, or disclosure requirements . . . ."[3]  Moreover, as explained above, Fifth Third's Fee

Schedule complies with applicable law.  Plaintiffs' reference to a new California statute is also

unpersuasive.  (FAC ¶ 14).  California law is not indicative of the public policy of the State of

Illinois.  *See Kremers*, 712 F. Supp. 2d at 771.  Regardless, California's new "Hidden Fees

Statute," which took effect on July 1, 2024, "makes it illegal for business to advertise or list a price

for a good or service that does not include all required fees or charges other than certain

government taxes and shipping costs."  California Department of Justice, *SB 478 Frequently Asked*

*Questions*.[4]  Again, Fifth Third's Returned Item Fee for returned deposit Items is plainly disclosed

in the Deposit Agreement and thus does not violate this statute.

> ***Fifth Third's Returned Item Fee is not immoral, unethical, oppressive, or unscrupulous***.

"[A] business practice is immoral, unethical, oppressive, or unscrupulous under ICFA if it '[leaves]

the consumer with little choice but to submit to it.'"  *Roby*, 2022 WL 204610, at *6 (N.D. Ill.,

2022) (quoting *Newman v. Met. Life Ins. Co.*, 885 F.3d 992, 1002-03 (7th Cir. 2018)).  In *Toulon*

*v. Continental Casualty Co.*, the Seventh Circuit held that "there was a total absence of the type of

oppressiveness and lack of meaningful choice necessary" for immoral or unethical conduct under

ICFA because the plaintiff "was in no way forced to buy" the insurance policy at issue.  *Toulon v.*

*Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017).  The court in *Roby* likewise found that the

plaintiff had "failed to sufficiently allege" this factor because he "was free to cancel his insurance

policy with Liberty Mutual and transfer to another company if he believed that the rates were too

high."  *Roby*, 2022 WL 204610, at *4 (N.D. Ill., 2022), at *6.  And in *Saunders*, the court found

"a total absence of the type of oppressiveness and lack of meaningful choice necessary to establish

---

[3] https://www.federalregister.gov/documents/2022/11/07/2022-23933/bulletin-2022-06-unfair-returned-deposited-item-fee-assessment-practices#footnote-7-p66941
[4] https://oag.ca.gov/system/files/attachments/press-docs/SB%20478%20FAQ%20%28B%29.pdf.

unfairness." *Saunders v. Michigan Ave. Nat'l Bank*, 278 Ill. App. 3d. 307, 314, 662 N.E. 2d 602 (1996). "The Bank provided [the plaintiff] with all the information necessary to make a meaningful choice in selecting banks." *Id.* Thus, the plaintiff "not only had control over whether she would be assessed an overdraft fee but was free to select another Bank." *Id.*

Similarly, here, the Returned Item Fee for deposited Items was disclosed to Plaintiffs. Plaintiffs were not "forced" to bank with Fifth Third. If they had a problem with the fee, they could have opened their depository accounts at another bank. This factor thus does not support Plaintiffs' ICFA claim.

***Fifth Third's Returned Item Fee for deposit Items does not cause substantial injury to consumers***. For similar reasons, the Returned Item Fee for deposit Items does not cause substantial injury to consumers. "[T]o establish harm under ICFA, a plaintiff must show that [s]he suffered substantial injury, and that [s]he could not avoid this injury." *Toulon*, 877 F.3d at 741 (internal quotation marks omitted) (citation omitted). For example, in *Toulon*, the Seventh Circuit found that a "76.5% increase in [the plaintiff's insurance] premium" was not sufficient because "charging an unconscionably high price generally is insufficient to establish a claim of unfairness[,]" and because the plaintiff "could have avoided the harm by purchasing a different" policy. *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017); *see also, e.g.*, *Washington v. Hyatt Hotels Corp.*, No. 1:19-CV-04724, 2020 WL 3058118, at *7 (N.D. Ill. June 9, 2020) (finding plaintiffs "could have avoided paying the modest resort fees by, among other things, choosing a different hotel or opting for an Airbnb"); *Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1006 (N.D. Ill. 2016) (finding "consumers could reasonably avoid the [$12 service fee] charge by making payment through the mail"). The *Saunders* court found the same when analyzing "over $200" in overdraft fees "for an overdraft of approximately $4.61." *Saunders*, 278 Ill. App. at 314.

Again, the $15 Returned Item Fee for deposited Items was disclosed to Plaintiffs, who could have elected to bank elsewhere or asked for cash instead of a check that might be returned unpaid. There is no "substantial injury" under ICFA.

*The Deposit Agreement bars the ICFA claim anyway*. Even if Plaintiffs could establish any of the factors above, they still could not state an ICFA claim because the Deposit Agreement authorizes the Returned Item Fee at issue. In *Griffin v. U.S. Bank, N.A.*, the "plaintiff claim[ed] that it was both unfair and deceptive [for the bank] to charge fees for property valuation and inspection services after he defaulted on his loan." *Griffin v. U.S. Bank Nat'l Ass'n,* No. 15 C 6871, 2019 WL 4597364, at *5 (N.D. Ill. Sept. 23, 2019). The court rejected the claim because "an act is not unfair or deceptive under ICFA if it is expressly authorized by a written agreement between the parties." *Id.* (citing *Sklodowski v. Countrywide Home Loans, Inc.*, 358 Ill. App. 3d 696, 832 N.E.2d 189, 197, 295 Ill. Dec. 38 (Ill. App. Ct. 2005)). The Deposit Agreement puts the risk of returned Items on the customer and allows Fifth Third to charge a Returned Item Fee if an Item is returned. (Doc. 11-1 § 5.5, #138). Fifth Third is not required to consider the underlying facts and circumstances. And Fifth Third did not act unfairly by doing exactly what it told Plaintiffs it would do and charging Returned Item Fees. Count IV should be dismissed.

## IV.    Conclusion

For these reasons, the Court should grant Fifth Third's motion and dismiss Plaintiffs' FAC with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

/s/Nathaniel Lampley, Jr.
Nathaniel Lampley, Jr., *Trial Attorney*
Jacob D. Mahle
Wesley R. Abrams
Vorys, Sater, Seymour and Pease LLP
301 E. Fourth St., Suite 3500
Cincinnati, OH, 45202
(513) 723-4000
nlampley@vorys.com
jdmahle@vorys.com
wrabrams@vorys.com

***Attorneys for Defendant***