## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**NICOLE M. MILLES, et al.,**

        **Plaintiffs,**

    **v.**

**FIFTH THIRD BANK, NATIONAL ASSOCIATION,**

        **Defendant.**

**Case No. 1:24-cv-186**

**JUDGE DOUGLAS R. COLE**

## OPINION AND ORDER

This putative class action stems from Defendant Fifth Third Bank, National Association's (Fifth Third) practice of charging customers fees when those customers deposited bad checks from third parties into their accounts. According to Plaintiffs, this practice violates the parties' Deposit Agreements. Fifth Third recently moved to dismiss this action in its entirety. (Doc. 13). For the reasons provided below, the Court **GRANTS IN PART** and **DENIES IN PART** Fifth Third's motion.

## BACKGROUND[1]

Fifth Third, a financial services institution, provides retail banking services to consumers across various states. (First Am. Compl., Doc. 11 ¶¶ 19, 31, #104, 107). In connection with receiving those services, consumers execute a "Deposit Agreement" when they open an account. (*Id.* ¶ 32, #108). That agreement outlines the contractual

---

[1] As this matter is before the Court on Fifth Third's motion to dismiss, the Court generally must accept the well-pleaded allegations in the First Amended Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The Court thus relies on those allegations to recount the case's background. But the Court reminds the reader that they are just that—allegations.

rules that govern the deposit accounts. (*Id.*; Doc. 11-1). Particularly relevant here, the Deposit Agreement specifies the types of fees Fifth Third may charge consumers and when it will impose those fees—at least for most of the fees (more on that shortly). (Doc. 11 ¶ 32, #108; Doc. 11-1, #133 ("Your account is subject to the fees described in the fee schedule applicable to your account.")). Specifically, a fee schedule accompanies the Deposit Agreement and lists the amounts of the various fees referenced in that agreement. (*Id.* ¶¶ 8, 10, 33, 35–36, 41, 48, #102, 108–12; Doc. 10-1, #97–98).

Plaintiffs Nicole M. Milles, Rhonda D. Knight, and Jeffrey Knight (Plaintiffs) originally filed this suit on behalf of themselves and a putative class on April 3, 2024. (Compl., Doc. 1). The Complaint alleged that Fifth Third charged them fees in violation of the Deposit Agreement and also contrary to recent Consumer Financial Protection Bureau (CFPB) guidance. (*Id.* ¶¶ 17–31, #5–8). Fifth Third responded by moving to dismiss all claims. (Doc. 10). Rather than oppose that motion, Plaintiffs mooted it by filing a First Amended Complaint (FAC). (Doc. 11; 7/11/24 Not. Order).

In that now-operative FAC, Plaintiffs claim that Fifth Third wrongfully assesses a fifteen-dollar "Returned Deposit Item Fee" (or what the FAC elsewhere labels a "Return Deposit Item Fee") when a consumer attempts to cash a third-party check that later returns unpaid for lack of sufficient funds in the third-party's account. (*See, e.g.*, Doc. 11 ¶¶ 5–10, #101–02 (labeling it a "Return Deposit Item Fee"); ¶¶ 33–37 (referring to it as a "Returned Deposit Item Fee")). According to Plaintiffs, that fee is wrongful in two ways.

First, Plaintiffs maintain that Fifth Third's assessment of the fifteen-dollar Return Deposit Item fee violates the Deposit Agreement. (*Id.* ¶¶ 8–11, 80–86, #102, 117–18). Specifically, they point to Section 5.5 of the Deposit Agreement, which states that "[i]f a deposited or cashed Item is returned, [Fifth Third] will charge [the customer] a Returned Item Fee as described in the fee schedule applicable to [the customer's] account." (*Id.* ¶ 41, #109–10; Doc. 11-1, #138). And to be clear, Section 5.5 says "Returned *Item* Fee." It does not say "Return *Deposit* Item" fee. That distinction arguably matters because the fee schedule included with the Deposit Agreement lists both a "Returned Item Fee" and "Return Deposit Item" fee.[2] (Doc. 10-1, #97–98). The latter (the Return Deposit Item fee) is fifteen dollars, but the former (the Returned Item Fee) is listed as "$0 – No fee." (Doc. 11 ¶ 8, #102; Doc. 10-1, #97–98). So according to Plaintiffs, Fifth Third's practice of charging the fifteen-dollar Return Deposit Item fee, instead of the zero-dollar Returned Item Fee, violates the Deposit Agreement's terms. (Doc. 11 ¶¶ 9, 13, 49, #102–03, 112).

Second, Plaintiffs argue that, independent of what the agreement may say, imposing a fee for returned third-party checks amounts to an unfair and deceptive trade practice under Illinois' state consumer protection statute. (*Id.* ¶¶ 12–15, 30, 117–36, #102–03, 107, 122–25). According to Plaintiffs, consumers can neither anticipate nor control whether a check they cash will bounce. (*Id.* ¶¶ 23–26, #105).

---

[2] Adding to the confusion, as noted above, the FAC seems to interchangeably use the terms "Return Deposit Item Fee" and "Return**ed** Deposit Item Fee." So far as the Court can tell, the latter term appears nowhere in the Deposit Agreement. (*See generally* Doc. 11-1). The Court acknowledges the irony—in a lawsuit alleging that Fifth Third improperly conflated the terms "Returned Item Fee" and "Return Deposit Item Fee," the operative Complaint itself appears to conflate the terms "Return Deposit Item Fee" and "Returned Deposit Item Fee."

And recent CFPB guidance cautions depository institutions that charging fees for returned deposit items may be unfair under the Consumer Financial Protection Act (CFPA). (*Id.* ¶ 27–30, #106–07). Invoking that guidance, Plaintiffs say that Fifth Third's practice violates Illinois law. (*Id.* ¶ 117–36, #122–25).

As a result, Plaintiffs sued Fifth Third for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), unjust enrichment (Count III), and for violating the Illinois Consumer Fraud and Deceptive Business Practices Act (ICFA) (Count IV). (*Id.* ¶¶ 80–136, #117–26). They seek damages and injunctive relief, among other things. (*Id.* at #125–26).

Fifth Third moved to dismiss all four counts of the FAC. (Doc. 13). That motion is now fully briefed. (Resp., Doc. 14; Reply, Doc. 16).

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a "complaint must present sufficient facts to 'state a claim to relief that is plausible on its face.'" *Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 319 (6th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing plausibility, the Court "construe[s] the complaint in the light most favorable to the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (cleaned up).

A court analyzing a motion to dismiss under Rule 12(b)(6) generally must confine its review to the pleadings. *Armengau v. Cline*, 7 F. App'x 336, 343 (6th Cir. 2001). Usually, that limits a court to considering the complaint and any documents attached to it. *Id.* But sometimes a court may properly consider other things. For example, a court may consider documents a defendant attaches to its motion, though only to the extent that those documents are referenced in the complaint and central to the claims. *Id.* at 344. Or if the pleadings refer to a written instrument that is integral to the claims, the court may consider it without converting a motion to dismiss into one for summary judgment. *Com. Money Ctr., Inc. v. Ill. Union Ins.*, 508 F.3d 327, 335–36 (6th Cir. 2007); Fed. R. Civ. P. 10(c). "These written instruments are records falling within a narrowly defined class of legally significant documents on which a party's action or defense is based. As a result, they often create or define legal rights or obligations, or define or reflect a change in legal relationships." *Anderson v. ABF Freight Sys., Inc.*, No. 1:23-cv-278, 2024 WL 51255, at *9 (S.D. Ohio Jan. 4, 2024) (cleaned up). Finally, a court can consider public records or decisions of public agencies. *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 86–87 (6th Cir. 2007).

## LAW AND ANALYSIS

The Court starts its analysis with a procedural observation. While Plaintiffs hope eventually to proceed on behalf of a nationwide class (and an Illinois subclass), the Court has yet to consider whether that is permissible. Thus, as currently postured, this is a suit by the three named Plaintiffs against Fifth Third. Accordingly, in assessing plausibility (and in determining what law applies to the various claims),

the Court measures the claims against the factual allegations as to those three Plaintiffs. Here, Plaintiffs allege: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, and (4) violation of ICFA. (Doc. 11 ¶¶ 80–136, #117–25). Fifth Third moved the Court to dismiss them all. (Doc. 13). So the Court will address each claim in turn.

## A.    Choice of Law

Before turning to the merits, though, the Court takes a brief detour to discuss choice of law. Why? Well, in assessing plausibility, the Court must determine the elements of a given claim. And those elements can vary depending on which state's law applies. True, it is usually not necessary to explicitly undertake such an analysis. Often the parties agree on which state's law applies, or at the very least do not raise the issue. But here that is not the case. In its original motion to dismiss, Fifth Third had "assumed that Illinois law applied," as Plaintiffs alleged that they are citizens of Illinois and the Deposit Agreement provides that disputes related to the Deposit Agreement are generally governed by "the laws of the state where [the customer's] account is located." (Doc. 13, #175; Doc. 11-1, #152). But in their FAC, Plaintiffs are a little cagier, suggesting that Ohio law either applies, (Doc. 11 ¶¶ 73–78, #116–17), or might apply, (*id.* ¶ 79, #117). So the Court pauses to consider whether it should rely on Illinois law or Ohio law in assessing plausibility.

That leads to two related observations. First, it turns out that answering that question is trickier than one might imagine. For example, there is a contractual choice-of-law provision that applies to the contract claims, which turns on where an

account is "located." (Doc. 11-1, #152). And that determination requires facts not currently before the Court.

Second, that answer largely does not matter, at least for now. "A federal court exercising diversity jurisdiction applies the choice of law rules of the state in which it sits." *Standard Fire Ins. Co. v. Ford Motor Co.*, 723 F.3d 690, 692 (6th Cir. 2013) (citation omitted). Here, that means Ohio's choice-of-law rules control. And under those rules, when there is no conflict between two states' laws, the forum law applies. *Herndon v. Torres*, 791 F. App'x 547, 551 (6th Cir. 2019); *see also Hawes v. Macy's Inc.* (*Hawes I*), Nos. 1:17-cv-754, 2:20-cv-81, 2023 WL 8811499, at *5–6 (S.D. Ohio Dec. 20, 2023); *ISCO Indus., Inc. v. Great Am. Ins.*, 148 N.E.3d 1279, 1283 (Ohio Ct. App. 2019). That principle largely obviates the need to address the issue now. Illinois and Ohio are the only two candidates for which state's law governs. And for the breach of contract claim, the breach of implied covenant of good faith and fair dealing, and the unjust enrichment claim, Fifth Third argues, (*see* Doc. 13, #175), and the Court largely agrees, at least based on what is before the Court now, that the law is the same in both states. So the plausibility analysis does not differ between the two.[3]

The same approach, though, does not work for Count IV. There, Plaintiffs specifically invoke an Illinois statute, ICFA. So as to that claim, a choice-of-law analysis cannot affect the *elements* of the claim—Illinois statutory law sets those

---

[3] Given the Court's tentative conclusion that the two states' laws are the same in all material respects, the Court largely cites to Ohio law for the various principles on which it relies to assess plausibility. But there is one exception to that. In connection with the breach of implied warranty claim, Plaintiffs argue that Illinois law treats such claims differently. So, there, the Court expressly assess plausibility under the law of both states. (*See infra* Section C).

elements. Rather, the question is whether Plaintiffs have alleged sufficient facts to show that an Illinois statute even *applies* to the conduct here. The Court concludes that they have. The Plaintiffs say that they are citizens of Illinois, (Doc. 11 ¶¶ 16–18, #103–04), and that their accounts are located there, (*id.* ¶ 119, #122), suggesting that Fifth Third charged them the allegedly wrongful fees and engaged in the unfair and deceptive practices in Illinois. That strikes the Court as a sufficient nexus to conclude, at least at the motion-to-dismiss stage, that ICFA applies.

In short, the foray into which state's law governs ultimately matters little here. The Court is convinced that for the three common-law claims, the law in Illinois and Ohio is sufficiently similar that the choice between the two would not impact the plausibility analysis. And the Court is likewise convinced that the alleged conduct seems to fall within ICFA's geographical scope. So, with that out of the way, the Court will turn to the question of whether the Plaintiffs have plausibly alleged the merits of any of the four asserted claims.

## B. Plaintiffs Plausibly Allege a Breach of Contract Claim.

To prevail on a breach of contract claim, under either Ohio or Illinois law, Plaintiffs must plausibly allege "(1) the existence of a contract, (2) performance by the plaintiff, (3) breach by the defendant, and (4) damages resulting from the breach." *Ma v. Cincinnati Child.'s Hosp. Med. Ctr.*, 216 N.E.3d 1, 4 (Ohio Ct. App. 2023) (citation omitted). Both parties agree that the Deposit Agreement is a contract, satisfying the first element. (Doc. 11 ¶¶ 32, 82, #108, 117; Doc. 11-1, #130; Doc. 13, #170, 176–77; Doc. 14, #193). And Fifth Third does not dispute that Plaintiffs

plausibly alleged their own performance. Nor does Fifth Third argue that they failed to plead damages. So elements two and four pose no problem. Rather, the disagreement centers on whether Plaintiffs plausibly alleged the third element—that Fifth Third breached the Deposit Agreement. (*Compare* Doc. 11 ¶¶ 80–86, #117–18 *with* Doc. 13, #175–79).

On that front, Plaintiffs argue that Fifth Third breached the Deposit Agreement when it charged them a fifteen-dollar Return *Deposit* Item fee because Section 5.5 of the agreement states that Fifth Third instead "will charge [] a Return[ed] Item Fee as described in the fee schedule," and the fee schedule states that the Returned Item Fee is zero dollars.[4] (Doc. 11 ¶¶ 83–85, #117).

Fifth Third, for its part, agrees that is what Section 5.5 *says*. But the bank claims that is not what the Section *means*, and that this is clear from context. Specifically, Fifth Third points out that the agreement clearly delineates between two different types of "Returned Item Fees"—one arising in Section 4 and the other in Section 5. (Doc. 13, #171–73, 178). Section 5, Fifth Third says, clearly involves Deposit Items (Section 5 is entitled "Processing Deposits"), while Section 4 involves simply

---

[4] Plaintiffs attached the 2022 Deposit Agreement, which governed their Fifth Third accounts, to the FAC. (Doc. 11-1). So the Court can consider that document. Plaintiffs, did not, however, attach the corresponding fee schedule to their FAC. But the Court can still properly consider it for two reasons. First, Plaintiffs reference the fee schedule (which the Deposit Agreement itself incorporates) numerous times in their FAC and base several of their contractual arguments on it, (Doc. 11 ¶¶ 8, 10, 33, 35–36, 48, 83–84, 90–91, 93, 100, #102, 108, 111, 117–19), making it integral to their claims. Second, Fifth Third included the relevant portions of the fee schedule in its motion to dismiss. (Doc. 13, #172–73; *see also* Doc. 10-1). All told, the Court can consider both the Deposit Agreement and fee schedule in determining whether Plaintiffs sufficiently pleaded their claims. As noted above, though, while Plaintiffs reference (in parts of their FAC) a Retur**ned** Deposit Item fee, the fee schedule actually references a Return Deposit Item fee.

9

Items (Section 4 is entitled "Overdrafts and Posting Order). (*Id.*). Thus, according to Fifth Third, Section 5.5 clearly meant to refer to the Return *Deposit* Item fee, making it merely a scrivener's error that the agreement instead refers to the Returned *Item* Fee in that Section. (*See* Doc. 13, #178).

In assessing plausibility in the face of those competing arguments, the Court starts by outlining some general contract interpretation principles. First, contract interpretation, which includes determining whether a contract is ambiguous, is a question of law. *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (applying Ohio law). Second, courts must interpret contracts to carry out the parties' intent as expressed by the contract's plain language. *Lutz v. Chesapeake Appalachia, L.L.C.*, 71 N.E.3d 1010, 1012 (Ohio 2016). To do so, courts must examine the contract "as a whole" and attempt to "give effect to every provision." *Sunoco, Inc. (R & M) v. Toledo Edison Co.*, 953 N.E.2d 285, 292, 295 (Ohio 2011). That said, sometimes a provision, even when read in context, is "unclear, indefinite, and reasonably subject to dual interpretations," rendering it ambiguous. *In re Fifth Third*, 925 F.3d at 276 (citation omitted). And if a contract includes an ambiguity, it falls to the finder of fact, not the court, to resolve it. *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003). One more principle also lurks in the background: When a "written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Id.*

10

With those principles in mind, the Court finds that Plaintiffs plausibly allege that Fifth Third breached the Deposit Agreement when it charged them a fifteen-dollar Return Deposit Item fee. Start with the contract language—Section 5.5 of the Deposit Agreement plainly states that "[i]f a deposited or cashed Item is returned, [Fifth Third] will charge [the customer] a *Returned Item Fee* as described in the fee schedule applicable to [the customer's] account." (Doc. 11-1, #138 (emphasis added)). Based on that provision, a customer would understandably look to the fee schedule to discern the amount of the "Returned Item Fee." And the fee schedule plainly includes a "Returned Item Fee," which it lists as "$0 – No Fee." (Doc. 10-1, #98). By contrast, the term "Return Deposit Item"—the term the fee schedule uses to describe the fifteen-dollar fee Fifth Third apparently intends to charge customers who deposit bad checks—is defined nowhere in the Deposit Agreement, even though it is capitalized, which suggests it is (or should be) a defined term. (*See* Doc. 11-1, #128–59). Rather, the reference to "Return Deposit Item" fee appears only in the fee schedule itself. (Doc. 10-1, #97). True, Section 5.5 states that the fee it is describing will apply when "a deposited or cashed Item is returned." (Doc. 11-1, #138). So, perhaps a wary consumer who spotted both a "Returned Item Fee" and a "Return Deposit Item" fee would have questions about which applied in the context of Section 5.5. But the Court finds that Plaintiffs' invocation of the contract's plain language, from a contract that Fifth Third drafted, is enough to set forth a plausible breach of contract claim.

If that were not enough, other aspects of the Deposit Agreement seem to further contribute to potential ambiguity. To start, the fee schedule does not tie any specifically named fee to any specific accompanying provision in the Deposit Agreement, nor does it list the fees in the order that the Deposit Agreement specifies them (at least under Fifth Third's telling of which fee applies to what). (*See* Doc. 10-1, #97–98). For example, Fifth Third says that the Returned Item Fee applies to Section 4 of the Deposit Agreement, and that the Return Deposit Item fee applies to Section 5. (Doc. 13, #171–73, 178). But the fee schedule (which is some six pages long) lists a fee for Return Deposit Items (a Section 5 charge according to Fifth Third) before the Returned Item Fee (a Section 4 charge). (Doc. 10-1, #92–98). True, Fifth Third titled Section 4 of the Deposit Agreement "Overdrafts," and the corresponding portion of the fee schedule "Overdraft Fees," (*compare* Doc. 11-1, #135 *with* Doc. 10-1, #97–98), perhaps providing a contextual clue that the Returned Item Fee is linked to that Section of the Deposit Agreement. But even that only goes so far. Fifth Third titled Section 5 of the Deposit Agreement "Processing Deposits," and the (allegedly) corresponding portion of the fee schedule "Payments & Services Miscellaneous Fees." (*Compare* Doc. 11-1, #137 *with* Doc. 10-1, #97). While a customer may look to "Overdraft Fees" in the fee schedule to discern fees associated with the "Overdraft" provisions of the Deposit Agreement (i.e., Section 4), it is less evident why a customer would look to "Payments & Services Miscellaneous Fees" in the fee schedule to learn about fees associated with the "Processing Deposits" provisions of the agreement (i.e., Section 5).

As a whole, and based solely on what the Court now has before it, the Deposit Agreement's provisions appear to be at the very least ambiguous on the question of whether Fifth Third could properly charge a fifteen-dollar fee for returned deposit items. So, construing the FAC in a light most favorable to Plaintiffs (as the Court must), the Court concludes that Plaintiffs have pleaded factual content which allows the Court to draw a reasonable inference that Fifth Third breached the Deposit Agreement when it charged Plaintiffs those fees. The Court therefore **DENIES** Fifth Third's motion as to the breach of contract claim.

### C.  Plaintiffs Fail to State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing alleges that Fifth Third wrongfully charged Plaintiffs a fee that neither the Deposit Agreement nor the fee schedule defined or explained and that customers could not reasonably avoid. (Doc. 11 ¶¶ 92–93, 99–100, #118–119).

But as Fifth Third correctly argues, neither Ohio nor Illinois recognizes a standalone cause of action for breach of implied covenant of good faith and fair dealing. *Patrick v. CitiMortgage, Inc.*, 676 F. App'x 573, 577 (6th Cir. 2017) (collecting cases); *McArdle v. Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013) (citing *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d 1126 (2001)). So the Court must dismiss Plaintiffs' claim.[5]

---

[5] Because the Court agrees that neither Ohio nor Illinois recognize an independent cause of action for breach of this implied covenant, it does not reach Fifth Third's second argument that "neither jurisdiction allows a plaintiff to use the implied covenant of good faith and fair dealing 'to overrule or modify the express terms of a contract.'" (Doc. 13, #180 (citation omitted)).

Plaintiffs disagree that either state's law requires dismissal. As for Ohio law, they acknowledge that Ohio does not recognize a standalone claim for breach of this implied covenant but argue that the Court should allow their claim to proceed because (1) Ohio does recognize that the duty of good faith and fair dealing implicitly exists in every contract, and (2) other courts in this district have allowed similar claims to proceed. (Doc. 11, #203–04). Neither argument persuades the Court.

Start with Plaintiffs' first contention. True, Ohio courts imply a duty of good faith and fair dealing in every contract. *Accurate Elec. Constr., Inc. v. Ohio State Univ.*, 149 N.E.3d 1080, 1106 (Ohio Ct. App. 2019). But the Ohio Supreme Court has been clear that "[t]here can be no implied covenants in a contract in relation to any matter specifically covered by the written terms of the contract itself." *Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 714 N.E.2d 898, 901 (Ohio 1999). And Plaintiffs' own argument dooms their claim. They say their good faith and fair dealing claim "relates to the interpretation and application *of the Deposit Agreement's terms*." (Doc. 14, #203 (emphasis added)). So, Plaintiffs are correct that Fifth Third may not "take opportunistic advantage" of the ambiguities in the Deposit Agreement "in a way that could not have been contemplated at the time of drafting." *Accurate Elec. Constr.*, 149 N.E.3d at 1106. But understood that way, Plaintiffs' breach of contract claim "subsumes the accompanying claim for breach of the duty of good faith and fair dealing." *Id.*; *see also Harmon v. Fifth Third Bancorp*, 858 F. App'x 842, 845 (6th Cir. 2021); *Am. Metal Stamping Co., LLC v. Pittsburgh Pipe & Supply Corp.*, No. 1:21-cv-2334, 2022 WL 19349958, at *2–3 (N.D. Ohio Oct. 14, 2022) (dismissing the plaintiff's

14

standalone breach of implied covenant of good faith and fair dealing claim where they separately brought a breach of contract claim).

Now consider Plaintiffs' second argument—that courts in this district have allowed similar claims to proceed. (Doc. 14, #203). Plaintiffs cite *Huntington National Bank v. Deluxe Financial Services, Inc.*, No. 2:14-cv-250, 2014 WL 4987597 (S.D. Ohio Oct. 6, 2014), in support of their claim, but that case is inapposite here. There, the plaintiff brought a single breach of contract claim (not a standalone claim for breach of the implied duty of good faith and fair dealing) that involved questions about the defendant's good faith. *Id.* at *4. So that court never had to determine whether the plaintiff could proceed on a standalone breach of the implied duty of good faith and fair dealing claim as this Court must. Moreover, that court allowed the contract claim to proceed because it found the provision at issue silent about the effect of early contract termination, not ambiguous as to what the plaintiff needed to pay. *Id.* at *3. The opposite is true here. The Deposit Agreement says Fifth Third will charge a fee for deposit items that get returned; it is just that the agreement is arguably ambiguous as to what amount Fifth Third will charge. And as explained above, Plaintiffs' breach of contract claim already covers that ambiguity, thus subsuming any related good faith inquiries. True, Plaintiffs also point to *Smith v. Fifth Third Bank*, No. 1:18-cv-464, 2019 WL 1746367 (S.D. Ohio Apr. 18, 2019), and that case perhaps offers more support for their claim. There, the court allowed a standalone claim for breach of the implied covenant of good faith and fair dealing under Ohio law to move forward at the Rule 12(b)(6) stage. *Id.* at *7. But this is a question of Ohio

law, and, as noted above, the Court finds that Ohio courts have clearly spoken on this issue; *Smith* does not change that.

Nor, contrary to Plaintiffs' argument, would applying Illinois law lead to a different result. According to Plaintiffs, Illinois recognizes a standalone cause of action for breach of the implied covenant of good faith and fair dealing. (Doc. 14, #203 n.6). They cite various cases they claim show as much. (*Id.*). But two problems. First, at least two of those cases acknowledge that there is not, in fact, a standalone cause of action for this type of breach. *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 673 (7th Cir. 2013) (Darrow, J., concurring) (finding that the plaintiff "properly raised the implied covenant of good faith as a breach of contract theory, not as an independent cause of action"); *see McCleary v. Wells Fargo Sec., L.L.C.*, 29 N.E.3d 1087, 1093–94 (Ill. Ct. App. 2015) (laying out the elements for a breach of contract claim and explaining how the implied covenant of good faith may arise as part of a breach of contract claim). Second, and perhaps more importantly, a federal court sitting in diversity is "bound by controlling decisions of [the state's highest] court." *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005). Here, the Illinois Supreme Court has held that there is no standalone cause of action for breach of the implied covenant of good faith and fair dealing. *Voyles*, 751 N.E.2d at 1130–32. So that's the rule this Court must follow.

Because Plaintiffs cannot bring a standalone claim for breach of the implied covenant of good faith and fair dealing under Ohio or Illinois law, the Court **GRANTS**

Fifth Third's motion to dismiss as to this claim and **DISMISSES** it **WITH PREJUDICE**.

### D. Plaintiffs Fail to State a Claim for Unjust Enrichment.

Plaintiffs next allege, in the alternative to the two previous claims, that Fifth Third unjustly enriched itself by charging Plaintiffs fifteen dollars each time a check they deposited returned unpaid. (Doc. 11 ¶¶ 106–16, #120–22). But as with the last claim, Ohio law precludes Plaintiffs' unjust enrichment claim. "[A] plaintiff may not recover under the theory of unjust enrichment or quasi-contract when an express contract covers the same subject." *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020) (applying Ohio law); *see also Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (applying Illinois law).

Here, Plaintiffs concede that the Deposit Agreement is an express contract that controls, albeit perhaps ambiguously, which fees Fifth Third will charge customers. (Doc. 11 ¶¶ 32, 82, #108, 117; Doc. 14, #193). In fact, they attach the Deposit Agreement to their FAC. (Doc. 11-1). Because Plaintiffs admit a valid contract governs this dispute, the Court **GRANTS** Fifth Third's motion to dismiss as to the unjust enrichment claim and **DISMISSES** it **WITH PREJUDICE**.[6]

---

[6] Plaintiffs argue that even when a contract exists, courts sometimes allow unjust enrichment claims to proceed, citing *Delta Pegasus Mgmt. v. NetJets Sales*, No. 2:22-cv-3519, 2023 WL 2785594 (S.D. Ohio Feb. 14, 2023). (Doc. 14, #205 & n.7). But in *Delta Pegasus*, the court first noted the "general rule" that unjust enrichment claims are unavailable when a contract governs the dispute. 2023 WL 2785594, at *4. And in raising the exception that Plaintiffs highlight, the court acknowledged it usually applies when the validity or existence of the alleged contract is in question. *See id.* That is not the case here.

**E.    Plaintiffs' ICFA Claim Partially Survives the Motion to Dismiss.**

Finally, Plaintiffs claim that Fifth Third violated ICFA, Illinois' consumer protection statute, by charging Return Deposit Item fees in a "deceptive and unfair" manner. (Doc. 11 ¶ 130, #124). Fifth Third argues for the claim's dismissal maintaining that (1) the claim cannot proceed if Ohio law applies, (2) ICFA's own language precludes its application (or at the very least, federal law preempts ICFA's application here), and (3) Plaintiffs failed to plausibly allege an ICFA claim. (Doc. 13, #183–89). In the above choice-of-law discussion, the Court already explained why Fifth Third's first argument fails, at least for purposes of the motion-to-dismiss stage. So the Court will only consider the latter two arguments here.

Fifth Third first asserts that ICFA's language bars Plaintiffs' statutory claim. (Doc. 13, #183–86). Although placed under a common heading, Fifth Third seems to be making two related but distinct arguments: (1) because Fifth Third complied with the Truth in Savings Act (TISA), ICFA, by its plain language, exempts the conduct at issue, and (2) even if ICFA does not expressly exempt Fifth Third's conduct, TISA preempts Plaintiffs' ICFA claim. (*See id.*).

Before diving headlong into Fifth Third's arguments, the Court begins by briefly explaining the statutory backdrop. ICFA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including … deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact." 815 ILCS § 505/2. But it also includes various exemptions. One such exemption says that nothing in ICFA applies to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or

officer acting under statutory authority of this State or the United States." 815 ILCS § 505/10b(1). In other words, if a federal statute or regulation specifically authorizes certain conduct, that conduct is "exempt from liability under [ICFA]." *See Lanier v. Assocs. Fin., Inc.*, 499 N.E.2d 440, 447 (Ill. 1986).

TISA, a federal statute, governs deposit account disclosures. 12 U.S.C. § 4301. It requires banks to clearly and uniformly disclose fees assessed against deposit accounts, *id.* § 4301(b)(2), and to maintain fee schedules, *id.* § 4303(a). Regulation DD, which implements TISA, says account disclosures must include "[t]he amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed." 12 C.F.R. § 1030.4(b)(4). "Fees associated with checks returned unpaid" are among those fees that banks must disclose. 12 C.F.R. pt. 1030, Supp. I. And importantly, TISA preempts inconsistent state law requirements, but only "to the extent of the inconsistency." 12 C.F.R. § 1030.1(d).

## 1.    ICFA's Exemption Does Not Bar Plaintiffs' ICFA Claim.

With those two statutes in mind (ICFA and TISA), consider Fifth Third's "compliance" argument: Because Fifth Third complied with TISA's disclosure requirements, TISA "specifically authorized" the conduct, meaning that it falls within ICFA's exemption, so the Court should dismiss Plaintiffs' claim. (Doc. 13, #183–86). Addressing this argument requires the Court first to determine whether Fifth Third's fee disclosures comply with TISA, and second, if so, whether compliance with TISA precludes ICFA liability. *Lanier*, 499 N.E.2d at 444 (laying out a two-part framework

19

to discern whether compliance with a federal law establishes a defense to liability under ICFA).

The Court's analysis begins and ends, however, with the first prong, as it is not at all clear, at least for present purposes, that Fifth Third complied with TISA. To review, TISA requires banks to clearly and uniformly disclose both the amount of any fee it will impose and the conditions under which it will impose that fee. For all the reasons discussed above, however, Plaintiffs have plausibly alleged that Fifth Third's fee disclosure related to checks returned unpaid may not meet TISA's clarity requirement. True, Fifth Third disclosed that it "will charge" a fee if a deposited or cashed item is returned unpaid, (Doc. 11-1, #138), which may clearly disclose the *conditions* under which it will assess a fee. But Fifth Third misses the mark in claiming it clearly discloses the *amount* of that fee. As noted, Section 5.5 of the Deposit Agreement says Fifth Third "will charge [customers] a Returned Item Fee as described in the fee schedule." (*Id.*). And the fee schedule plainly lists the Returned Item Fee as "$0 – No fee." (Doc. 10-1, #98). True, Fifth Third also listed the fee it says it intended to impose—a fifteen-dollar Return Deposit Item fee. (*Id.* at #97). But at least at this stage of the litigation, the Court is not persuaded that this means the disclosure was clear as a matter of law.[7]

---

[7] Fifth Third's reliance on *Hill v. St. Paul Federal Bank for Savings*, 768 N.E.2d 322 (Ill. 2002), does not convince the Court that ICFA's language bars Plaintiffs' claim. The *Hill* court considered whether the defendants' failure to disclose the posting order of checks fell within an ICFA exemption. *Id.* at 327. It concluded that because TISA does not require banks to disclose the posting order of checks, federal law authorized the defendants' nondisclosure. *Id.* at 328. So the defendants' conduct fell within an ICFA exemption, precluding plaintiffs' ICFA claim. *Id.* This case, however, involves Fifth Third's failure to do something TISA *does*

20

## 2. TISA Only Partially Preempts Plaintiffs' ICFA Claim.

All is not lost, though. Fifth Third also raises a second argument—preemption. Admittedly, its argument on this front is sparse (largely because Fifth Third commingled the preemption argument with its earlier compliance argument). Fifth Third states only that "state-law challenges to a bank's failure to disclose certain fees or fee practices are routinely dismissed on preemption grounds." (Doc. 14, #184 (citation omitted)). But despite the brevity of Fifth Third's argument, the Court agrees that TISA partially preempts Plaintiffs' ICFA claim.

Under the Supremacy Clause, Congress can preempt state law. U.S. CONST. art. VI; *Arizona v. United States*, 567 U.S. 387, 398–99 (2012). Preemption comes in three flavors: express, conflict, and field preemption (the latter two collectively known as "implied preemption"). *Arizona*, 567 U.S. at 399 (outlining the three types of preemption); *see also Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-cv-482, 2017 WL 6988193, at *6 (E.D. Tex. Sept. 14, 2017). In any preemption analysis, "the purpose of Congress is the ultimate touchstone." *Hughes v. Talen Energy Mktg., LLC*, 578 U.S. 150, 162–63 (2016) (citation omitted). And in the banking realm, "federal control shields national banking from unduly burdensome and duplicative state regulation." *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1, 11 (2007). So states may "regulate the activities of national banks where doing so does not prevent or significantly interfere with the national bank's or the national bank regulator's exercise of its powers." *Id.* at 12.

---

require—clearly and uniformly disclose the fees it will charge. *Hill* therefore cannot explain why ICFA's exemption would bar Plaintiffs' claim here.

Relevant here, Congress preempted state laws related to account disclosures "to the extent that those laws are inconsistent with [TISA]." 12 U.S.C. § 4312. And an inconsistency arises if state law "requires a depository institution to make disclosures or take actions that contradict the requirements of the federal law." 12 C.F.R. pt. 1030, App. C. In other words, the Court must determine whether ICFA requires Fifth Third to take actions that contradict TISA, such that TISA expressly preempts Plaintiffs' ICFA claim.

Though the Sixth Circuit has not spoken to whether and when TISA preempts state consumer protection statutes, other courts have. Many of those courts have adopted a categorical approach to this preemption question, which the Court finds informative. On the one hand, TISA does not preempt a plaintiff's claim that a depository institution "failed to comply with the express terms of the parties' contract or affirmatively misrepresented its fee practices." *Lambert v. Navy Fed. Credit Union*, No. 1:19-cv-103, 2019 WL 3843064, *3 (E.D. Va. Aug. 14, 2019). On the other hand, TISA does preempt a plaintiff's claim challenging "[a depository institution's] failure to disclose, the specific language used in the disclosure, or the fairness of the fee practice itself." *Id.*[8]

---

[8] *See also Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 722–28 (9th Cir. 2012) (finding claims that impose disclosure requirements preempted, but finding claims that merely prohibit misleading statements not preempted); *King v. Navy Fed. Credit Union*, 713 F. Supp. 3d 729, 738–39 (C.D. Cal. 2024) (cleaned up) ("It is well established that state law claims regarding a federal credit union's failure to disclose certain fee practices or any perceived unfairness in the fee practices themselves are preempted."); *Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-cv-482, 2017 WL 6988193, *6–10 (E.D. Tex. Sept. 14, 2017) (holding that "attempts to use a state consumer law to dictate to a [depository institution] what fees it may charge and how it may charge them" are preempted); *Garrett v. Call Fed. Credit*

22

Applying that methodology here, the Court concludes that only part of Plaintiffs' ICFA claim falls on the preempted side of the line. Through their consumer fraud protection act claim, Plaintiffs make two related but distinct allegations. First, they argue that Fifth Third's "practice of charging Return Deposit[] Item Fees is deceptive and unfair" under ICFA because consumers cannot reasonably avoid those fees, which substantially injures them. (Doc. 11 ¶¶ 127–30, #123–24). And in making their argument, Plaintiffs rely on CFPB's Bulletin 2022-06, which has apparently deemed Return Deposit Item fees (like the ones Fifth Third charged here) materially unfair and deceptive under the CFPA. (*Id.* ¶¶ 129–30, #124). In that way, Plaintiffs contest the fairness of Fifth Third's charging practices. *See King v. Navy Fed. Credit Union*, 713 F. Supp. 3d 729, 738–39 (C.D. Cal. 2024). And that, in turn, reveals Plaintiffs' attempt to deploy ICFA to require Fifth Third to take actions (or rather, not take actions) in contradiction of TISA. Namely, Plaintiffs seek to wholly prevent Fifth Third from charging Return Deposit Item Fees, a type of fee that TISA permits—for now anyway.[9] *See* 12 C.F.R. pt. 1030, App. B-10 (permitting "Returned

---

*Union*, No. 3:23-cv-678, 2024 WL 3928888, *5 (E.D. Va. Aug. 23, 2024) ("It is important to distinguish, however, between asking the Court to declare practices or policy to be unconscionable and asking the Court to conclude these practices violate the contract between parties."); *Cinar v. Bank of Am., N.A.*, No. 13-cv-3230, 2014 WL 3704280, at *3–4 (D. Md. July 22, 2014) (finding that state law claims requiring a defendant to make disclosures not required by federal law are preempted, but state laws of general application that do not conflict with federal law are not preempted); *Fludd v. S. State Bank*, 566 F. Supp. 3d 471, 484–87 (D.S.C. 2021) (adopting the methodology set out in *Lambert*).

[9] Plaintiffs' reliance on Bulletin 2022-06 poses two problems. First, the Bulletin states that "[b]lanket policies of charging Returned Deposited Item fees to consumers for all returned transactions irrespective of the circumstances or patterns of behavior on the account are *likely* unfair," which suggests that they are not always unfair. Bulletin 2022-06: Unfair Returned Deposited Item Fee Assessment Practices, 87 Fed. Reg. 66,940, 66,940 (Nov. 7,

Item Fees"); *id.* at Supp. I (requiring disclosure of "fees associated with checks returned unpaid"). So the Court finds this ICFA allegation preempted.

Plaintiffs' second ICFA allegation, by contrast, is not preempted. Plaintiffs allege that:

> Fifth Third represents that it "will" charge a fee for "Returned Items" in Section 5.5 of its DRA. The "Returned Item" Fee is represented to be "$0 – No Fee; You will not be charged a fee if we return your checks and payments unpaid." However, Fifth Third then assesses a "$15.00 per item" for "Return Deposited Item Fees", which is nowhere described or explained. Fifth Third has thereby failed to clearly and uniformly disclose whether or not a fee will be charged to consumers for returned items, and failing to disclose the conditions under which the fee may be imposed.

(Doc. 11 ¶ 130, #124). And they clarify that ICFA prohibits conduct that "creates a likelihood of confusion or misunderstanding." (*Id.* ¶ 123, #122 (citing 815 ILCS §§ 505/2, 510/2(a)(12))). The Court therefore cannot conclude that Plaintiffs' allegations regarding Fifth Third's misrepresentations in the Deposit Agreement conflicts with TISA. Recall that TISA requires banks to clearly and uniformly disclose the conditions under which it will charge fees and their amount. 12 U.S.C. § 4301(b). So too does ICFA by prohibiting deceptive practices that lead to "confusion or misunderstanding." 815 ILCS §§ 505/2, 510/2(a)(12). Indeed, on this logic, ICFA "does not impose disclosure requirements but merely prohibits statements that are likely to mislead the public." *Gutierrez v. Wells Fargo Bank, NA*, 704 F.3d 712, 726 (9th Cir. 2012). The Court thus concludes that TISA does not preempt Plaintiffs' ICFA claim

2022) (emphasis added). Second, as the *King* court aptly noted, guidance documents like Bulletin 2022-06 "do[] not have the force and effect of law." *King*, 713 F. Supp. 3d at 739 (citing 12 C.F.R. Pt. 1074, App. A). So if the Court allowed Plaintiffs' ICFA claim to proceed relying on Bulletin 2022-06, that itself would contravene federal law. *Id.*

to the extent it is based on Fifth Third allegedly using misleading provisions in the Deposit Agreement.[10]

Plaintiffs disagree that TISA preempts any part of their ICFA claim. They argue that Fifth Third failed to show how complying with ICFA would substantially disrupt its operations and warrant preemption. (Doc. 14, #208). When a plaintiff's claim challenges the fairness of a fee itself, though, the claim encroaches on the depository institution's ability to decide which fees to charge and how to charge them. *See Whittington*, 2017 WL 6988193, at *9. Straight out prohibiting Fifth Third from charging an entire subset of fees would amount to substantial disruption, especially when premised on guidance that lacks the force of law. *King*, 713 F. Supp. 3d at 738–39; *supra* n.9. That, in turn, means TISA preempts the claim.

### 3. Plaintiffs Plausibly Allege a Deceptive Practice Claim Under ICFA.

Because Plaintiffs' ICFA claim is only partially preempted, the Court must consider whether Plaintiffs plausibly alleged an ICFA violation under this non-preempted theory. ICFA is a "regulatory and remedial statute intended to protect consumers … against fraud, unfair methods of competition, and other unfair and deceptive business practices." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019) (citation omitted). To state an ICFA claim, a plaintiff

---

[10] As far as the Court can tell, *Page v. Alliant Credit Union* is the only case that discusses whether TISA preempts an ICFA claim. No. 19-cv-5965, 2020 WL 5076690 (N.D. Ill. Aug. 26, 2020). That court found the plaintiff's ICFA claim not preempted because the plaintiff raised claims about the defendant's misrepresentations. *Id.* at *2. Here, Plaintiffs make similar allegations, contending that Fifth Third's Deposit Agreement "creates a likelihood of confusion or misunderstanding." (Doc. 11 ¶¶ 123, 131–33, #123–25).

must sufficiently plead: "(1) a deceptive or unfair act or practice by the defendant; (2) the defendant's intent that the plaintiffs rely on the deceptive or unfair practice; (3) the deceptive or unfair acts occurred during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiffs; (5) proximately caused by the deceptive or unfair acts." *Saika v. Ocwen Loan Servicing, LLC*, 357 F. Supp. 3d 704, 714 (N.D. Ill. 2018) (cleaned up).

Start with the first element. To satisfy it, a plaintiff can allege a violation either by showing deceptive conduct or unfair conduct, each having its own pleading standard. *Benson*, 944 F.3d at 646. A deceptive conduct claim falls within the contours of Federal Rule of Civil Procedure 9(b), meaning that a plaintiff must "plead with particularity the circumstances constituting fraud." *Id.* (citation omitted). That is, the plaintiff must plead "the who, what, when, where, and how of the alleged fraud." *Id.* (cleaned up). An unfairness claim, which need only meet Federal Rule of Civil Procedure Rule 8(a)'s notice pleading standard, by contrast, depends on "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and/or (3) whether it causes substantial injury to consumers." *Saika*, 357 F. Supp. 3d at 714–15 (cleaned up). Notably, a practice can be unfair if it meets only one of the criteria to a greater extent or all three to a lesser extent; all three need not be met to support an unfairness finding. *Id.* at 715.

The FAC alleges that Fifth Third's conduct is both deceptive and unfair. But much of the FAC's focus on unfairness pertains to Fifth Third charging fees when bad checks return unpaid and relies on CFPB Bulletin 2022-06. The Court already

explained why TISA preempts that line of argument. Plaintiffs' allegations relating to the non-preempted ICFA theory, however, seemingly focus on the statute's deceptive prong.[11] So the Court likewise concentrates its analysis there. Plaintiffs allege that Fifth Third "deliberately insert[ed] ambiguous provisions" into the Deposit Agreement, allowing it "to profit at the expense of unwary consumers." (Doc. 11 ¶ 133, #124–25). And they describe the precise contractual ambiguity the Court has already explored. (*Id.* ¶¶ 131–32, #124). All told, the allegations describe with sufficient particularly the "who" (Fifth Third), "what" (deceptive contract terms), "where" (the Deposit Agreement), and "how" (ambiguous and undefined provisions and terms) of the alleged deception. Moreover, this deception allegedly arose "when" Plaintiffs opened their accounts and agreed to the Deposit Agreement. (*Id.* ¶¶ 32–36, #108). So the Court concludes Plaintiffs met Rule 9(b)'s heightened pleading standard, thereby satisfying element one.

Now consider element two—defendant's intent that the plaintiffs rely on the deceptive practice. Plaintiffs allege that because of the necessity of bank accounts, "Fifth Third's practice of deliberately inserting ambiguous provisions into the [Deposit Agreement] cornered consumers into paying for an unnecessary service." (*Id.* ¶ 133, #124–25). This sufficiently alleges that Fifth Third intended Plaintiffs to rely on the Deposit Agreement in choosing to bank there, which satisfies element two.

---

[11] Plaintiffs highlight that ICFA prohibits deceptive conduct that "creates a likelihood of confusion or misunderstanding." (Doc. 11 ¶ 123, #122 (citing 815 ILCS §§ 505/2, 510/2(a)(12))). Since Plaintiffs allege that Fifth Third "insert[ed] ambiguous provisions" into the Deposit Agreement, misleading consumers as to which fees it will impose and when, (*Id.* ¶¶ 32–36, 131–33, #108, 124–25), the Court understands Plaintiffs to argue that this practice is deceptive.

That leaves the remaining three elements, which Plaintiffs easily satisfy. The allegedly deceptive acts occurred in relation to banking services, which means they necessarily involved trade or commerce (element three). And Plaintiffs contend that they "sustained actual damages," specifically the fifteen-dollar fees, "as a result of" Fifth Third's conduct. (*Id.* ¶ 134, #125). That meets element four's and element five's requirements. Plaintiffs, therefore, plausibly allege an ICFA deceptive practices claim.

Fifth Third disagrees that Plaintiffs can state an ICFA claim, mainly arguing that the Deposit Agreement "authorizes the Returned Item Fee at issue." (Doc. 13, #189). It cites *Griffin v. U.S. Bank National Association*, No. 15-c-6871, 2019 WL 4597364 (N.D. Ill. Sept. 23, 2019), for support. There, the plaintiff alleged that the defendants' act of charging property valuation and inspection fees after the plaintiff defaulted on a loan amounted to a deceptive and unfair practice. *Id.* at *5. But, the court explained, if a written agreement between the parties expressly authorizes an act, that act cannot be unfair or deceptive under ICFA. *Id.* Because the governing mortgage expressly permitted the defendants to charge such fees, the court rejected the plaintiff's ICFA claim. *Id.* This case raises an important difference. As described above, there's a plausible argument that the Deposit Agreement's terms are at least ambiguous as to whether Fifth Third could charge the fifteen-dollar fee that it did. So *Griffin*'s express-authorization defense falls short when measured against the allegations here. All told, the Court cannot conclude at the motion-to-dismiss stage that the Deposit Agreement itself precludes Plaintiffs' ICFA claim.

## CONCLUSION

For the reasons explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss Plaintiffs' First Amended Class Action Complaint for Failure to State a Claim (Doc. 13). Specifically, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing claim (Count II), Unjust Enrichment claim (Count III), and Illinois Consumer Fraud and Deceptive Business Practices Act claim (Count IV), but only to the extent it alleges that Fifth Third's practice of charging Return Deposit Item fees is unfair pursuant to CFPB Bulletin 2022-06.

**SO ORDERED.**

November 26, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**